## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DALILA YEEND and<br>BOUNNAM PHIMASONE,<br>　　　　Plaintiffs,<br>v.<br><br>AKIMA GLOBAL SERVICES, LLC,<br>a/k/a AGS,<br>　　　　Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

CIVIL ACTION NO.: <u>1:20-cv-1281 (TJM/CFH)</u>

## NOTICE OF REMOVAL

**NOW INTO COURT,** through undersigned counsel, comes Defendant Akima Global Services LLC ("Defendant" or "AGS"), and without waiving any of its defenses or objections, gives notice that it is removing this action from the Supreme Court of the State of New York, County of Rensselaer to the United States District Court for the Northern District of New York pursuant to 28 U.S.C. §§ 1331, 1332, 1367, 1441, 1442, and 1446, as amended.

## INTRODUCTION

AGS is a private company that contracts with the Department of Homeland Security, U.S. Immigration and Customs Enforcement ("ICE") to provide detention management, transportation, and food services at ICE's Buffalo Federal Detention Facility ("BFDF") in Batavia, New York. BFDF is an ICE-owned facility that temporarily houses federal immigration detainees in ICE's custody.

Plaintiffs, former federal immigration detainees held at BFDF, assert that they were "employees" of AGS because they participated in ICE's Voluntary Detainee Work Program (the "Program") while in ICE custody. Consequently, Plaintiffs allege that AGS was obligated to pay them "wages" in accordance with the New York's minimum wage laws. Further, Plaintiffs allege

1

that AGS's "employment" [*sic*] of detainee labor violates the New York State Constitution and constitutes unjust enrichment.  In other words, this lawsuit seeks to hold AGS liable for actions taken at ICE's direction and in accordance with AGS's express, contractual obligations to ICE.

This suit is removable on three grounds.  First, this Court has subject matter jurisdiction over this case under the Federal Officer Removal Statute, 28 U.S.C. § 1442, because AGS is a government contractor, the Complaint alleges conduct which is directed by the federal government, and AGS has a colorable defense that Plaintiffs' claims are preempted by federal law. Second, as this case involves questions of federal law and federal issues, this Court has jurisdiction pursuant to 28 U.S.C. § 1331.  Finally, this Court has diversity jurisdiction over Plaintiff Phimasone's claims because the parties are completely diverse, and a reasonable reading of the Complaint indicates that the amount in controversy exceeds $75,000; the Court has supplemental jurisdiction over Plaintiff Yeend's claims because her claims are part of the same case or controversy.

## FACTUAL AND PROCEDURAL BACKGROUND

Since 2014, pursuant to a contract with ICE (the "Contract"), AGS has provided detention management support services for BFDF.  *See* Declaration of Laura Mitchell, attached as Exhibit 1.  The scope of services which AGS provides at the BFDF (and the limitations on AGS's authority) is expressly defined by the terms of the Contract. *Id.* at ¶ 8.  The Contract provides that AGS "shall perform" all services in accordance with specified federal standards, including ICE's Performance Based National Detention Standards ("PBNDS") and other federal mandates for DHS detention facilities.  *Id.* The Contract also requires AGS to comply with all post orders and general directives and BFDF policies, all of which are drafted and promulgated by ICE. *Id.*

The Contract requires detainees be provided the opportunity to participate in the Voluntary Detainee Work Program and identifies the types of work details that may be assigned. *Id.* at ¶ 9. According to the PBNDS, the Program is aimed at reducing any "negative impact of confinement . . . through decreased idleness, improved morale and fewer disciplinary incidents" and provides detainees with the opportunity "to work and earn money while confined." *Id.* A detainee's eligibility for the Program is dependent upon the detainee's classification under ICE standards, which are determined by ICE. *Id.* at ¶ 10. Likewise, specific work details are determined by ICE. *Id.* The Contract provides a limited budget specifically earmarked for the Program and expressly states that "Detainees earn $1.00 per day." *Id.* at ¶ 12. These funds are kept in a detainee's account and can be used to purchase items at BFDF's commissary; any unused amounts are paid out to the detainee upon his or her release.[1] *Id.*

Plaintiffs Dalila Yeend and Bounnam Phimasone were detained at BFDF in 2018 and 2019.[2] Both participated in the Program while they were in ICE custody. Compl. at ¶ 25. On September 3, 2020, Plaintiffs filed suit against AGS in the Supreme Court of the State of New York, County of Rensselaer, Index No. EF2020-266934, seeking monetary damages and attorneys' fees from AGS for alleged violation of the New York Constitution; violation of the New York Labor Law's minimum wage, shift compensation, wage notice, and wage statement provisions; and unjust enrichment.

