UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

DALILA YEEND and
BOUNNAM PHIMASONE,

                    Plaintiffs,

    v.

AKIMA GLOBAL SERVICES, LLC,
a/k/a AGS,

                    Defendant.

Civil Case No. 1:20-cv-01281

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS'
MOTION TO STRIKE DEFENDANT'S AFFIRMATIVE DEFENSES**

## TABLE OF CONTENTS

I. INTRODUCTION ............................................................................................................. 3

II. STATEMENT OF THE CASE ........................................................................................ 3

III. LEGAL STANDARD ...................................................................................................... 4

IV. ARGUMENT .................................................................................................................... 6

    A. Preemption ................................................................................................................. 6

    B. Federal Enclave ......................................................................................................... 9

    C. Failure to Join DHS and ICE ................................................................................... 12

    D. Third Party ............................................................................................................... 12

    E. Requested Relief Violates the Law .......................................................................... 12

    F. Civic Duty Exception ............................................................................................... 14

    G. Waiver ...................................................................................................................... 14

    H. Offset ....................................................................................................................... 15

V. CONCLUSION ............................................................................................................... 15

I.      **INTRODUCTION**

Plaintiffs Dalila Yeend and Bounnam Phimasone ("Plaintiffs") brought this action in state court to vindicate their state law rights to minimum wage for their labor, as assured by the New York Labor Law ("NYLL") and the New York State Constitution. Defendant Akima Global Services, LLC a/k/a AGS ("Defendant") has removed the case to this Court and filed an answer (Answer, dated Oct. 23, 2020 ("Answer"), Dkt. 6). Plaintiffs contend that this Court lacks subject matter jurisdiction and intend to file a motion to remand the action to state court. (*See* Dkt. 13.) However, as several of the affirmative defenses asserted by Defendant in the Answer are insufficient as a matter of law, and as Fed. R. Civ. P. 12(f) establishes the time frame in which a motion to strike must be made, Plaintiffs make the instant motion to strike Defendant's second, third, fourth, fifth, twelfth, nineteenth, twentieth, and twenty-second defenses. Because Plaintiffs believe this case is not properly in this Court, Plaintiffs request the Court to forbear addressing these issues until after the Court addresses the remand issues, as a remand will obviate the need to consider the questions raised in this motion.

As will be described further in the motion to remand, many of the deficiencies noted here with respect to the Answer also permeate the notice of removal (Notice of Removal, dated Oct. 16, 2020 ("Notice"), Dkt. 1), and Plaintiffs respectfully request that the Court hold this motion in abeyance, pending resolution of the motion to remand.

II.     **STATEMENT OF THE CASE**

Plaintiffs were formerly detained at the Buffalo Federal Detention Facility ("BFDF"), an immigration detention center operated by Defendant AGS, a private for-profit corporate entity. (*See* Complaint, dated Sept. 3, 2020 (Dkt. 2) ¶¶ 1, 2; Answer ¶¶ 1, 2, 20.) It is undisputed that Plaintiffs worked while detained at BFDF – Plaintiff Yeend performing tasks related to the

facility's kitchen and food cart operations and Plaintiff Phimasone buffing the floors of the detention center (Complaint ¶¶ 43, 53; Answer ¶¶ 43, 53) – but were not paid wages (Complaint ¶¶ 51, 59; Answer ¶¶ 51, 59). The only compensation Plaintiffs received for their labor was $1 per day (Complaint ¶¶ 46, 58; Answer ¶¶ 46, 58), which Defendant deposited into their commissary accounts on a weekly basis (Complaint ¶¶ 47, 59).

Plaintiffs allege that Defendant AGS was their employer within the meaning of the New York Labor Law, and that Plaintiffs are therefore entitled to recover from Defendant unpaid minimum wages, spread-of-hours and split shift compensation, and statutory damages for Defendant's failure to provide them with adequate hiring notices and wage statements. Plaintiffs also seek restitution for Defendant's violation of their right, protected by the New York state constitution, to be free from having their labor and its profits contracted, given or sold to AGS, and damages in such amounts necessary to prevent Defendant from being unjustly enriched. (*See* Complaint.)

