**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

DALILA YEEND and
BOUNNAM PHIMASONE,

                              Plaintiffs,

          v.                                          Civil Case No. 1:20-cv-01281

AKIMA GLOBAL SERVICES, LLC,
a/k/a AGS,

                              Defendant.


**MEMORANDUM OF LAW IN SUPPORT**
**OF PLAINTIFFS' MOTION TO REMAND**


Respectfully submitted,


*/s/ Maureen Hussain*

Maureen Hussain, Esq.
Laura Revercomb, Esq.
Dan Getman, Esq., Of counsel
Worker Justice Center of New York
9 Main St.
Kingston, NY 12401
(845) 331-6615
mhussain@wjcny.org
lrevercomb@wjcny.org
dgetman@getmansweeney.com


Dated:  November 30, 2020

## **TABLE OF CONTENTS**

I.      INTRODUCTION .................................................................. 8

II.     STATEMENT OF THE CASE ................................................ 9

III.    THE CASE MUST BE REMANDED FOR LACK OF JURISDICTION .. 9

    A.  Legal Standards Governing Removal ................................ 9

    B.  Defendant has Failed to Show that Diversity Jurisdiction Exists ..... 10

        1.  Defendant has Failed to Show Diversity at Filing or Removal ..... 11

        2.  Defendant has Failed to Establish that the Amount in Controversy Exceeds $75,000 ............................. 16

    C.  Defendant has Failed to Show that Federal Question Jurisdiction Exists ..... 18

        1.  The Federal Enclave Doctrine is Inapposite ................. 18

        2.  Defendant has Not Satisfied the Three-Part Test for a Private Contractor to Avail Itself of the Federal Officer Removal Statute .......................... 20

            a.  Defendant AGS was Not Acting Under Color of Federal Office ....................... 21

            b.  Defendant Lacks a Colorable Federal Defense ........... 24

                i.   BFDF is Not Located in a Federal Enclave ...... 24

                ii.  Plaintiffs' Claims are Not Preempted ........... 25

        3.  No Substantial Federal Issue is Implicated ............ 28

    D.  Even if the Court has Subject Matter Jurisdiction, Abstention is Warranted ............... 30

IV.     CONCLUSION ................................................................ 32

## **TABLE OF AUTHORITIES**

**Cases**                                                                                   **Page(s)**

*Altissima Ltd. v. One Niagara LLC*, 2010 WL 3504798, at \*2
(W.D.N.Y. Sept. 2, 2010) .................................................................... 12, 13

*Anwar v. Fairfield Greenwich Ltd.*, 676 F. Supp. 2d 285, 292 (S.D.N.Y. 2009) ..... 10

*Arbaugh v. Y&H Corp.*, 546 U.S. 500, 513 n.10, 126 S. Ct. 1235 (2006) ............... *passim*

*Balbuena v. IDR Realty LLC*, 812 N.Y.S.2d 416, 426 (2006) ............................ *passim*

*Bd. of Cty. Comm'rs v. Suncor Energy (U.S.A.) Inc.*, 965 F.3d 792, 823
(10th Cir. 2020) ..................................................................................... 22

*Bell v. Hood*, 327 U.S. 678, 682-83 (1946) ...................................................... 24

*Brown v. First National City Bank*, 503 F.2d 114, 118 (2d Cir. 1974) ................... 31

*Bynog v. Cipriani Group, Inc.*, 1 N.Y.3d 193, 198 (N.Y. 2003) ........................... 29

*CBS, Inc. v. Snyder*, 762 F. Supp. 71, 73 (S.D.N.Y. 1991) ................................ 10, 13

*Celli v. Shoell*, 40 F.3d 324, 328 n.4 (10th Cir. 1994) ....................................... 19

*Chen v. Geo Group, Inc.*, 287 F. Supp. 3d 1158 (W.D. Wash. 2017) ..................... 27

*Chesapeake & Ohio Railway Co. v. Cockrell*, 232 U.S. 146, 151 (1914) ............... 10

*Codapro Corp. v. Wilson*, 997 F. Supp. 322, 324 (E.D.N.Y. 1998) ...................... 12

*Colon v. Major Perry St. Corp.*, 987 F. Supp. 2d 451, 464-65 (S.D.N.Y. 2013) ..... 29

*Colorado River Water Conservation District v. United States*,
424 U.S. 800, 814 (1976) ......................................................................... 31, 32

*Compania Distribuidora Woodward Y. Dickerson, Inc. v.
Cristina Copper Mines, Inc.*, 114 F. Supp. 454, 456 (S.D.N.Y. 1953) ............... 13

*Conticommodity Svcs., Inc. v. Lemme*, 1983 U.S. Dist. LEXIS 18851, at \*4
(S.D.N.Y. Mar. 3, 1983) .......................................................................... 10

*County of San Mateo v. Chevron Corp.*, 960 F.3d 586, 600 (9th Cir. 2020) ........... 22

*Ctr. for Radio Info., Inc. v. Herbst*, 876 F. Supp. 523, 525 (S.D.N.Y. 1995) ........ 15

*Cuomo v. Crane*, 771 F.3d 113, 115 (2d Cir. 2014) .................................................. 21

*Dart Cherokee Basin Operating Company, LLC, et al. v. Owens*,
135 S. Ct. 547 (2014) .................................................. 16

*Empire Healthcare Assur., Inc. v. McVeigh*, 547 U.S. 677,
126 S. Ct. 2121 (2006) .................................................. 28, 30

*E.R. Squibb & Sons, Inc. v. Accident & Cas. Ins. Co*.,
160 F.3d 925, 930 (2d Cir. 1998) .................................................. 12

*Ft. Leavenworth R. Co. v. Lowe*, 114 U.S. 525, 541 (1885) .................................................. 19

*Geo Grp., Inc. v. Newsom*, 2020 WL 5968759, at *86, 2020
(S.D. Cal. Oct. 8, 2020) .................................................. 23

*Gordon v. Air & Liquid Sys. Corp.*, 990 F. Supp. 311, 317 (E.D.N.Y. 2014) .................................................. 21

*Grable & Sons Metal Prods. Inc. v. Darue Eng'g & Mfg.*,
545 U.S. 308 (2005) .................................................. 28, 30

*Guevara v. I.N.S.*, 902 F.2d 394 (5th Cir. 1990) .................................................. 28

*Handelsman v. Bedford Vill. Assoc. Ltd. P'ship,* 213 F.3d 48, 51-52
(2d Cir. 2000) .................................................. 12, 13

*Heery v. Stop & Shop Supermarket Co. LLC*, 2017 WL 1745490, at *2
(E.D.N.Y. May 3, 2017) .................................................. 12

*Hogan v. Consol. Rail Corp.*, 961 F.2d 1021, 1027 (2d Cir. 1992) .................................................. 15

*Illarramendi v. United States,* 2020 WL 656698, at *15 & n.4
(D. Conn. Feb. 11, 2020) .................................................. 14, 20

*In re Joint E. & S. Districts Asbestos Litig.*, 1990 WL 129194, at *3
(E.D.N.Y. Aug. 30, 1990) .................................................. 15

*In re MTBE Products Liab. Litig.*, 488 F.3d 112, 124 (2d Cir. 2007) .................................................. *passim*

*Isaacson v. Dow Chem. Co.,* 517 F.3d 129, 134 (2d. Cir. 2008) .................................................. 21

*Jacobs v. District Director of Internal Revenue*, 217 F. Supp. 104, 105-06
(S.D.N.Y. 1963) .................................................. 10

*James v. Dravo Contracting Co.*, 302 U.S. 134, 141-42 (1937) .................................................. 19

*James Stewart & Co. v. Sadrakula*, 309 U.S. 94, 99-100 (1940) ............................. 19, 25

*Kelly v. Lockheed Martin Servs. Group*, 25 F. Supp. 1, 2 (D.P.R. 1998) ............. *passim*

*Logue v. United States*, 412 U.S. 521, 531 (1973) ............................................. 22

*Louisiana Power & Light Co. v. City of Thibodaux*, 360 U.S. 25 (1959) ............. 30-32