---

[1]    The Contract states that any profits generated from commissary sales are required to be deposited in a "Health and Welfare Fund" which is used to procure goods and services that benefit the general detainee population at BFDF, including televisions, computers, printers, movies, and sports equipment. According to the Contract, ownership of such property transfers to ICE – not AGS – at the time of delivery or installation at BFDF. Upon the contract's completion, any remaining funds are transferred to the U.S. Treasury or a future contractor at ICE's discretion. Mitchell Decl. at ¶ 13.

[2]    Plaintiff Yeend was detained at BFDF from July 2018 through August 2018 (Compl. at ¶¶ 40, 51); Plaintiff Phimasone was detained at BFDF from "late 2018" to August 6, 2019 (Compl. at ¶¶52, 65).

On September 18, 2020, AGS was served through its registered agent, CT Corporation, with the Summons and Complaint notifying it of the state court suit. A copy of the Summons, Complaint, and Notice of Service of Process is attached hereto as Exhibit 2.  No other defendants have been named or served as of the date of this Notice of Removal.

## GROUNDS FOR REMOVAL

### I.    Federal Question Jurisdiction.

Congress has conferred upon district courts "original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."  28 U.S.C. § 1331.  Due to the overarching contractual requirements which obligate AGS to comply with federal policies and mandates, all claims in this matter necessarily implicate federal questions which should be adjudicated in federal court.  Accordingly, AGS asserts that this Court has original jurisdiction over Plaintiffs' claims pursuant to 28 U.S.C. § 1442(a)(1) (the "Federal Officer Removal Statute"), and because Plaintiffs' state law claims implicate significant federal immigration policy and federal contract-related issues.

### A.    Federal Officer Removal Statute.

Under the Federal Officer Removal Statute, a civil action commenced in a state court against "[t]he United States or any agency thereof or any officer (or any person acting under that officer) of the United States or of any agency thereof, in an official or individual capacity, for or relating to any act under color of such office" may be removed to the district court of the United States for the district and division embracing the place wherein it is pending. 28 U.S.C. § 1442(a)(1).  The "right of removal is absolute for conduct performed under color of federal office." *Arizona v. Manypenny*, 451 U.S. 232, 242 (1981).

Courts in the Second Circuit have recognized that "the federal officer removal statute must be construed broadly" in favor of removal. *Gordon v. Air & Liquid Sys. Corp.*, 990 F. Supp. 2d 311, 316 (E.D.N.Y. 2014); *Badilla v. Nat'l Air Cargo, Inc.*, No. 12-CV-1066-A, 2014 WL 6390324, at *4 (W.D.N.Y. Nov. 17, 2014). "The policy interest that creates this presumption of removal under § 1442 is the government's need to provide a federal forum for its officers and those who are 'acting under' a federal office." *Albrecht v. A.O. Smith Water Prod.*, No. 11 CIV. 5990 BSJ, 2011 WL 5109532, at *3 (S.D.N.Y. Oct. 21, 2011); *see also Colorado v. Symes*, 286 U.S. 510, 517 (1932) (explaining that Section 1442 should be "liberally construed to give full effect" to the purpose of providing federal actors access to federal forums). Accordingly, courts must afford a broad construction to removal under Section 1442(a)(1) so "as to avoid frustrating its policy objective of 'hav[ing] the validity of the defense of official immunity tried in a federal court' by applying a 'narrow, grudging interpretation.'" *Crews v. Air & Liquid Sys. Corp.*, No. 7:12-CV-1678 FJS/DEP, 2014 WL 636362, at *2 (N.D.N.Y. Feb. 18, 2014) (quoting *Hagen v. Benjamin Foster Co.*, 739 F.Supp. 2d 770, 775 (E.D. Pa. 2010)). *Cf. Durham v. Lockheed Martin Corp.*, 445 F.3d 1247, 1252–53 (9th Cir. 2006) (finding a "a clear command from both Congress and the Supreme Court that when federal officers and their agents are seeking a federal forum, we are to interpret section 1442 broadly in favor of removal."). A defendant may remove a case pursuant to the Federal Removal Statute by showing that (1) it is a "person" within the meaning of the statute; (2) it acted "under color of federal office"; and (3) it has a colorable federal defense to the claims asserted. *Cuomo v. Crane Co.*, 771 F.3d 113, 115 (2d Cir. 2014).