### III. LEGAL STANDARD

"The court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). On a motion to strike, the moving party must demonstrate the following: "First, there must be no question of fact that might allow the defense to succeed. Second, there must be no substantial question of law that might allow the defense to succeed. Third, the plaintiff must be prejudiced by the inclusion of the defense." *SEC v. KPMG*, 2003 U.S. Dist. LEXIS 14301, at *2 (S.D.N.Y. Aug. 20, 2003). Motions to strike affirmative defenses are decided on the basis of the pleadings alone. *Nat'l Union Fire Ins. Co. of Pittsburgh v. Alexander*, 729 F. Supp. 192, 203 (S.D.N.Y. 1989) (citing

*Ciprari v. Servicos Aereos Cruzeiro do sul S.A.*, 245 F. Supp. 819, 820 (S.D.N.Y. 1965), *aff'd*, 359 F.2d 855 (2d Cir. 1966)).

An affirmative defense is "[a] defendant's assertion raising new facts and arguments that, if true, will defeat the plaintiff's or prosecution's claim, even if all allegations in the complaint are true." *Saks v. Franklin Covey Co.*, 316 F.3d 337, 350 (2d Cir. 2003) (quoting Black's Law Dictionary 430 (7th ed. 1999)). The Second Circuit has held that "the plausibility standard of *Twombly* applies to determining the sufficiency of all pleadings, including the pleading of an affirmative defense." *GEOMC Co. v. Calmare Therapeutics*, 918 F.3d 92, 98 (2d Cir. 2019) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) and referring to *Bell Atlantic v. Twombly*, 550 U.S. 544 (2007)); *State St. Global Advisors Trust Co. v. Visbal*, 431 F. Supp. 3d 322, 347 (S.D.N.Y. 2020); *Town & Country Linen Corp. v. Ingenious Designs LLC*, 2020 U.S. Dist. LEXIS 111610, at *32 (S.D.N.Y. June 25, 2020) ("In *GEOMC*, the Second Circuit squarely considered the question whether *Twombly* applies to the pleading of affirmative defenses and held that it does."). Thus, "a party asserting affirmative defenses must 'support these defenses with some factual allegations to make them plausible.'" *State St. Global Advisors Trust Co.*, 431 F. Supp. 3d at 347 (quoting *GEOMC Co.*, 918 F.3d at 99).

Conclusory assertions are not entitled to a presumption of truth under *Iqbal*. *State St. Global Advisors Trust Co.*, 431 F. Supp. 3d at 351. A defense is properly stricken when no facts are pleaded to support it, *United States v. Oswego Falls Corp.*, 113 F.2d 322, 325 (2d Cir. 1940) (finding that the defense of duress was "groundless," as no facts had been pleaded to support it); *GEOMC Co.*, 918 F.3d at 95 (citing *Oswego Falls Corp.*), or when it is legally insufficient, *De Pasquale v. Williams-Bauer Corp.*, 151 F.2d 578, 580 (2d Cir. 1945). Where a court finds that "the defense is insufficient as a matter of law, the defense should be stricken to eliminate the

5

delay and unnecessary expense from litigating the invalid claim." *Etienne v. Wal-Mart Stores, Inc.*, 197 F.R.D. 217, 220 (D. Conn. 2000) (quoting *F.D.I.C. v. Eckert Seamans Cherin & Mellott*, 754 F. Supp. 22, 23 (E.D.N.Y. 1990)).

An affirmative defense is "immaterial if it bears no essential or important relationship to the primary claim for relief, and is impertinent if it contains statements that do not pertain to or are unnecessary to the issues in question." *Nat'l Union Fire Ins. Co. of Pittsburgh*, 729 F. Supp. at 203 (internal quotations omitted); *see also Anderson v. Davis Polk & Wardwell, LLP*, 850 F. Supp. 2d 392, 416 (S.D.N.Y. 2012) (motion to strike may be granted where the matter "clearly has no bearing on the issue in dispute") (quoting *Slue v. N.Y. Univ. Med. Ctr.*, 409 F. Supp. 2d 349, 374 (S.D.N.Y. 2006)). Applying these standards, courts in the Second Circuit have found it appropriate to strike matters "whose materiality is highly unlikely or whose effect would be prejudicial." *Parrish v. Sollecito*, 2002 WL 1072227, at *1 (S.D.N.Y. May 28, 2002) (citing *Lipsky v. Commonwealth United Corp.*, 551 F.2d 887, 893 (2d Cir. 1976)).