*Lupo v. Human Affairs Int'l, Inc*., 28 F.3d 269, 274 (2d Cir. 1994) ..................... *passim*

*Martropico Compania, Naviera S.A. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara (Pertamina)*, 428 F. Supp. 1035, 1037 (S.D.N.Y. 1977) ............. 9

*Maryland v. Louisiana*, 451 U.S. 725, 746 (1981) .............................................. 25

*Maryland v. Soper (No. 1)*, 270 U.S. 9, 33, 46 S. Ct. 185 (1926) ........................ 21, 23

*McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936) ............. 11

*Menocal v. GEO Grp., Inc.*, 113 F. Supp. 3d 1125, 1135 (D. Colo. 2015) ............. 28

*Meredith v. Winter Haven*, 320 U.S. 228, 236-38 (1943) ................................... 31

*Mesa v. California*, 489 U.S. 121 (1989) ........................................................ 21

*Meyerson v. Harrah's E. Chicago Casino*, 299 F.3d 616, 617 (7th Cir. 2002) ....... 13, 14

*Nesbiet v. GE*, 399 F. Supp. 2d 205, 210 (S.D.N.Y. 2005) ................................ 20, 21

*New York State Conf. of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645, 654-55 (1995) ........................................................................ 25, 26

*Novoa v. Geo Group, Inc.*, 2018 WL 3343494, at *11 (C.D. Cal. June 21, 2018) ............................................................................. 27, 28

*Owen Equipment & Erection Co. v. Kroger*, 437 U.S. 365, 374, 98 S. Ct. 2396 (1978) ............................................................................... 9

*Pacheco v. Chickpea at 14th St., Inc.*, 2019 WL 2292571, at *17 (S.D.N.Y. May 30, 2019) ........................................................................... 26, 29

*Paul v. United States*, 371 U.S. 245 (1963) .................................................... *passim*

*PepsiCo, Inc. v. Wendy's Int'l, Inc.*, 118 F.R.D. 38, 40-41 (S.D.N.Y. 1987) .......... 15

*Rachel v. Georgia*, 342 F.2d 336, 340 (5th Cir. 1965) ...................................... 10

*R.G. Barry Corp. v. Mushroom Makers, Inc.,* 612 F.2d 651, 655
(2d Cir. 1979) ........................................................................................................... 11

*Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230 (1947) ................................... 26

*Rosas v. Alice's Tea Cup, LLC,* 127 F. Supp. 3d 4, 9 (S.D.N.Y. 2015) .................. 29

*Ryan v. Dow Chem. Co.,* 781 F. Supp. 934, 946-7 (E.D.N.Y. 1992) ....................... 22

*Saavedra v. Mrs. Bloom's Direct, Inc.*, 2018 WL 2357264, at *3
(S.D.N.Y. May 24, 2018) .................................................................................... 26, 29

*Scherer v. Equitable Life Assurance Soc'y of U.S.*, 347 F.3d 394, 397
(2d Cir. 2003) ........................................................................................................... 11

*Schultz v. Tribune ND, Inc.*, 754 F. Supp. 2d 550, 556 (E.D.N.Y. 2010) .............. 30

*Shamrock Oil Co. v. Sheets*, 313 U.S. 100 (1941) ................................................. 10

*Smith v. Metropolitan Property & Liability Ins. Co.*, 629 F.2d 757, 759
(2d Cir. 1980) ..................................................................................................... 30, 31

*Somlyo v. J. Lu-Rob Enters., Inc.*, 932 F.2d 1043, 1045-46 (2d Cir. 1991) ...... 10, 16

*Stevens v. Nichols*, 130 U.S. 230, 231, 9 S. Ct. 518, 519 (1889) .......................... 11

*Strawbridge v. Curtiss,* 7 U.S. (3 Cranch) 267, 2 L. Ed. 435 (1806) ..................... 12

*Tardd v. Brookhaven Nat'l Lab.*, 407 F. Supp. 2d 404, 417 (E.D.N.Y. 2006) ........ 18

*Tongkook Am., Inc. v. Shipton Sportswear Co.*, 14 F.3d 781, 784
(2d Cir. 1994) ........................................................................................................... 16

*Trapanotto v. Aetna Life Ins. Co.-Aetna Health Plans*, 1996 WL 417519, at *9
(S.D.N.Y. July 25, 1996) .......................................................................................... 18

*United Food & Commercial Workers Union, Local 919, AFL-CIO v.*
*CenterMark Props. Meriden Square, Inc.*, 30 F.3d 298, 305 (2d Cir. 1994) ........... 11

*United States Liab. Ins. Co. v. M Remodeling Corp.*,
444 F. Supp. 3d 408, 410 (E.D.N.Y. 2020) ......................................................... 13, 14

*Washington v. GEO Group, Inc.*, 283 F. Supp. 3d 967 (W.D. Wash. 2017) ........... 27

*Washington Nat'l Ins. Co. v. OBEX Grp. LLC*, 958 F.3d 126, 135
(2d Cir. 2020) ..................................................................................................... 11, 14

*Weave Masters, Inc. v. Cambridge Fashion, Inc.*, 2009 WL 510834, at *2
(S.D.N.Y. Feb. 26, 2009) ............................................................................. 12, 13

*White v. Wellington*, 627 F.2d 582, 587 (2d Cir. 1980) ................................. 10

*Williams v. Best Buy Co.*, 269 F.3d 1316, 1321 (11th Cir. 2001) ................. 16

*Willingham v. Morgan*, 395 U.S. 402, 408 (1969) ....................................... 21

*Wisconsin Dep't of Corrections v. Schacht,* 524 U.S. 381, 388 (1998) ......... 12

*Woodstock Resort Corp. v. Scottsdale Ins. Co.*, 921 F. Supp. 1202, 1205
(D. Vt. 1995) ................................................................................................ 31

*Zeng Liu v. Donna Karan Int'l, Inc.*, 207 F. Supp. 2d 191, 192-93
(S.D.N.Y. 2002) ........................................................................................... 29

## **Statutes**

8 U.S.C. § 1103 ........................................................................................... 26

8 U.S.C. § 1225 ........................................................................................... 26

8 U.S.C. § 1226 ........................................................................................... 26

8 U.S.C. § 1231 ........................................................................................... 26

28 U.S.C. § 1332 ................................................................................... *passim*

28 U.S.C. § 1442 ..................................................................................... 20, 21

28 U.S.C. § 1446 ........................................................................................... 8

29 U.S.C. § 218 ........................................................................................... 27

N.Y. Lab. L. § 190 ....................................................................................... 27

N.Y. Lab. L. § 652 ....................................................................................... 26

N.Y. Lab. L. § 663 ................................................................................... 17, 26

## I.      INTRODUCTION

Plaintiffs Dalila Yeend and Bounnam Phimasone ("Plaintiffs") brought this action in state court to vindicate their state law rights to minimum wage for their labor, as assured by the New York Labor Law ("NYLL"), the New York State Constitution, and the state common law of unjust enrichment. Defendant Akima Global Services, LLC a/k/a AGS ("Defendant") filed a notice of removal on October 16, 2020, which was its deadline to do so under 28 U.S.C. § 1446(b)(1) (*see* Notice of Removal, dated Oct. 16, 2020 ("Notice"), Dkt. 1) and subsequently filed an answer to the complaint (Dkt. 6). The only evidence submitted by Defendant in support of removal was a declaration by AGS President Laura Mitchell. (*See* Declaration of Laura Mitchell, dated Oct. 16, 2020 ("Mitchell Decl."), Dkt. 1, pp. 21-24.) In its notice, Defendant has asserted that there is both diversity and federal question jurisdiction, but it has failed to make adequate allegations or plead sufficient facts to establish any ground. With respect to diversity, Defendant has failed to show that the parties were completely diverse at the time of filing the complaint *or* at the time of removal, and has further failed to establish that the amount in controversy with respect to each plaintiff exceeds $75,000. With respect to federal question jurisdiction, Defendant has failed to establish that this case involves a federal enclave, that it is entitled to invoke the federal officer removal statute, or that substantial federal issues are implicated. As these are fundamental defects in Defendant's pleading, the time to amend the Notice has long since passed, and the deficiencies do not stem from any gaps in information that would be filled through discovery from the Plaintiffs, Defendant has failed to meet its burden to establish removability, and the case must be remanded.