### 1.    AGS Is A "Person" Under The Statute.

The Second Circuit has definitively held that the term "person" under Section 1442(a) applies to private companies that contract with the federal government. *Isaacson v. Dow Chem.*

*Co.*, 517 F.3d 129, 136 (2d Cir. 2008); 1 U.S.C. § 1. AGS is a limited liability company that provides specific services at the government-owned BFDF under its Contract with ICE, a federal agency. Mitchell Decl. at ¶¶ 5, 7.  Thus, AGS is a "person" under the statute.

### 2.    AGS Acted Under Color of Federal Office.

A defendant acts under a federal officer by "'assist[ing], or help[ing] carry out, the duties or tasks of the federal superior.'" *Isaacson*, 517 F.3d at 137 (quoting *Watson v. Philip Morris Companies, Inc.*, 551 U.S. 142, 143 (2007)). *See also Goncalves ex rel. Goncalves v. Rady Children's Hosp. San Diego*, 865 F.3d 1237, 1245 (2017). This element is also known as the "causation requirement". *Id.*  "The hurdle erected by [the causation] requirement is quite low." *Id*. Importantly, it "only requires a defendant to show the act occurred while it was performing official duties." *Gates v. A.O. Smith Water Prod. Co.*, No. 3:13-CV-1435, 2014 WL 104965, at \*3 (N.D.N.Y. Jan. 9, 2014). For non-governmental corporations, the defendant must show that "the acts for which [it is] being sued...occurred because of what [it was] asked to do by the Government."  *Isaacson*, 517 F.3d at 137-38. Courts generally credit a defendant's theory of the case when determining whether a causal connection exists for jurisdictional purposes.  *Isaacson*, 517 F.3d at 138. (citing *Jefferson County v. Acker*, 527 U.S. 423, 432 (1999)). Thus, for removal based on federal question jurisdiction, the question of causation centers upon whether the action being challenged naturally would have occurred during the performance of government-specified duties.  "Indeed, whether the challenged act was outside the scope of [a defendant's] official duties, or whether it was specifically directed by the federal Government, is one for the federal—not state—courts to answer." *Id.* (citing *Willingham v. Morgan*, 395 U.S. 402, 409 (1969)).

Here, the claims asserted rely upon alleged facts rooted in the express contractual obligations AGS has to ICE.  ICE's policies and directives require detainees held at BFDF to have

the opportunity to participate in the Program.  Mitchell Decl. at ¶ 9.  The Contract requires AGS to provide, *inter alia*, training and limited oversight services relating to the Program.  *Id.* at ¶ 11. ICE set the Program's budget, defined the daily rate for detainees who opted to participate in the Program, established specific work details for the Program, and provided necessary equipment and tools for the Program.  *Id.* at ¶ 10.  In other words, the actions for which AGS is being sued occurred because of what it was asked to do by ICE.  Accordingly, the causation element has been met.

### 3.    AGS Has Colorable Defenses to Plaintiffs' Claims.

"[O]ne of the most important reasons for removal is to have the validity of the defense of official immunity tried in a federal court." *Isaacson*, 517 F.3d at 139. (citing *Willingham*, 395 U.S. at 407). Because courts have placed "few limitations on what qualifies as a federal defense," a defendant must merely assert a claim that is "defensive" and "based in federal law", and arises out of the removing party's compliance with the demands of the federal officer. *Id*. at 138; *Mesa v. California*, 489 U.S. 121, 129-30.  Thus, to assert a colorable federal defense, a defendant "need not [assert a defense] that will ultimately prevail." *Pantalone v. Aurora Pump Co*., 576 F. Supp. 2d 325, 331 (D. Conn. 2008) (citing *Willingham*, 395 U.S. at 407).  Rather, a removing defendant need only raise a "colorable" defense under federal law.