**IV.     ARGUMENT**

Defendant's Answer contains 29 affirmative and "other" defenses, most of which contain no factual allegations whatsoever. Plaintiffs will be prejudiced by such a needlessly broad scope of discovery and trial, and by the unnecessary delay and expense of litigating these insufficient defenses any further. Plaintiffs respectfully request that the Court strike the most glaringly deficient of these defenses. *See Oswego Falls Corp.*, 113 F.2d at 325 (finding defense "groundless," where no facts had been pleaded in support); *GEOMC Co.*, 918 F.3d at 95.

**A. Preemption**

Defendant's second purported defense is that "Plaintiffs' claims are preempted by federal law." Defendant fails to plead any facts related to this defense and fails to identify which federal

6

law preempts which claims raised by the Plaintiffs. This purported defense does not provide fair notice and fails to satisfy the pleading standard of Fed. R. Civ. P. 8, particularly as clarified by the *Twombly* plausibility standard; accordingly, it should be stricken. *Oswego Falls Corp.*, 113 F.2d at 325; *GEOMC Co.*, 918 F.3d at 95; *Moore v. BASF Corp.*, 2012 U.S. Dist. LEXIS 145135, at *7 (E.D. La. Oct. 9, 2012) (striking preemption defense where defendant failed to identify in its answer the applicable law). Plaintiffs would be prejudiced by having to engage in broader discovery and litigate the defense that some or all of their claims are preempted by unspecified federal law. Moreover, as Defendant has partially based its removal of the case to federal court on its contention that preemption offers a "colorable federal defense" to Plaintiffs' state law claims (Notice, pp. 7-9), Plaintiffs are also prejudiced by having to litigate the case in a forum that was not of their choosing.

Even when the Answer is read in conjunction with the Notice, Defendant's contentions fail as a matter of law. In the Notice, Defendant asserts that federal law preempts the field of "[i]mmigration" and that Congress has delegated authority to ICE, which has then engaged AGS, "to provide detention management services." (Notice, p. 8.) But Plaintiffs' claims do not challenge federal power over immigration, and the protections of the New York Labor Law and state constitutional provision do not depend upon immigration status. *See* N.Y. Lab. L. §§ 652, 663; N.Y. Const., Art. III, Sec. 24. Defendant cites several sections of the Immigration and Nationality Act, but none of these sections is a preemption provision, and none bears on the issues in this case.[1] Plaintiffs are not, in this action, disputing the legality of their detention by

---

[1] The sections cited by Defendant are 8 U.S.C. §§ 1103(a)(1) (charging the Secretary of Homeland Security with enforcing immigration laws), 1225 (detailing procedures for inspection by immigration officers and review of those decisions), 1226 (allowing for detention of persons subject to removal), and 1231 (allowing for detention and removal of persons ordered removed). (Notice, p. 8.)

Defendant, but rather Defendant's failure to comply with New York state law while benefiting from the labor Plaintiffs performed. As the New York Court of Appeals has noted, "notwithstanding the federal government's exclusive control over immigration and naturalization, the 'States possess broad authority under their police powers to regulate the employment relationship to protect workers within the State.'" *Balbuena v. IDR Realty LLC*, 812 N.Y.S.2d 416, 426 (2006); *see also Washington v. GEO Group, Inc.*, 283 F. Supp. 3d 967 (W.D. Wash. 2017) (federal immigration law does not preempt WA state minimum wage law); *Chen v. Geo Group, Inc.*, 287 F. Supp. 3d 1158 (W.D. Wash. 2017) (same); *Novoa v. Geo Group, Inc.*, 2018 U.S. Dist. LEXIS 117129, at *11 (C.D. Cal. June 21, 2018) (federal immigration law does not preempt CA minimum wage law).

    Defendant also asserts in the Notice that "Congress is empowered to legislate the fields of employment status and payment to immigration detainees," citing to a statute authorizing appropriations to the now-defunct Immigration and Naturalization Service. (Notice, p. 8.) Again, Plaintiffs' work authorization does not bear on the issues to be decided in this case. Plaintiffs do not seek to establish, through this action, that they were authorized to work under federal or state law. Rather, Plaintiffs allege, and Defendant admits, that they *did* work. (Answer ¶¶ 43 (admitting that Plaintiff Yeend performed "food cart and/or kitchen-related tasks"), 53 (admitting that Plaintiff Phimasone's "tasks included buffing the floors").) The validity of Plaintiffs' claims depends on whether they were employees within the meaning of the New York Labor Law, a question whose answer does not depend on their work authorization status. *See* N.Y. Lab. L. § 663(1) (setting forth that "*any* employee" is entitled to recover under the minimum wage article) (emphasis added).