## II.     STATEMENT OF THE CASE

Plaintiffs were formerly detained at the Buffalo Federal Detention Facility ("BFDF"), an immigration detention center operated by Defendant AGS, a private for-profit corporate entity. (*See* Complaint, dated Sept. 3, 2020 (Dkt. 2) ¶¶ 1, 2; Answer ¶¶ 1, 2, 20.) It is undisputed that Plaintiffs worked while detained at BFDF – Plaintiff Yeend performing tasks related to the facility's kitchen and food cart operations and Plaintiff Phimasone buffing the floors of the detention center (Complaint ¶¶ 43, 53; Answer ¶¶ 43, 53) – but were not paid wages (Complaint ¶¶ 51, 59; Answer ¶¶ 51, 59). The only compensation Plaintiffs received for their labor was $1 per day (Complaint ¶¶ 46, 58; Answer ¶¶ 46, 58), which Defendant deposited into their commissary accounts on a weekly basis (Complaint ¶¶ 47, 59), and which could only be spent within the facility until the time of Plaintiffs' release from detention (*id.* ¶¶ 31-33, 51, 62).

Plaintiffs allege that Defendant was their employer within the meaning of the New York Labor Law, and that Plaintiffs are therefore entitled to recover from Defendant unpaid minimum wages, spread-of-hours and split shift compensation, and other damages under the New York Labor Law. Plaintiffs also seek restitution for Defendant's violation of their right, protected by the New York state constitution, to be free from having their labor and its profits unfairly inure to the benefit of AGS, and damages in such amounts necessary to prevent Defendant from being unjustly enriched.

## III.     THE CASE MUST BE REMANDED FOR LACK OF JURISDICTION.

### A.     Legal Standards Governing Removal

"It is a fundamental precept that federal courts are courts of limited jurisdiction." *Owen Equipment & Erection Co. v. Kroger*, 437 U.S. 365, 374, 98 S. Ct. 2396 (1978). Removal statutes are to be strictly construed against removal and in favor of remand. *Martropico*

*Compania, Naviera S.A. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara (Pertamina)*, 428 F. Supp. 1035, 1037 (S.D.N.Y. 1977) (citing *Shamrock Oil Co. v. Sheets*, 313 U.S. 100 (1941)). "On a motion to remand, the party seeking removal bears the burden of establishing to a 'reasonable probability' that removal is proper." *Anwar v. Fairfield Greenwich Ltd.*, 676 F. Supp. 2d 285, 292 (S.D.N.Y. 2009) (citations omitted). All doubts regarding the propriety of removal are resolved in favor of remand, as "'federal courts construe the removal statute narrowly.'" *Lupo v. Human Affairs Int'l, Inc*., 28 F.3d 269, 274 (2d Cir. 1994) (quoting *Somlyo v. J. Lu-Rob Enters., Inc*., 932 F.2d 1043, 1045-46 (2d Cir. 1991)).

"The petition to remove is analogous to a pleading," *White v. Wellington*, 627 F.2d 582, 587 (2d Cir. 1980), and as such, the standard rules of pleading apply. "[T]he petition for removal is the basis for the federal court's jurisdiction and it is a pleading of the facts necessary to vest jurisdiction in the federal court." *Rachel v. Georgia*, 342 F.2d 336, 340 (5th Cir. 1965) (quoting *Chesapeake & Ohio Railway Co. v. Cockrell*, 232 U.S. 146, 151 (1914)). Allegations missing from the petition cannot be provided by amendment outside the 30-day time period for removal. *CBS, Inc. v. Snyder*, 762 F. Supp. 71, 73 (S.D.N.Y. 1991). Similarly, fundamental defects in the allegations may not be untimely amended. *See Conticommodity Svcs., Inc. v. Lemme*, 1983 U.S. Dist. LEXIS 18851, at *4 (S.D.N.Y. Mar. 3, 1983); *Jacobs v. District Director of Internal Revenue*, 217 F. Supp. 104, 105-06 (S.D.N.Y. 1963).

**B.     Defendant has Failed to Show that Diversity Jurisdiction Exists.**

Defendant has failed to make sufficient allegations – let alone establish by competent proof and a preponderance of the evidence – that this Court has diversity jurisdiction. "A party seeking removal predicated on diversity of citizenship must allege sufficient facts to show diversity both at the time of the commencement of the action in state court and at the time of

removal." *Stevens v. Nichols*, 130 U.S. 230, 231, 9 S. Ct. 518, 519 (1889). The requirements for

diversity jurisdiction are set forth in 28 U.S.C. § 1332(a), which states in relevant part:

> **(a)** The district courts shall have original jurisdiction of all civil actions
> where the matter in controversy exceeds the sum or value of $75,000,
> exclusive of interest and costs, and is between—
> **(1)** citizens of different States.[1]

The party seeking to invoke federal diversity jurisdiction bears the burden of showing that

jurisdiction is proper, even on a motion to remand. *See R.G. Barry Corp. v. Mushroom Makers,*

*Inc.,* 612 F.2d 651, 655 (2d Cir. 1979). "When a party removes a state court action to the federal

court on the basis of diversity of citizenship, and the party seeking remand challenges the

jurisdictional predicate for removal, the burden falls squarely upon the removing party to

establish its right to a federal forum by competent proof." *Id.* (citation omitted); *see also United*

*Food & Commercial Workers Union, Local 919, AFL-CIO v. CenterMark Props. Meriden*

*Square, Inc.*, 30 F.3d 298, 305 (2d Cir. 1994) (quoting *McNutt v. General Motors Acceptance*

*Corp.*, 298 U.S. 178, 189 (1936)) ("Where, as here, jurisdictional facts are challenged, the party

asserting jurisdiction must support those facts with 'competent proof' and 'justify [its]

allegations by a preponderance of evidence.'"). The presence of diversity jurisdiction – including

the amount in controversy requirement – is measured at the time a complaint is filed. *Washington*

*Nat'l Ins. Co. v. OBEX Grp. LLC*, 958 F.3d 126, 135 (2d Cir. 2020) (citing *Scherer v. Equitable*

*Life Assurance Soc'y of U.S.*, 347 F.3d 394, 397 (2d Cir. 2003).

When deciding whether to remand, "[r]emoval jurisdiction must be strictly construed,

'both because the federal courts are courts of limited jurisdiction and because removal of a case

---

[1] Defendant suggests that 28 U.S.C. § 1332(a)(2), which applies as to "citizens of a State and
citizens or subjects of a foreign state," may be the applicable section. (Notice, p. 12.) For
purposes of this motion, the distinction is immaterial, as the critical point is that Defendant has
failed to demonstrate complete diversity among the parties.

implicates significant federalism concerns.'" *Heery v. Stop & Shop Supermarket Co. LLC*, 2017 WL 1745490, at *2 (E.D.N.Y. May 3, 2017) (quoting *Codapro Corp. v. Wilson*, 997 F. Supp. 322, 324 (E.D.N.Y. 1998)). Accordingly, "doubts must be resolved against removability due to the respect accorded the limited jurisdiction of the federal courts and the rights of states." *Id.* (citing *In re MTBE Products Liab. Litig.*, 488 F.3d 112, 124 (2d Cir. 2007)). As a result, courts "are not inclined to countenance prolonged preliminary litigation over the removal issue simply because [the defendant] failed in the first instance to aver a proper jurisdictional basis for removal." *Lupo v. Human Affairs Intern.*, 28 F.3d 269, 274 (2d Cir. 1994).