Here, AGS has a colorable defense that Plaintiffs' state wage claims and unjust enrichment claims are preempted by federal law. The Supremacy Clause clearly establishes federal law as "the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any state to the Contrary notwithstanding." U.S. Const. art. VI, cl. 2. Congress's power to preempt state law is grounded upon this principle.  *Arizona v. United States*, 567 U.S. 387, 399 (2012).  Moreover, states are "precluded from regulating conduct in a field that Congress, acting within its proper authority, has determined must be regulated by its exclusive

governance." *Id.* Likewise, state laws are also preempted where the challenged state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Id.* at 399-400.

Immigration is one such area in which the United States government has "undoubted power." *Id*. at 394-95. In fact, the federal government's exclusive authority "in the general field of foreign affairs, including power over immigration, naturalization and deportation, is made clear by the Constitution." *Hines v. Davidowitz*, 312 U.S. 52, 62 (1941). Congress has delegated authority concerning the detention of certain aliens to ICE, which has engaged private entities, such as AGS, to provide detention management services pursuant to express conditions and requirements which ICE sets by contract. *See* 8 U.S.C. §§ 1103(a)(1), 1225, 1226, 1231.

Likewise, Congress is empowered to legislate the fields of employment status and payment to immigration detainees. For example, Congress determined whether federal immigration detainees could be paid and how much they should be paid for participating in work programs while in federal custody:

> Appropriations now or hereafter provided for the Immigration and Naturalization Service shall be available for . . . (d) payment of allowances (at such rate as may be specified from time to time in the appropriation Act involved) to aliens, while held in custody under the immigration laws for work performed . . .

8 U.S.C. § 1555(d) (1950).

Up to 1979, appropriations bills specifically authorized reimbursement for the Voluntary Detainee Work Program "at a rate not in excess of $1.00 per day." *See, e.g.* Dept. of Justice Appropriation Act, 1979, Pub. L. No. 95-431, 92 Stat. 1021, 1027 (Oct. 18, 1978). While Congress ended the practice of specifically delineating reimbursement amounts for the Program after 1979, ICE retains general authority to reimburse Program detainees. *See* INS, Your CO 243-C

8

Memorandum of Nov. 15, 1991; DOD Request for Alien Labor, General Counsel Op. No. 92-63, 1992 WL 1369402, at *1 (citing 93 Stat. at 1042).[3]  Accordingly, the $1 per day allowance remains "a matter of legislative discretion."  *Guevara v. I.N.S.*, No. 90-1476. 1992 WL 1029, *2 (5th Cir. Jan. 6, 1992) (holding that "Congress provided that under certain circumstances aliens who are lawfully detained pending disposition may be paid for their volunteer labor.")

On this basis, the $1 daily rate has withstood legal challenges by federal detainees seeking minimum wage under federal and state wage laws.  *See, e.g. Alvarado Guevara v. I.N.S.*, 902 F.2d 394, 395-396 (5th Cir. 1990) (holding detainees were not "employees" under the FLSA and noting that because detainees are "removed from American industry" they are "not within the group Congress sought to protect in enacting the FLSA."); *Menocal v. GEO Grp., Inc.,* 113 F. Supp. 3d 1125, 1128 (D. Colo. 2015) (holding immigrant detainees were not "employees" entitled to minimum wage under Colorado law because, like the FLSA, Colorado's minimum wage law "was not intended to be extended to those working in government custody.")  Plaintiffs' claims for wage-related and unjust enrichment damages create a clear conflict between state and federal law, as under Plaintiffs' theory, compliance with one violates the other – or at least creates an obstacle to ICE in achieving its goals. [4]

---

[3]    Originally, this authority was delegated to the United States Immigration and Naturalization Service ("INS") and then later to ICE after its formation.