With respect to "payment to immigration detainees," being "empowered to legislate" is a far cry from preempting state legislation. *See N.Y. State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645, 654 (1995) (noting that the Supreme Court addresses claims of preemption "with the starting presumption that Congress does not intend to supplant state law"). Indeed, Defendant admits that "Congress ended the practice of specifically delineating reimbursement amounts for the [detainee work] Program after 1979." (Notice, p. 8.) In other words, there is no federal legislation that *could* preempt state law with respect to payment for labor performed by Plaintiffs in immigration detention. *See also Novoa v. GEO Group, Inc.*, 2018 U.S. Dist. LEXIS 117129, at *11 (C.D. Cal. June 21, 2018) ("Congress did not preempt the field of immigration detainee wages."). Defendant cites no federal law that prohibits AGS from paying detainees an hourly rate equal to or in excess of the state minimum wage. In sum, no legal authority cited by Defendant in support of its preemption defense prohibits or conflicts with a private, for-profit corporate entity's compliance with state laws.

Defendant's preemption defense fails to meet the pleading standard of Rule 8, as clarified by the Second Circuit in *GEOMC*, and fails as a matter of law. It should be stricken from the Answer.

### B. Federal Enclave

Defendant's third purported defense is that Plaintiffs' claims are "barred or limited to the extent that they are preempted by, subject to, or are required to be interpreted consistent with the federal enclave doctrine." Defendant has not alleged any set of facts to suggest that a federal enclave is implicated by the claims in this case. In particular, there are no factual assertions – in the Answer or in the Notice – that the land upon which Plaintiffs performed labor is a federal enclave. Rather, Defendant says only that "the BFDF is an ICE-owned facility." (Notice, p. 10.)

But the fact that a federal agency owns property does not transform that property into a federal enclave.

The United States may own land within a state, but without the state's express consent to cede its jurisdiction, the United States possesses the land simply as "an ordinary proprietor." *Paul v. U.S.*, 371 U.S. 245, 263 (1963) (citing *James v. Dravo Contracting Co.*, 302 U.S. 134, 141-42 (1937)). Only with "a cession of legislative authority and political jurisdiction" by the state, and only with the acceptance of jurisdiction by the United States, does the land become a federal enclave subject to exclusive federal jurisdiction. *Ft. Leavenworth R. Co. v. Lowe*, 114 U.S. 525, 541 (1885); *Mason Co. v. Tax Comm'n*, 302 U.S. 186, 197 (1937) ("The acquisition of title by the United States is not sufficient to effect that exclusion [of state legislative authority]."); *see also id.* at 207 (noting that the United States may accept or decline a transfer of exclusive jurisdiction); *Atkinson v. Tax Comm'n*, 303 U.S. 20, 23 (1938) ("The mere fact that the Government needs title to property within the boundaries of a State 'does not necessitate the assumption by the Government of the burdens incident to an exclusive jurisdiction.'") (quoting *Mason Co.*, 302 U.S. at 207). Defendant has not alleged any facts to support a conclusion that New York ceded jurisdiction over BFDF to the United States at any point, nor that the United States accepted a transfer of exclusive jurisdiction. Accordingly, Defendant has failed to plead facts from which it could plausibly be inferred that BFDF constitutes a federal enclave.

Furthermore, even where a state *does* cede jurisdiction to the federal government, the local laws in force as of the date of cession that are protective of private rights continue in force until abrogated by Congress. *Chicago, R.I. & P. Ry. v. McGlinn*, 114 U.S. 542, 545 (1885); *Stewart & Co. v. Sadrakula*, 309 U.S. 94 (1940); *Paul*, 371 U.S. at 268. Defendant contends only that BFDF "is" owned by ICE, and is silent as to when the federal agency acquired such

ownership. Thus, even if New York had ceded jurisdiction over BFDF, and the United States had accepted the transfer, Defendant has failed to plead sufficient facts to plausibly infer that Plaintiffs' claims – which arise under the New York Minimum Wage Act, which became law in 1960, and a New York state constitutional provision hailing from 1897 – would be impacted in any way by the federal enclave doctrine.