Diversity jurisdiction requires that "all of the adverse parties in a suit ... be completely diverse with regard to citizenship." *E.R. Squibb & Sons, Inc. v. Accident & Cas. Ins. Co.*, 160 F.3d 925, 930 (2d Cir. 1998) (citing *Strawbridge v. Curtiss*, 7 U.S. (3 Cranch) 267, 2 L. Ed. 435 (1806)); *see also Wisconsin Dep't of Corrections v. Schacht*, 524 U.S. 381, 388 (1998) ("A case falls within the federal district court's original diversity jurisdiction only if diversity of citizenship among the parties is complete, *i.e.*, only if there is no plaintiff and no defendant who are citizens of the same State.") (internal quotation marks omitted). It is well-established that for the purposes of ascertaining the citizenship of a limited liability company, a court must look to the citizenship of the company's members. *See Handelsman v. Bedford Vill. Assoc. Ltd. P'ship*, 213 F.3d 48, 51-52 (2d Cir. 2000); *Altissima Ltd. v. One Niagara LLC*, 2010 WL 3504798, at *2 (W.D.N.Y. Sept. 2, 2010); *Weave Masters, Inc. v. Cambridge Fashion, Inc.*, 2009 WL 510834, at *2 (S.D.N.Y. Feb. 26, 2009) ("Unlike a corporation, the citizenship of a limited liability company is not the state of its incorporation or its principal place of business. Rather, the LLC shares the citizenship of all of its constituent corporate members."). Further, if an LLC has members who themselves are LLCs, the citizenship of the members of those LLCs must be

examined. *See Meyerson v. Harrah's E. Chicago Casino*, 299 F.3d 616, 617 (7th Cir. 2002) ("[T]the citizenship of unincorporated associations must be traced through however many layers of partners or members there may be."); *United States Liab. Ins. Co. v. M Remodeling Corp.*, 444 F. Supp. 3d 408, 410 (E.D.N.Y. 2020) ("It follows from this that if any of an LLC's members are themselves non-corporate entities, then a plaintiff must allege the identity and citizenship of their members, proceeding up the chain of ownership until it has alleged the identity and citizenship of every individual and corporation with a direct or indirect interest in the LLC.").

### 1.     Defendant has Failed to Show Diversity at Filing or Removal.

Defendant is an LLC (Mitchell Decl. ¶ 5), and as such, is a citizen of every state where one of its members is a citizen, *see Handelsman*, 213 F.3d at 51-52; *Altissima Ltd.*, 2010 WL 3504798, at *2; *Weave Masters, Inc*, 2009 WL 510834, at *2. But Defendant has failed to identify all of its members as of September 3, 2020, when the complaint was filed in state court. Defendant has also failed to assert, let alone establish by competent proof, that all of the undisclosed members were citizens of states completely diverse to Plaintiffs as of September 3. (*See* Mitchell Decl.; Notice.) These missing allegations cannot be supplied outside the statutory 30-day time frame for removal. *See CBS*, 762 F. Supp. at 73.

As an initial matter, the only evidence that Defendant has provided in support of any of its assertions is the Mitchell declaration. However, declarations alone are insufficient to establish the diversity of citizenship required to give a federal court jurisdiction over an action. *See Compania Distribuidora Woodward Y. Dickerson, Inc. v. Cristina Copper Mines, Inc.*, 114 F. Supp. 454, 456 (S.D.N.Y. 1953) (affidavits insufficient to establish diversity, in absence of showing as to where defendant voted, paid taxes and maintained personal belongings, or such other facts as might establish his residence). Thus, Defendant has not provided any competent proof to support its allegations of diversity.

Moreover, even if the Mitchell declaration were deemed competent evidence, it contains no facts regarding citizenship at the time of the filing of the complaint. Rather, all the facts are alleged only as of the date of the declaration. (*See* Mitchell Decl.) In particular, AGS President Mitchell avers that as of October 16, AGS was wholly owned by Akima LLC (a citizen of every state where *its* members are citizens, *see Meyerson*, 299 F.3d at 617; *United States Liab. Ins. Co.*, 444 F. Supp. 3d at 410), which was wholly owned by NANA Regional Corporation (a citizen of an unknown state, given the dearth of factual allegations). These factual pleadings are insufficient, as the Court must consider whether diversity jurisdiction was present as of September 3. *See Washington Nat'l Ins. Co.*, 958 F.3d 126 at 135. Because Defendant has failed to identify any facts about the identities of AGS's members or their citizenship on that date, it has provided no basis for the Court to determine that subject matter jurisdiction exists.

Significantly, there is no basis for assuming that the facts as averred on October 16 were the same as the facts that existed on September 3. Instead, it appears that AGS and its parent chain underwent numerous unexplained membership changes between the time the complaint was filed and the time of removal. For example, records of the Alaska Secretary of State indicate that Akima, LLC filed an "Amendment" and a "Notice of Change of Officials" on or around September 30, 2020, changing multiple officials on its record.[2] Thus, it is clear that the Mitchell declaration, whatever its evidentiary value, relates only to the time of removal, and not to the date of the complaint. Defendant did not identify in its pleading any of the individuals removed from Akima LLC's record in late September, let alone establish their citizenship. These omissions are conspicuous, and are the kinds of fundamental defects that justify remand. *See*

---

[2] The Court may take judicial notice of these public records, available at
https://www.commerce.alaska.gov/cbp/main/search/entities. *See Illarramendi v. United States*, 2020 WL 656698, at *15 & n.4 (D. Conn. Feb. 11, 2020).

*PepsiCo, Inc. v. Wendy's Int'l, Inc.*, 118 F.R.D. 38, 40-41 (S.D.N.Y. 1987) (noting that the purpose of the rule requiring allegations of diversity at filing and at removal is to "prevent[] a nondiverse defendant from manipulating the court's jurisdiction by changing its state of residence after the action is commenced").

In addition, even Defendant's allegations as of the date of removal are insufficient, as the Mitchell declaration merely recites legal conclusions which are devoid of facts that would allow the Court to determine if the relevant companies are diverse from Plaintiffs. The declaration alleges that Defendant's sole member is Akima, LLC, and that the sole member of Akima, LLC is NANA Regional Corporation. For diversity purposes, a corporation is deemed to be a citizen both of the state in which it has its principal place of business and of any state in which it is incorporated. *Hogan v. Consol. Rail Corp.*, 961 F.2d 1021, 1027 (2d Cir. 1992), citing 28 U.S.C. § 1332(c)(1). Courts within the Second Circuit use two basic tests for determining a corporation's principal place of business for diversity purposes: the "nerve center" test and the "public impact" or "place of operations" test. *Ctr. for Radio Info., Inc. v. Herbst*, 876 F. Supp. 523, 525 (S.D.N.Y. 1995). Regardless of which test is used, the determination of a corporation's principal place of business is made from a fact-based analysis of the business, operations, and structure of each corporation. *In re Joint E. & S. Districts Asbestos Litig.*, 1990 WL 129194, at *3 (E.D.N.Y. Aug. 30, 1990). Courts consider the corporation's purpose, the nature of its activities, and the extent and location of these activities. *Id.* Here, Defendant merely asserts that the principal place of business of NANA Regional Corporation is Alaska. (Mitchell Decl. ¶ 6.) However, Defendant provides no facts at all regarding NANA's business, operations, structure, purpose or activities to support this purely conclusory statement. The Complaint alleges that Defendant AGS – and, accordingly, its parent entities – have significant operations in New York,

including running a 650-bed immigration detention center, where they necessarily maintained offices and employed dozens of people. (*See* Complaint ¶¶ 3, 25.) It is not at all clear, on the basis of the pleadings, that New York would not fairly be considered the principal place of business for NANA Regional Corporation, which would render AGS a citizen of New York.