[4]    It should also be noted that not only has Congress prescribed the circumstances under which immigrant detainees can be reimbursed for work while in federal custody, Congress has also enacted legislation expressly prohibiting the employment of unauthorized aliens.  *See* 8 U.S.C. § 1324a(a)(1)(A) (The Immigration Reform and Control Act makes it unlawful "to hire . . . for employment in the United States an alien knowing the alien is an unauthorized alien . . . with respect to such employment."  Thus, under Plaintiffs' theory that they are "employees," ICE's requirement that BFDF detainees be permitted to work under the Program (with its $1 daily rate) would require AGS to violate the Immigration Reform and Control Act.  Notably, the Contract itself clearly distinguishes between "detainees" and "employees."  *See* Mitchell Decl. at ¶¶ 10-11, 14.

Further, as the BFDF is an ICE-owned facility, AGS intends to assert the federal enclave doctrine as a defense to Plaintiff's state law claims.[5]  The "enclave clause" contained in the United States Constitution grants Congress with exclusive legislative power "in all Cases whatsoever ... over all places purchased" by the government "for the erection of Forts, Magazines, Arsenals, Dock–Yards, and other needful Buildings [.]"  U.S. Const. art. I, § 8, cl. 17.  Accordingly, based upon this doctrine, AGS will argue that any New York laws that are inconsistent with federal purposes, such as the employment of and payment to immigration detainees in federal custody, would not apply within the enclave. *See James Stewart & Co. v. Sadrakula*, 309 U.S. 94, 103-104 (1940) (reasoning that if the enforcement of a pre-existing state law would conflict with "the carrying out of a national purpose," then the state law must be held invalid within the enclave). Based on the above authority, AGS has "colorable federal defenses" that federal law preempts New York law vis-à-vis Plaintiffs' claims and which should be adjudicated in federal court.

## B.    Implication of Significant Federal Issues.

The Supreme Court has recognized the application of federal-question jurisdiction "over state law claims that implicate significant federal issues."  *See Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.,* 545 U.S. 380 312 (2005) (citing *Hopkins v. Walker*, 244 U.S. 486, 490-491 (1917)).  This application "captures the commonsense notion that a federal court ought to be able to hear claims recognized under state law that nonetheless turn on substantial questions of federal law, and thus justify resort to the experience, solicitude, and hope of uniformity that a federal forum offers on federal issues."  *Grable*, 545 U.S. at 312.

---

[5]    The federal enclave doctrine likewise provides a basis for federal question jurisdiction.  When an injury occurs in a federal enclave, a defendant may remove a case filed in state court to federal district court under 28 U.S.C. § 1441(a).  *See* 28 U.S.C. § 1331; *Mater v. Holley*, 200 F.2d 123, 125 (5th Cir. 1952); *Willis v. Craig*, 555 F.2d 724, 726 n. 4 (9th Cir. 1977) (*per curiam*); *Durham v. Lockheed Martin Corp.*, 445 F.3d 1247, 1250 (9th Cir. 2006); *Lawler v. Miratek Corp.*, No. 09-252, 2010 WL 743925, at *2 (W.D. Tex. Mar. 2, 2010) ("Federal enclave jurisdiction is a subspecies of federal question jurisdiction . . .").

Here, Plaintiffs' claims against AGS necessarily implicate questions of federal immigration law which are properly heard in federal court. ICE's policies and requirements and federal immigration law direct AGS's obligations under its contract. This case requests a determination as to whether "detainees," defined and controlled by federal law, constitute "employees" under state law. In light of the Immigration Reform and Control Act's prohibition on employing unauthorized aliens as well as the Contract's prohibition against employing individuals who are not U.S. citizens, this is a highly contested issue of federal law. Thus, in order to adjudicate this issue, the Court will be required to address federal restrictions on the employability of detainees by federal contractors – an issue which implicates significant federal interests and which demands a uniform application nationwide. Accordingly, the federal government and its contractors have a clear interest in this case being heard in a federal forum. *See Boyle v. United Technologies Corp.*, 487 U.S. 500 (1988) (noting in the context of a state law suit under a federal procurement contract "[t]he imposition of liability on Government contractors will directly affect the terms of Government contracts: either the contractor will decline to manufacture the design specified by the Government, or it will raise its price. Either way, the interests of the United States will be directly affected.") Moreover, this Court's exercise of jurisdiction over this matter will not disturb the balance between federal and state judicial responsibilities as Congress has carved out its exclusive authority in the area of immigration law, including whether and how much detainees in federal custody should be paid.