In reality, it appears from publicly available land records, of which this Court may take judicial notice, *see Illarramendi v. United States*, 2020 U.S. Dist. LEXIS 23287, at *15 & n.4 (D. Conn. Feb. 11, 2020), that the United States purchased the land in Batavia, New York on which BFDF operates in 1996, from the Genesee County Industrial Development Agency.[2] Plaintiffs are aware of no legislative act by New York state that ceded jurisdiction over this land then or at any later time. Moreover, even if New York *had* ceded jurisdiction over Batavia in 1996, the New York Labor Law and the applicable provision of the New York state constitution would remain in full force, and the federal enclave doctrine would offer no defense to the claims raised in this case. *Stewart & Co.*, 309 U.S. at 94; *Paul*, 371 U.S. at 268.

As a matter of law, Defendant AGS, a private, for-profit corporate entity operating in New York state, cannot avail itself of the federal enclave doctrine to avoid compliance with New York state law simply because the land on which it operates is federally owned. This defense is both factually and legally insufficient and should be stricken from the Answer.

---

[2] *See* http://gisp.co.genesee.ny.us/PHD/viewer/. An advanced search by address reveals that the property located at "4250 Federal" in Batavia was purchased for $262,000 from the Genesee County IDA by the United States on June 28, 1996. (*See* https://www.ice.gov/detention-facility/buffalo-batavia-service-processing-center (confirming address of BFDF as 4250 Federal Drive, Batavia, NY).)

### C. Failure to Join DHS and ICE

In its fourth purported defense, Defendant states that the Department of Homeland Security and ICE are required parties under Fed. R. Civ. P. 19, such that Plaintiffs' failure to join them as defendants constitutes a defense for AGS. (Answer, p. 20.) Rule 19 sets out the circumstances under which a party is required to be joined in the action. *See* Fed. R. Civ. P. 19(a)(1). Here, Defendant has not pleaded any facts, or even made any assertions, as to why the Department of Homeland Security or ICE is a required party within the meaning of Rule 19. Plaintiffs should not be left to guess why Defendant contends these federal agencies must be joined as parties in order for a just adjudication of Defendant's compliance with New York state labor law and the state constitution. *See* Fed. R. Civ. P. 8; *GEOMC Co.*, 918 F.3d at 95. Defendant has presented no facts, nor question of law, that could enable them to defend against Plaintiffs' claims, and Plaintiffs would be prejudiced by the unnecessary expansion of the case and the scope of discovery.

### D. Third Party

Defendant's fifth purported defense contends that any injuries or damages suffered by Plaintiffs "were caused by the acts of a third party who has not been named as a party to this action and over whom Defendant has no control." (Answer, p. 6.) Defendant does not identify the "third party" it believes is responsible, and over whom it allegedly has no control. It provides no details as to the alleged role of the unidentified party in any of the conduct complained of in the Complaint. As such, the pleading of this defense is legally insufficient. There is no plausible basis from which to infer that this conclusory statement could be true or constitute a defense to any of the claims in the case. *State St. Global Advisors Trust Co.*, 431 F. Supp. 3d at 351

(conclusory statements do not satisfy plausibility standard); *Oswego Falls Corp.*, 113 F.2d at 325 (proper to strike defense when no facts pleaded to support it).

### E. Requested Relief Violates the Law

In its 12th purported defense, Defendant does not identify any law that would be violated, should Plaintiffs prevail in their claims. (Answer, p. 20.) For this reason alone, the defense is insufficient and should be stricken. *See Moore v. BASF Corp.*, 2012 U.S. Dist. LEXIS 145135, at *7. In addition, Defendant's statement that because Plaintiffs lacked employment authorization at the time they performed labor at BFDF, they are not entitled to relief, is contrary to well-settled law. The New York Labor Law applies to all workers, even if they lacked work authorization at the time their labor was performed. *See Balbuena v. IDR Realty LLC*, 812 N.Y.S.2d 416, 427 (2006) (The "Labor Law, therefore, applies to all workers in qualifying employment situations – regardless of immigration status – and nothing in the relevant statutes or our decisions negates the universal applicability of this principle.") (citing cases); *Saavedra v. Mrs. Bloom's Direct, Inc.*, 2018 U.S. Dist. LEXIS, at *3 (S.D.N.Y. May 24, 2018) ("the law in this Circuit is clear that a plaintiff's immigration status has no bearing on her rights to recover unpaid wages under the . . . New York Labor Law"); *Pacheco v. Chickpea at 14th St., Inc.*, 2019 U.S. Dist. LEXIS 90714, at *17 (S.D.N.Y. May 30, 2019) ("As numerous courts have held, the type of claims pled here – seeking to use the NYLL to remedy a failure to pay for past work performed – are available to a plaintiff without documented status.") (citing cases). Plaintiffs are unaware of any case in which a court has held that lack of work authorization bars relief under the NYLL for work already performed.