### 2. Defendant has Failed to Establish that the Amount in Controversy Exceeds $75,000.

In addition to failing to show diversity of citizenship, Defendant has failed to show that the amount in controversy for each plaintiff exceeds $75,000. The removing party "has the burden of proving that it appears to a 'reasonable probability' that the claim is in excess of the statutory jurisdictional amount." *Tongkook Am., Inc. v. Shipton Sportswear Co.*, 14 F.3d 781, 784 (2d Cir. 1994). The amount in controversy is determined at the time the action is commenced. *Id.* In cases where it is not "facially apparent" (i.e., through a "fair reading" of the complaint) that the amount in controversy exceeds $75,000, the defendant has the burden to submit evidence that the amount in controversy is satisfied. *Williams v. Best Buy Co.*, 269 F.3d 1316, 1321 (11th Cir. 2001). The Second Circuit has held that if the jurisdictional amount is not clearly alleged in the plaintiff's complaint, and the defendant's notice of removal fails to allege facts adequate to establish that the amount in controversy exceeds the jurisdictional amount, federal courts lack diversity jurisdiction as a basis for removing the plaintiff's action from state court. *Lupo v. Human Affairs Int'l, Inc.*, 28 F.3d 269, 273-74 (2d Cir. 1994). This is because courts must "resolv[e] any doubts against removability." *In re MTBE Prod. Liab. Litig.*, 488 F.3d at 124 (quoting *Somlyo*, 932 F.2d at 1045–46); *accord Dart Cherokee Basin Operating Company, LLC, et al. v. Owens*, 135 S. Ct. 547 (2014) (where a plaintiff contests the defendant's allegation, removal is only proper "'if the district court finds, by the preponderance of the evidence, that the amount in controversy exceeds' the jurisdictional amount").

In attempting to show that the claim value exceeds $75,000, Defendant makes numerous miscalculations. Defendant claims that "Plaintiff Phimasone alleges that he worked 6 hours per day, 5 days per week." (Notice, p. 14.) However, Plaintiff Phimasone alleges that he "worked approximately *three* hours per day, five days per week." (Complaint ¶ 56 (emphasis added).) It was only when "the floors became dirty again after Plaintiff Phimasone had cleaned them for the day, and he was required to buff and clean the floors a second time" that he worked "approximately six hours per day." (Complaint at ¶ 57.) Additionally, Defendant asserts that Plaintiff Phimasone "claims that he worked an undetermined amount of overtime." However, nowhere in the complaint does Plaintiff Phimasone allege that he worked over 40 hours in a workweek. On the contrary, Plaintiff Phimasone alleges that he generally worked three hours per day, five days per week. In other words, he generally worked 15 hours per workweek. While he occasionally worked a six-hour day, even if he did that every day of his five-day workweek, he still would have worked only 30 hours. Altogether, the value of Plaintiff Phimasone's wage-related claims is closer to half of the approximately $50,000 Defendant calculates.[3]

Even with its inflated calculation, Defendant still finds itself with a $25,000 shortfall for jurisdiction. In trying to make up for this, Defendant contends without any basis that attorneys' fees will exceed $25,000. (Notice, p. 14.) New York's minimum wage law provides for the award of "all reasonable attorney's fees" to a prevailing plaintiff. *See* N.Y. Lab. Law § 663 (McKinney). However, at this juncture there is no basis "to estimate reasonably the amount of work required for the case… or the likely amount of attorneys' fees, much less what fees would

---

[3] For example, Defendant calculated his earned minimum wages at $16,638, using 6 hours of work per day, 5 days per week. (Notice, p. 14.) Substituting approximately 3 hours per day, as alleged in the Complaint, into Defendant's calculation would result in: 15 hrs/wk x $11.80/hr x 47 wks = $8,319. Defendant represents that he actually received $235 ($16,638 - $16,403 = $235). Thus, his approximate owed minimum wages are closer to $8,084 ($8,319 - $235).

be 'reasonable.'" *See Trapanotto v. Aetna Life Ins. Co.-Aetna Health Plans*, 1996 WL 417519, at *9 (S.D.N.Y. July 25, 1996) (declining to add prospective attorneys' fees to plaintiff's damages in order to satisfy § 1332's amount-in-controversy requirement where it was "premature to estimate"). Defendant's conclusory statement does not meet its burden of proving that it appears to a "reasonable probability" that the claim is in excess of the statutory jurisdictional amount. Moreover, Defendant does not even attempt to estimate disgorgement damages and merely concludes that Plaintiff Phimasone's total damages will exceed $75,000. (Notice, p. 15.) Again, this is not sufficient, especially where Defendant attempts to use Plaintiff Phimasone's claim to anchor supplemental jurisdiction over Plaintiff Yeend's claim, for which Defendant provides no evidence or analysis whatsoever of the amount in controversy. (*See* Notice, p. 2.) Defendant's notice of removal fails to allege facts adequate to establish that the amount in controversy exceeds the jurisdictional amount. Thus, resolving any doubts against removability, *In re MTBE Prod. Liab. Litig.*, 488 F.3d at 124, this Court lacks diversity jurisdiction.

### C.    Defendant has Failed to Show that Federal Question Jurisdiction Exists.

Likewise, Defendant fails to establish federal question jurisdiction over this action. The Defendant contends that there are three potential bases for federal question jurisdiction: (1) the federal enclave doctrine; (2) the federal officer removal statute; and (3) the implication of federal law by the state law claims. None of Defendant's contentions has merit.

#### 1.    The Federal Enclave Doctrine is Inapposite.

Defendant summarily states that "[t]he federal enclave doctrine likewise provides a basis for federal question jurisdiction." (Notice, p. 10 n.5.) A federal enclave is "a portion of land over which the United States government exercises exclusive federal jurisdiction," *Kelly v. Lockheed Martin Servs. Group*, 25 F. Supp. 1, 2 (D.P.R. 1998), and "[f]ederal law applies exclusively in a federal enclave, with limited exceptions," *Tardd v. Brookhaven Nat'l Lab.*, 407 F. Supp. 404,

417 (E.D.N.Y. 2006) (citing *Paul v. United States*, 371 U.S. 245 (1963); *Kelly*, 25 F. Supp. 2d at 4). One such exception is for state laws in effect when jurisdiction transferred to the United States; these state laws remain in effect. *See Paul v. United* States, 371 U.S. 268, 83 S. Ct. 426 (1963); *James Stewart & Co. v. Sadrakula*, 309 U.S. 94, 99-100 (1940). Moreover, not all portions of land owned by the United States constitute federal enclaves in the first place. Indeed, "without the State's 'consent' the United States does not obtain the benefits of Art. I, § 8, cl. 17, its possession being simply that of an ordinary proprietor." *Paul v. U.S.*, 371 U.S. 245, 263 (1963) (citing *James v. Dravo Contracting Co.*, 302 U.S. 134, 141-42 (1937)). Only with "a cession of legislative authority and political jurisdiction" does the federal government's jurisdiction over the land become exclusive. *Ft. Leavenworth R. Co. v. Lowe*, 114 U.S. 525, 541 (1885). "'Whether federal enclave jurisdiction, a form of federal question jurisdiction, exists is a complex question[], resting on such factors as whether the federal government exercises exclusive, concurrent, or proprietorial jurisdiction over the property, when the property became a federal enclave, and whether it has been altered by national legislation.'" *Kelly*, 25 F. Supp. 2d at 5 (quoting *Celli v. Shoell*, 40 F.3d 324, 328 n.4 (10th Cir. 1994)). As explained here and in Plaintiffs' pending motion to strike (*see* Dkt. 15-1), Defendant provides no facts whatsoever in support of applying the federal enclave doctrine. According to public documents, it appears that BFDF is *not* located within a federal enclave. Quite simply, the doctrine is inapposite and does not confer jurisdiction on this Court.

Defendant states only that "the BFDF is an ICE-owned facility." (Notice, p. 10.) But the fact that a federal agency owns property does not transform that property into a federal enclave. *See Paul*, 371 U.S. at 263 (noting that the United States may own land within a state, but without the state's express consent to cede jurisdiction, it does so only as "an ordinary proprietor").

Notably, Defendant has not mentioned, much less proffered a record of, any cession of jurisdiction from New York to the United States government concerning the land or the facility. Rather, public records indicate that the land on which BFDF is located was simply purchased by the United States from the Genesee County Industrial Development Agency – *not* the state – in 1996.[4] Plaintiffs are aware of no subsequent cession of jurisdiction from New York to the United States. Thus, the federal enclave doctrine does not apply, and does not supply a basis for a federal court to exercise jurisdiction over this case. *See Kelly*, 25 F. Supp. 2d at 5.

### 2.    Defendant Has Not Satisfied the Three-Part Test for a Private Contractor to Avail Itself of the Federal Officer Removal Statute.