## II.     **Diversity Jurisdiction**

The Court also has jurisdiction over Plaintiff Phimasone's claims on the basis of diversity of citizenship pursuant to 28 U.S.C. §1332(a), because the parties and interests are completely diverse, and a good faith reading of the Complaint shows that the amount in controversy

attributable to his claims exceeds the sum of $75,000, exclusive of interest and costs. Further, the court may exercise supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a) over Plaintiff Yeend's claims.

### A.    The Parties are Diverse.

While Plaintiffs' current citizenship is unclear from the Complaint, by Plaintiffs' admission, both Plaintiffs are current residents of New York. Compl. at ¶¶ 6, 8-10. The diversity statute permits suits between "citizens of a State and citizens or subjects of a foreign state" as long as the adverse parties are not domiciled in the same state. *See* 28 U.S.C. § 1332(a)(2). Further, for diversity purposes under 28 U.S.C. § 1332(a)(1), a person is a "citizen" of the state in which he or she is domiciled. *Newman-Green, Inc. v. Alfonzo-Larrain,* 490 U.S. 826, 828 (1989). Accordingly, regardless of whether § 1322(a)(1) or § 1332(a)(2) applies to Plaintiffs, their residency in New York is relevant to the Court's analysis.

Defendant is a limited liability company incorporated under the laws of Alaska, with its headquarters and principal place of business in Herndon, Virginia. Mitchell Decl. at ¶ 5. For purposes of diversity jurisdiction, the citizenship of a limited liability company is determined by the citizenship of all of its members. *Carden v. Arkoma Associates,* 494 U.S. 185 (1990). Further, a corporation "shall be deemed a citizen of any state by which it has been incorporated and of the State where it has its principal place of business." 28 U.S.C. § 1332(c)(1).

AGS is a wholly owned subsidiary of Akima, LLC, which is a limited liability company organized under the laws of Alaska with its headquarters and principal place of business located in Herndon, Virginia. Mitchell Decl. at ¶ 5. Akima, LLC is a wholly owned subsidiary of NANA Regional Corporation, which is a corporation organized under the laws of Alaska with its headquarters and principal place of business located in Anchorage, Alaska. *Id.* NANA Regional

12

Corporation is the sole owner of Akima, LLC.  *Id.* at ¶ 6.  As such, AGS is not a citizen of New York.

Thus, for purposes of 28 U.S.C. § 1332(a), complete diversity existed between Plaintiffs and AGS at the time Plaintiffs commenced this action in state court and continues to exist as of the time of the filing of this Notice of Removal.

**B.        Plaintiff Phimasone's Claims Exceed the Requisite Amount in Controversy.**

Removal pursuant to 28 U.S.C. § 1332 is proper because, based upon the allegations contained in the Complaint, AGS has a good faith belief that the amount in controversy as to Plaintiff Phimasone's claims exceeds the jurisdictional threshold for diversity jurisdiction.  Where, as here, a plaintiff's complaint does not state a specific monetary demand, a defendant may satisfy its burden of proof under § 1332(a) with a "plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart Cherokee Basin Op. Co. v. Owens,* 135 S.Ct.. 547, 554 (2014). This figure "should be accepted when not contested by the plaintiff or questioned by the court."  *Id.*  "A single plaintiff may aggregate all of its claims, related and unrelated, against a single defendant in calculating the amount in controversy." A*irlines Reporting Corp. v. S & N Travel, Inc*., 857 F. Supp. 1043, 1049 (E.D.N.Y. 1994), aff'd, 58 F.3d 857 (2d Cir. 1995) (citing 1 Moore's Federal Practice § 0.97[1] (1991)).