Likewise, there is no legal requirement for an individual to seek approval or to meet certain qualifications in order to be entitled to wages for labor that they performed. *See* N.Y.

13

Lab. L. §§ 652, 663(1). In addition to being insufficiently pleaded, these purported "defenses" are contrary to law and should be stricken.

### F. Civic Duty Exception

Defendant's 19th purported defense is that AGS was "entitled to require a communal contribution by ICE detainees, including Plaintiffs, in the form of housekeeping tasks under the civic duty exception to the Thirteenth Amendment's prohibition against involuntary servitude." (Answer, p. 21.) But Plaintiffs have not raised any Thirteenth Amendment claims, nor any state law claims of involuntary servitude. This defense is inapposite to the claims at issue in this case and should be stricken to avoid litigating an irrelevant matter. *Nat'l Union Fire Ins. Co. of Pittsburgh*, 729 F. Supp. at 203 (a pleading is "impertinent if it contains statements that do not pertain to or are unnecessary to the issues in question") (internal quotations omitted); *see also Anderson*, 850 F. Supp. 2d at 416 (motion to strike may be granted where the matter "clearly has no bearing on the issue in dispute") (quoting *Slue v. N.Y. Univ. Med. Ctr.*, 409 F. Supp. 2d 349, 374 (S.D.N.Y. 2006)).

### G. Waiver

Defendant's 20th defense is that "Plaintiffs knowingly waived their claims when they freely elected to participate in the Voluntary Detainee Worker Program." (Answer, p. 21.) Defendant does not specify which rights they contend were waived, nor any facts supporting the conclusory assertion that such alleged waiver was "knowing" on the part of the Plaintiffs. For these reasons alone, as explained above, the defense should be stricken from the Answer. Even more glaringly, however, the New York Labor Law expressly *prohibits* "waiver" as a defense to underpayment of minimum wages, in clear and absolute terms: "Any agreement between the employee, and the employer to work for less than such wage shall be no defense to such action."

N.Y. Lab. L. § 663(1). Courts have frequently reiterated that workers cannot waive their statutory rights to be paid minimum wage under the labor laws, including the New York Labor Law. *See, e.g., Padilla v. Manlapaz*, 643 F. Supp. 2d 302, 311 (E.D.N.Y. 2009); *Mark v. Gawker Media LLC*, 2016 U.S. Dist. LEXIS 41817, at *18 (S.D.N.Y. Mar. 29, 2016) (noting that a signed release was "necessarily ineffective" because "employees cannot waive their right to be paid the minimum wage under either the FLSA or NYLL"). This defense is legally and factually insufficient and should be stricken from the Answer.

### H.  Offset

Defendant's 22nd defense is a purported entitlement to an "offset" for "costs incurred by Defendant in providing material benefits, including but not limited to housing, food, clothing, and recreation, to Plaintiffs while detained, as well as costs incurred in operating the Voluntary Detainee Worker Program." (Answer, p. 21.) Defendant has identified no legal basis for this purported defense. In addition, Defendant has pleaded no facts as to what housing, food, clothing, or recreation were provided to Plaintiffs, or what "costs" it believes are properly attributable to Plaintiffs. These omissions are particularly notable, given that Defendant admits it is paid by the federal government for services provided under the contract to operate the detention center, which presumably includes the provision of "housing, food, clothing, and recreation" to detainees. (Answer ¶ 2.) This defense is legally and factually insufficient and should be stricken from the Answer.

### V.  CONCLUSION

Plaintiffs would be prejudiced by the continued inclusion of these unsupported and insufficient defenses, as they needlessly expand the scope of discovery and the matters to be litigated. For the foregoing reasons, Plaintiffs respectfully move the Court to grant Plaintiff's

motion to strike Defendant's second, third, fourth, fifth, twelfth, nineteenth, twentieth, and twenty-second defenses.

                Respectfully submitted,

                <u>/s/ Maureen Hussain</u>
                Maureen Hussain, Esq.
                Laura Revercomb, Esq.
                Dan Getman, Esq., Of counsel
                Worker Justice Center of New York
                9 Main St.
                Kingston, NY 12401
                (845) 331-6615
                mhussain@wjcny.org
                lrevercomb@wjcny.org
                dgetman@getmansweeney.com

                *Attorneys for Plaintiffs*