Defendant is a private, for-profit business with a government contract. Defendant attempts to use its contract with ICE to create federal jurisdiction pursuant to the federal officer removal statute but fails to satisfy the legal standard for a private actor to invoke this statute.

A defendant seeking removal under the federal officer removal statute, 28 U.S.C. § 1442(a)(1), bears the burden of demonstrating that federal subject matter jurisdiction exists. *Nesbiet v. GE*, 399 F. Supp. 2d 205, 210 (S.D.N.Y. 2005). The statute provides, in relevant part:

> A civil action or criminal prosecution that is commenced in a State court and that is against or directed to any of the following may be removed by them to the district of the United States for the district and division embracing the place wherein it is pending:
>
> > (1) The United States or any agency thereof or any officer (or any other person acting under that officer) of the United States or of any agency thereof, in an official or individual capacity, for or relating to any act under color of such office.

---

[4] This Court may take judicial notice of public land records. *See Illarramendi*, 2020 WL 656698, at *15 & n.4. The records maintained by Genesee County are available at *http://gisp.co.genesee.ny.us/PHD/viewer/*. An advanced search by address reveals that the property located at "4250 Federal" in Batavia was purchased from the Genesee County IDA by the United States on June 28, 1996. (*See* https://www.ice.gov/detention-facility/buffalo-batavia-service-processing-center (confirming address of BFDF as 4250 Federal Drive, Batavia, NY).)

28 U.S.C. § 1442(a)(1). Merely claiming protection under the statute is insufficient to establish that removal is proper. *See Gordon v. Air & Liquid Sys. Corp.*, 990 F. Supp. 311, 317 (E.D.N.Y. 2014). A defendant meets its burden only by a substantial factual showing supporting "candid, specific and positive allegations." *In re MTBE Prod. Liab. Litig.,* 488 F.3d at 130 (quoting *Willingham v. Morgan*, 395 U.S. 402, 408 (1969)).

In the Second Circuit, a defendant who is not a federal officer – that is, a defendant who, like AGS, is a private contractor – must satisfy a three-part test in order to avail itself of the protections afforded under the statute. *See Isaacson v. Dow Chem. Co.,* 517 F.3d 129, 134 (2d. Cir. 2008); *Nesbiet*, 399 F. Supp. 2d at 210. Specifically, a private defendant must demonstrate that: (1) it is a "person" within the meaning of the statute, (2) the defendant acted "under color of federal office," and (3) the defendant has a "colorable federal defense." *Cuomo v. Crane*, 771 F.3d 113, 115 (2d Cir. 2014) (quoting *Isaacson*, 517 F.3d at 135); *see also Gordon*, 990 F. Supp. at 317; *Mesa v. California*, 489 U.S. 121 (1989).   As the Defendant here has not satisfied the second or third prongs of this test, it cannot invoke the federal officer removal statute.

### (a)   Defendant AGS was Not Acting Under Color of Federal Office.

Defendant has not adequately alleged that the conduct complained of in the Complaint was specifically directed by ICE or any federal officer. To do so, the disputes in the case must have "arisen out of the acts done by [defendant] under color of federal authority and in enforcement of federal law," and the defendant must "by direct averment exclude the possibility that it was based on acts or conduct of his, not justified by his federal duty." *Maryland v. Soper (No. 1)*, 270 U.S. 9, 33, 46 S. Ct. 185 (1926). Here, Defendant makes no such "direct averments." Rather, the Mitchell declaration contains only the general statements that the scope of services provided by AGS is defined by its contract with ICE, and that AGS must comply with

"specified federal standards, including ICE's Performance Based National Detention Standards ("PBNDS") and other federal standards for DHS detention facilities," as well as "post orders and general directives and BFDF policies, all of which are drafted and promulgated by ICE." (Mitchell Decl. ¶ 8.)

Defendant's blanket statements that it was required to fulfill contractual obligations and follow policies are insufficient to satisfy this element of the test. Critical to this element is "to what extent defendants acted under federal direction at the time they were engaged in the conduct now being sued upon." *Ryan v. Dow Chem. Co.,* 781 F. Supp. 934, 946-7 (E.D.N.Y. 1992). "Removal will not be proper where a private party establishes only that the acts complained of were performed under the 'general auspices' of a federal officer." *In re MTBE Prod. Liab. Litig.*, 488 F.3d at 125 (citing *Ryan*, 781 F. Supp. at 947). "[A] private contractor's compliance with statutory or regulatory mandates, even if complex, is insufficient to satisfy the 'acting under' requirement for federal officer removal. Rather, the company must agree to help carry out the duties of the federal superior under that superior's strict guidance and control." *Bd. of Cty. Comm'rs v. Suncor Energy (U.S.A.) Inc.*, 965 F.3d 792, 823 (10th Cir. 2020) (citing *In re MTBE Prod. Liab. Litig.*, 488 F.3d at 125); *see also County of San Mateo v. Chevron Corp.*, 960 F.3d 586, 600 (9th Cir. 2020) (noting that "a person is not 'acting under' a federal officer when the person enters into an arm's-length business arrangement with the federal government"). Defendant has made no suggestion that its non-detained employees, who admittedly "provide[d] training and limited oversight" to detainees in the work program (Mitchell Decl. ¶ 11), were subject to direct control or supervision by government officials. *See Logue v. United States*, 412 U.S. 521, 531 (1973) (the Supreme Court was "not persuaded that employees of a contractor

with the Government, whose physical performance is not subject to governmental supervision, are to be treated as 'acting on behalf of' a federal agency").

Defendant has not disclosed to the Court its contract with ICE, or any specific policies and directives upon which it claims to rely.[5] Defendant cites no contractual provision or policy that prohibits the payment of minimum wages to detained workers. Defendant makes a hearsay claim that "[t]he Contract [with ICE] requires detainees to be provided the opportunity to participate in the Voluntary Detainee Work Program." (Mitchell Decl. ¶ 9.) But even if it were contractually obligated to ICE to operate a detainee work program, Defendant does not aver, nor would it be remotely plausible to do so, that Defendant's acquisition of Plaintiffs' labor and compensation at subminimum wages were done "in enforcement of federal law." *See Soper (No. 1)*, 270 U.S. at 33. Plaintiffs are unaware of any federal requirement – and certainly, Defendant has not pointed to any – for detainees to perform kitchen and maintenance work in detention facilities, or for a private contractor to compensate individuals who perform such labor at a rate less than the state minimum wage. A private detention facility operator is not an instrumentality of the federal government simply because it is subject to rules and regulations. *See Geo Grp., Inc. v. Newsom*, 2020 WL 5968759, at *86, 2020 (S.D. Cal. Oct. 8, 2020). In fact, the PBNDS expressly reserves discretion to the contractor on the amount of compensation for detainee

---

[5] Nor did Defendant identify the contract in its initial disclosures pursuant to Fed. R. Civ. P. 26, even though that document is unquestionably within the Defendant's possession, custody, or control. (*See* Defendant's Initial Disclosures, dated Nov. 13, 2020 (Ex. A); Mitchell Decl. ¶ 4 (identifying the contract with ICE as among Defendant's "business records").) According to its disclosures, the only documents Defendant apparently intends to use to support its defenses are the BFDF policies regarding the work program; the PBNDS; and the American Correctional Association Standards. (*See* Ex. A.) Thus, it appears that Defendant does not genuinely intend to assert a defense based on its contractual obligations to the federal government.

laborers, stating only that the compensation for detainee labor should be "*at least* $1.00 (USD) per day" (emphasis added).[6]

Defendant's assertions do not exclude the possibility that the conduct at issue in this action – namely, supervision and control over detainee labor and compensation – fell within the control and discretion of Defendant, and outside of any specific federal directive. *See In re MTBE Prod. Liab. Litig.*, 488 F.3d at 125-27. Thus, Defendant has failed to show that it was acting under color of federal office with respect to the disputes in this case.