Here, Plaintiff Phimasone asserts claims for failure to pay minimum wage in accordance with Article 19 of the New York Labor Law, which sets minimum wages at $11.80 per hour.  In addition, Plaintiff Phimasone seeks damages for unpaid overtime, split shift wages, liquidated damages, statutory damages, restitution, costs, attorneys' fees, and interest.  *See* Complaint at ¶¶ 96-104.  Among other amounts, the relief requested contains a demand for AGS's profits.  *See* Compl. at ¶¶ 21-22, 77, 101-02.  While Plaintiffs do not allege a specific amount claimed in this

13

lawsuit, Plaintiffs claim that AGS benefits by retaining the difference between the $1 daily rate paid to detainees and the state minimum wage range and/or hourly rate of AGS employees. Compl. at ¶¶ 94-95, 101-02.

Plaintiff Phimasone alleges that he worked 6 hours per day, 5 days per week from "late 2018" through August 6, 2019; he claims he began participation in the Program approximately one week into his detention. Compl. at ¶ 52, 56. According to AGS's records, Plaintiff Phimasone was detained at BFDF beginning on September 10, 2018. Mitchell Decl. at ¶ 16. If entitled to minimum wage under New York law at $11.80 per hour for the approximately 47 weeks he spent at BFDF, he would have received $16,638. The amount he claims he should have received minus what he actually received under the Program's daily rate is **$16,403**.

Further, he alleges that he is entitled to split shift wages for each day worked, which would amount to approximately **$2,773**. Plaintiff Phimasone also claims that he worked an undetermined amount of overtime. Assuming only one hour of overtime per week amounts to **$831.90**. Plaintiff Phimasone also seeks liquidated damages, which include overtime, split shift, and unpaid wages. *Changxing Li et al. v. Kai Xiang Dong et al.*, No. 15 CV 7554, 2017 WL 892611, at *14 (S.D.N.Y. Mar. 7, 2017). Liquidated damages would add an additional **$20,007.90** in damages. He also seeks the maximum statutory damages for failure to provide pay stubs (**$5,000**) and failure to provide notice in accordance with N.Y. Lab. Law § 198 (**$5,000**). Accordingly, Phimasone's wage-related claims alone total approximately **$50,015.80**

Further, he seeks attorneys' fees under the New York Labor Law. It is reasonable to conclude that attorneys' fees would exceed **$25,000** by the time this case goes to trial. In addition to the above amounts, Phimasone seeks damages under the New York Constitution and disgorgement of AGS's profits. "Under Second Circuit law, the amount of disgorgement ordered

14

need only be a reasonable approximation of profits causally connected to the violation." *S.E.C. v. Wyly*, 56 F. Supp. 3d 260, 264 (S.D.N.Y. 2014) (internal quotations omitted).  Thus, when back pay, liquidated damages, disgorgements, and attorneys' fees are included there can be no doubt or dispute that the amount in controversy exceeds the jurisdictional threshold of $75,000.

<strong>C. The Court has Supplemental Jurisdiction over Plaintiff Yeend's Claims.</strong>

Pursuant to 28 U.S.C. § 1367, a federal court sitting in diversity may exercise supplemental jurisdiction over additional plaintiffs who fail to satisfy minimum amount-in-controversy requirement, as long as other elements of diversity jurisdiction are present, *i.e.* the parties are diverse, at least one named plaintiff satisfies amount-in-controversy requirement, and additional plaintiffs' claims are part of same case or controversy as those of the plaintiffs who allege sufficient amount in controversy.  *See Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 559 (2005).  As the Second Circuit explained, "Once jurisdiction is anchored, § 1367(a) permits the exercise of supplemental jurisdiction over claims asserted by additional diverse plaintiffs, whether or not such claims meet the amount-in-controversy requirement, unless jurisdiction is barred by § 1367(b)."  *Merrill Lynch & Co. Inc. v. Allegheny Energy, Inc.*, 500 F.3d 171, 178–79 (2d Cir. 2007) (citing *Exxon Mobil*, 545 U.S. at 558–59); *see also Bartlett v. Honeywell Int'l Inc.,* 737 F. App'x 543, 548 (2d Cir.), *cert. denied*, 139 S. Ct. 343, 202 L. Ed. 2d 225 (2018) ("a defendant must only establish a reasonable probability that one (not all) of the plaintiffs' claims exceeds $75,000").