### (b)   Defendant Lacks a Colorable Federal Defense.

Though Defendant fails to show causation, which alone is fatal to its use of the removal statute, it also fails on the "colorable federal defense" element. A defendant fails to raise a colorable federal defense if the defense is "'immaterial and made solely for the purpose of obtaining jurisdiction' or is 'wholly insubstantial and frivolous.'" *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 513 n.10, 126 S. Ct. 1235 (2006) (quoting *Bell v. Hood*, 327 U.S. 678, 682-83 (1946)).

Defendant contends that two federal defenses apply: (1) the federal enclave doctrine with respect to all of Plaintiffs' claims, and (2) preemption with respect to Plaintiffs' "state wage claims and unjust enrichment claims." (Notice, pp. 7-8.) Neither of the purported defenses constitutes a "colorable" federal defense to Plaintiffs' claims. *See Arbaugh*, 546 U.S. at 513 n.10.

### (i)   BFDF is Not Located in a Federal Enclave.

As explained above, Defendant has not asserted any facts, nor is there any independent reason to believe, that BFDF is located in a federal enclave. There is no reason to believe that the United States owns the land as anything more than "an ordinary proprietor." *Paul*, 371 U.S. at 263. Moreover, all of the laws under which Plaintiffs bring claims – the New York State

---

[6] Defendant failed to proffer the PBNDS to the Court. The standards are, however, available online from ICE at https://www.ice.gov/detention-standards/2011.

Constitution, New York Labor Law, and state common law of unjust enrichment – existed well before the United States purchased the property in 1996. Thus, there is no question that the state laws relevant here continue to operate at BFDF, and the federal enclave doctrine offers no defense to Plaintiffs' claims. *See Paul*, 371 U.S. at 268; *James Stewart & Co.*, 309 U.S. at 99-100; *see also* Memorandum of Law in Support of Plaintiffs' Motion to Strike (Dkt. 15-1).

Defendant has purported to rely on the federal enclave doctrine both as a defense (Dkt. 6) and as a basis for jurisdiction (Dkt. 1), in multiple Court filings, without providing any facts in support. As explained here and in Plaintiffs' motion to strike (Dkt. 15), Defendant's insistence that the doctrine applies appears to be entirely groundless and contrary to facts readily available from public documents (let alone information specially available to AGS, given its relationship with ICE). Accordingly, this purported defense is "wholly insubstantial and frivolous," and thus not "colorable" within the meaning of the removal statute, *Arbaugh*, 546 U.S. at 513.

### (ii)    Plaintiffs' Claims are Not Preempted.

At the outset, it should be noted that Defendant does not contend that preemption is a defense to Plaintiffs' claims under the New York state constitution. Defendant contends only that Plaintiffs' wage claims and unjust enrichment claims are preempted, citing several sections of the Immigration and Nationality Act and a 1950 statute authorizing appropriations to the now-defunct Immigration and Naturalization Service. (Notice, pp. 7-8.) Defendant does not identify whether it believes field preemption or conflict preemption applies, much less explain how the New York Labor Law and state common law are impacted by the federal laws it cites.

An analysis of preemption claims begins with "the starting presumption that Congress does not intend to supplant state law." *New York State Conf. of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645, 654-55 (1995) (citing *Maryland v. Louisiana*, 451 U.S. 725, 746 (1981)). Furthermore, "where federal law is said to bar state action in fields of traditional

state regulation . . . we have worked on the 'assumption that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress." *Travelers Ins. Co.*, 514 U.S. at 655 (internal citation omitted) (quoting *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230 (1947)). Regulation of the employment relationship for the protection of workers is one such area of historic state police power, *see Balbuena v. IDR Realty LLC*, 812 N.Y.S.2d 416, 426 (2006); accordingly, the presumption of non-preemption applies, *Travelers Ins. Co.*, 514 U.S. at 655.

None of the INA sections cited by Defendant are preemption clauses. Rather, they charge the Secretary of Homeland Security with enforcing immigration laws, 8 U.S.C. § 1103(a)(1); outline the procedures for inspection of immigrants by federal officers, *id.* § 1225; and authorize detention and removal, *id.* §§ 1226, 1231. Plaintiffs are at a loss to see how these laws remotely bear on the issues presented in the case, let alone preempt their claims. There is certainly no "clear and manifest purpose" in these INA provisions to supplant state law as to the payment of minimum wages to immigrants or others. It is well settled that the protections of the NYLL do not depend upon immigration status. *See* N.Y. Lab. L. §§ 652, 663; *Saavedra v. Mrs. Bloom's Direct, Inc.*, 2018 WL 2357264, at *3 (S.D.N.Y. May 24, 2018) ("the law in this Circuit is clear that a plaintiff's immigration status has no bearing on her rights to recover unpaid wages under the . . . New York Labor Law"); *Pacheco v. Chickpea at 14th St., Inc.*, 2019 WL 2292571, at *17 (S.D.N.Y. May 30, 2019) ("As numerous courts have held, the type of claims pled here – seeking to use the NYLL to remedy a failure to pay for past work performed – are available to a plaintiff without documented status.") (citing cases). Plaintiffs' claims in this case do not challenge federal power over immigration policy or the legality of their detention at BFDF, but rather Defendant's failure to comply with New York state law while benefiting from the labor Plaintiffs

performed. As the New York Court of Appeals has noted, "notwithstanding the federal government's exclusive control over immigration and naturalization, the 'States possess broad authority under their police powers to regulate the employment relationship to protect workers within the State.'" *Balbuena*, 812 N.Y.S.2d at 426. Indeed, the federal courts that have considered the question have utterly rejected the idea that federal immigration statutes preempt state wage laws. *See, e.g., Washington v. GEO Group, Inc.*, 283 F. Supp. 3d 967 (W.D. Wash. 2017) (WA minimum wage law not preempted); *Chen v. Geo Group, Inc.*, 287 F. Supp. 3d 1158 (W.D. Wash. 2017) (same); *Novoa v. Geo Group, Inc.*, 2018 WL 3343494, at *11 (C.D. Cal. June 21, 2018) (CA minimum wage law not preempted).

Defendant further contends that "Congress is empowered to legislate the fields of employment status and payment to immigration detainees," citing a federal statute that permits appropriations for the purpose of paying "allowances" to immigration detainees for work performed in detention. (Notice, p. 8.) Defendant offers no factual or legal basis for its contention that "employment status" is the sole province of federal legislation. New York, along with other state legislatures, has legislated for itself what constitutes an "employee" and an "employer," and courts have applied those definitions for decades. *See* N.Y. Lab. L. § 190; *Balbuena*, 812 N.Y.S.2d at 426. Indeed, in the Fair Labor Standards Act, Congress specifically contemplated that state laws could coexist with and offer greater protections than federal employment law, by, for example, setting a higher minimum wage. *See* 29 U.S.C. § 218(a) ("No provision . . . shall excuse noncompliance with any Federal or State law or municipal ordinance establishing a minimum wage higher than the minimum wage established under this chapter…").

With respect to "payment to immigration detainees," Defendant points only to the fact that Congress has authorized appropriations to be made available for the purpose of

compensating detainees for their labor. (Notice, pp. 8-9.) Defendant fails to explain how the appropriation of funds bears on preemption analysis at all. No federal law prevents a contractor, reimbursed for program expenses by federal appropriation, from paying detained workers a higher amount as mandated by state law. *See Novoa v. Geo Grp., Inc.*, 2018 WL 3343494, at *11-17 (finding "Congress did not preempt the field of immigration detainee wages"). The cases cited by Defendant do not indicate otherwise. (*See* Notice, p. 9.) *Guevara v. I.N.S.* did not concern preemption at all. *See Guevara v. I.N.S.*, 902 F.2d 394 (5th Cir. 1990). In *Menocal v. GEO Grp., Inc.*, the district court reached the substantive question of whether detainees were employees under state law – that is, state law was found *not* to be preempted by federal law. *Menocal v. GEO Grp., Inc.*, 113 F. Supp. 3d 1125, 1135 (D. Colo. 2015) (finding that defendant's contract with ICE "does not *prohibit* Defendant from paying detainees in excess of $1/day in order to comply with Colorado labor laws") (emphasis in original). The fact that these are the only cases cited by Defendant, and neither of them remotely supports the proposition that federal law preempts Plaintiffs' New York Labor Law or unjust enrichment claims, underscores how "wholly insubstantial and frivolous" Defendant's purported preemption defense is. *Arbaugh*, 546 U.S. at 513 n.10. Because Defendant has presented no colorable federal defense to Plaintiffs' claims, it cannot avail itself of the removal statute to create federal jurisdiction.