As explained above, Plaintiff Yeend, a resident of New York, is diverse from AGS. However, as she was only detained at BFDF for less than two months, it is unclear from the face of the Complaint whether Plaintiff Yeend's claims exceed the requisite amount in controversy to

15

confer the Court with original jurisdiction under § 1332.[6]  Nevertheless, as her claims arise out of the same case and controversy as Plaintiff Phimasone's claims (*e.g.* whether Plaintiffs are "employees" under New York law), this Court may exercise supplemental jurisdiction over her claims pursuant to § 1367(a).

## VENUE IS PROPER

Plaintiff originally brought this action in the Supreme Court of the State of New York, County of Rensselaer.  The County of Rensselaer lies within the jurisdiction of the United States District Court for the Northern District of New York.  Therefore, pursuant to 28 U.S.C. §§ 1391(b) and 1441(a), and 1446(a), venue is proper in the Northern District of New York.

## REMOVAL IS TIMELY

Pursuant to 28 U.S.C. § 1446(b), this Notice of Removal is timely filed within thirty (30) days after receipt by AGS of the papers that provide the basis for removal of this action. *See* Exhibit 2.[7]

## REMOVAL IS PROPERLY FILED

Pursuant to 28 U.S.C. § 1446(a) and (d), this Notice of Removal complies with the requirements concerning a short and plain statement for the grounds of removal and the filing of all process, pleadings, and orders served upon AGS from the state court action. *See* Exhibit 3. These documents constitute all process, pleadings, and orders filed and/or served upon Defendant in this case at the time of the filing of this Notice of Removal.

---

[6]     AGS asserts that it has a good faith belief that the amount in controversy as to Plaintiff Yeend's claims exceeds the requisite threshold for diversity jurisdiction under 28 U.S.C. § 1332 when considering her claims for wages and penalties, restitution, disgorgement, and attorneys' fees in the aggregate.  However, to the extent that there is any doubt as to whether her claims exceed the amount in controversy needed for original jurisdiction, in an abundance of caution, AGS asserts that the Court may exercise supplemental jurisdiction over her claims.

[7]     The Affidavit of Service which Plaintiffs filed in the state court proceeding lists the date of service as September 16, 2020.  *See* Exhibit 3.  However, Defendant's records indicate that the date of service was September 18, 2020.  *See* Exhibit 2. Regardless of whether service was effectuated on September 16 or September 18, this Notice of Removal has been filed within 30 days from the earlier date (September 16, 2020), and is therefore timely.

In accordance with 28 U.S.C. § 1446(d), promptly after this Notice of Removal is filed, written notice thereof will be given to all adverse parties and a copy of this Notice of Removal will be filed with the clerk of the aforesaid state court to affect the removal of this civil action to this Honorable Court as provided by law.  A copy of the Notice to State Court of Removal of Civil Action is attached hereto as Exhibit 4.

This Notice of Removal is executed pursuant to Federal Rule of Civil Procedure 11.

**WHEREFORE**, Defendants pray that this Notice of Removal be accepted as good and sufficient, that the aforesaid Complaint be removed from the state court to this Honorable Court for trial and determination as provided by law, and that this Court enter such orders and issue such process as may be proper to bring before it copies of all records and proceedings in said civil action from said state court, and thereupon proceed with this civil action as if it had originally been commenced in this Court.

Respectfully submitted this the 16th day of October 2020.

**COUNSEL FOR DEFENDANT**

*/s/ Jessica L. Marrero*
Jessica L. Marrero, Esq.
THE KULLMAN FIRM
*A Professional Law Corporation*
1100 Poydras Street, Suite 1600
New Orleans, Louisiana 70163-1600
T: 504-524-4162 | F: 504-596-4114
JLM@KullmanLaw.com

17

## CERTIFICATE OF SERVICE

I hereby certify that on October 16, 2020, I electronically filed the foregoing document with the Clerk of Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record by U.S. mail and by electronic mail.

*/s/ Jessica L. Marrero*
**THE KULLMAN FIRM**