### 3. No Substantial Federal Issue is Implicated.

A case only "arises under" federal law for jurisdictional purposes if "a well-pleaded complaint establishes that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law." *Empire Healthcare Assur., Inc. v. McVeigh*, 547 U.S. 677, 126 S. Ct. 2121 (2006) (citation omitted). Defendant asserts that federal jurisdiction exists because Plaintiffs' claims "necessarily implicate

questions of federal immigration law," citing *Grable & Sons Metal Prods. Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308 (2005). (Notice, pp. 10-11.) Defendant is incorrect.

The question of whether an individual was an employee is a fact-specific inquiry, with the critical issue being the degree of control exercised over her by the alleged employer. *See Bynog v. Cipriani Group, Inc.*, 1 N.Y.3d 193, 198 (N.Y. 2003). Whether the individual was legally authorized to live or work in the United States is *not* a relevant factor in this inquiry. *See, e.g., Balbuena*, 812 N.Y.S.2d at 427; *Saavedra*, 2018 WL 2357264, at *3 ("the law in this Circuit is clear that a plaintiff's immigration status has no bearing on her rights to recover unpaid wages under the . . . New York Labor Law"); *Pacheco*, 2019 WL 2292571, at *17 ("As numerous courts have held, the type of claims pled here – seeking to use the NYLL to remedy a failure to pay for past work performed – are available to a plaintiff without documented status.") (citing cases). For this reason, it is commonplace for courts to wholly prohibit a defendant from even conducting discovery as to a plaintiff's immigration status or work authorization, given the irrelevance of those matters to liability for earned but unpaid wages. *See, e.g., Zeng Liu v. Donna Karan Int'l, Inc.*, 207 F. Supp. 2d 191, 192-93 (S.D.N.Y. 2002); *Rosas v. Alice's Tea Cup, LLC*, 127 F. Supp. 3d 4, 9 (S.D.N.Y. 2015) (or wage and hour violations of the NYLL, immigration status "has generally been protected from discovery"); *Colon v. Major Perry St. Corp.*, 987 F. Supp. 2d 451, 464-65 (S.D.N.Y. 2013).

Thus, Defendant's contention that in order to adjudicate whether Plaintiffs were "employees" within the meaning of the New York Labor Law, a court will "be required to address federal restrictions on the employability of detainees by federal contractors" (Notice, p. 11), is simply untrue. Courts determine whether a defendant employed a plaintiff and is liable for failure to pay proper wages under New York law for work already performed, without inquiring

into immigration status or otherwise implicating federal immigration law in any way. There is no federal cause of action in this case, nor is there an actual and substantial dispute as to any federal issue. *See Grable & Sons Metal Prods.*, 545 U.S. at 314 (appropriate inquiry is whether the "state-law claim necessarily raise[s] a stated federal issue, actually disputed and substantial").

Plaintiffs do not seek here to establish that they were authorized to work at the time they were detained in BFDF. Defendant does not dispute that they performed work while detained. (*See* Answer ¶¶ 46, 58.) The disputed issue at the heart of the case is whether the circumstances under which Plaintiffs performed their work constituted an employment relationship under state law. This question is manifestly one for the New York state courts to answer, using the New York Labor Law definition of "employee." Defendant's attempts to manufacture a federal issue are contrary to law, as explained above, and cannot create federal jurisdiction. *See Schultz v. Tribune ND, Inc*., 754 F. Supp. 2d 550, 556 (E.D.N.Y. 2010) ("Even if state-law claims involve a federal element, the mere presence of such an element does not automatically create federal jurisdiction."); *Empire HealthChoice Assur.*, 547 U.S. at 701 ("[I]t takes more than a federal element to open the 'arising under' door.") (citing *Grable & Sons*, 545 U.S. at 313).

### D.      Even if Court Has Subject Matter Jurisdiction, Abstention is Warranted.

The foregoing reasons are more than sufficient to warrant remand. However, even if this Court were to determine that subject matter exists, it should abstain from exercising it, given the nature of this case. It is well settled that a federal court "may refrain from deciding questions of state law otherwise within our jurisdiction, where the controversy falls within one of several categories thought to be inimical to harmonious federalism." *Smith v. Metropolitan Property & Liability Ins. Co*., 629 F.2d 757, 759 (2d Cir. 1980). One such category of cases is where a difficult question of state law of substantial import is presented. *Louisiana Power & Light Co. v.*

*City of Thibodaux*, 360 U.S. 25 (1959) (noting that the principles of abstention "reflect a deeper policy derived from our federalism"). Generally, abstention is appropriate where a case presents "difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar." *Colorado River Water Conservation District v. United States*, 424 U.S. 800, 814 (1976) (citing *Thibodaux*).

The Second Circuit "has adopted a broad view of abstention." *Smith*, 629 F.2d at 760 (citing cases). Two conditions must be satisfied for *Thibodaux* abstention: (1) unclear state law, and (2) broad impact on state policy. *Smith*, 629 F.2d at 760 (citing *Meredith v. Winter Haven*, 320 U.S. 228, 236-38 (1943)). In *Smith*, the Second Circuit found that Connecticut had a strong interest in the "doctrinal integrity of its regulatory scheme" with respect to property and casualty insurance. The Court noted that "[a]bstention is particularly appropriate when dealing with a 'complicated and comprehensive regulatory statute intended to strike a balance between differing local interests.'" *Smith*, 629 F.2d at 761 (quoting *Brown v. First National City Bank*, 503 F.2d 114, 118 (2d Cir. 1974)). One of the important factors in the *Smith* Court's determination that discretion to abstain was appropriately exercised was that the suit "sought to establish a broad public policy extending beyond the private rights at issue in the case." *Woodstock Resort Corp. v. Scottsdale Ins. Co.*, 921 F. Supp. 1202, 1205 (D. Vt. 1995).

The factors that made abstention appropriate in *Smith* are present in this case. In the New York Labor Law, the New York state legislature has enacted a "complicated and comprehensive regulatory statute intended to strike a balance between differing local interests" – among them, the rights of laborers in safe, humane, and fairly compensated work, the interests of business owners in settled expectations and the ability to compete fairly, and the interests of consumers in the safe production of goods and services. The fact that this statute continues in force, and with

periodic amendments, alongside the federal Fair Labor Standards Act, underscores the importance of New York's interest in determining its own balance of appropriate labor regulation, which may differ from the balance determined by the federal government.

At the core of this case is whether or not the state's careful balance of local interests applies to labor performed by detainees for Defendant AGS, a private, for-profit entity operating in New York and benefiting from the labor of New York residents. Because detainees perform labor for a private employer that otherwise would be performed by non-detained New York residents, AGS's substandard employment directly undercuts the New York statutory scheme intended to provide wages at a minimum floor for all working people in the state. In seeking to hold Defendant AGS accountable for its failure to pay the Plaintiffs the wages mandated by the New York Labor Law, the case will potentially have broad public policy implications. In addition, Plaintiffs allege that Defendant's conduct violated their right under the New York state constitution to be free from having their labor and its profits contracted, given or sold while detained. There is no doubt that New York has a compelling interest in determining the application of its own constitution. And, it appears that the application of the New York Labor Law and State Constitution to the labor of civil detainees has not yet been fully determined by the New York courts. Accordingly, even if this Court determines that it has subject matter jurisdiction to decide the disputes in this case, it should abstain from doing so. The federal courts are not the appropriate forum for determining New York state policy. *See Colorado River*, 424 U.S. at 814; *Thibodaux*, 360 U.S. at 27-28.

## IV.    CONCLUSION

For the foregoing reasons, this action should be remanded to allow the state courts to decide the proper application of the New York Labor Law, New York state constitution, and New York common law to Plaintiffs' purely state law claims.