## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| DALILA YEEND, BOUNNAM PHIMASONE, ELVIN MINAYA RODRIGUEZ, LISA LAPOINTE, AND SHANTADEWIE RAHMEE,<br>　　　　**Plaintiffs,**<br>**v.**<br><br>**AKIMA GLOBAL SERVICES, LLC,**<br>**a/k/a AGS,**<br>　　　　**Defendant.** | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | **CIVIL ACTION NO.: 1:20-CV-01281** |

---

## DEFENDANT'S STATEMENT OF MATERIAL FACTS

---

**NOW COMES**, Defendant, Akima Global Services, LLC ("AGS" or "Defendant"), through undersigned counsel, who hereby submits the following Statement of Material Facts in Support of its Motion for Summary Judgment.

**The Facility**

1. The Buffalo Federal Detention Facility in Batavia, New York ("BFDF")[1] is a Service Processing Center ("SPC")[2] located at 4250 Federal Drive.[3]

---

[1] The BFDF is sometimes informally referred to simply as "Batavia."

[2] ICE employs several types of facilities to house detainees: Service Processing Centers (SPCs); Contract Detention Facilities (CDFs); and State or local government facilities through Intergovernmental Service Agreements (IGSAs). (*See* PBNDS 2011, Rev. 2016 ("PBNDS"), pp. iii, 1 (excerpts, full document available at https://www.ice.gov/doclib/detention-standards/2011/pbnds2011r2016.pdf )(last visited 2/7/2024), attached as Exhibit 1. Defendant respectfully asks that the court take judicial notice of facts contained within governmental websites pursuant to Fed. R. Evid. 201. *Rynasko v. New York Univ.*, 63 F.4th 186, n.4, 191 (2d Cir. 2023) (courts "may take judicial notice of documents from official government websites").

[3] Declaration of George Harvey, ICE Assistant Field Office Director ("Harvey Decl."), ¶ 2, attached as Exhibit 2.

2. An SPC is an "ICE owned and operated facilit[y] for housing detainees." It is a "detention facility the primary operation and controlling party of which is [the United States Department of Homeland Security ("DHS") Immigration and Customs Enforcement agency] ICE."[4]

3. BFDF includes several housing units, indoor and outdoor recreation areas, a chapel, law library, indoor basketball court, common areas, a kitchen, and laundry, as well as processing, visitation, medical (staffed by ICE Health Services Corps and ICE-controlled healthcare providers), a warehouse for government property, and the Batavia Immigration Court.[5]

4. Unlike detention centers that are privately owned and/or operated pursuant to a contract with ICE, the BFDF SPC is an ICE-owned facility—overseen, operated, and controlled by ICE, which maintains a significant presence on site.[6]

5. ICE Enforcement and Removal Operations ("ERO") staff serve as administrative and supervisory staff over AGS personnel.[7]

6. The facility administrators (*i.e.*, the wardens) are ICE employees and hold the title of ICE Detention Assistant Field Office Director ("AFOD") for the Buffalo Field Office.[8]

---

[4] Declaration of Laura Mitchell ("Mitchel Decl."), attached as Exhibit 3, ICE-AGS contract ("ICE-AGS contract") (D-000307-547), attached to Mitchell Decl. as Exh. 3-A, defining "SPC" at D-000356; PBNDS, p. 473, §7.5, Definitions; Harvey Decl. ¶¶ 2, 4.

[5] Declaration of Craig Trippany ("Trippany Decl.") ¶ 9, attached as Exhibit 4; ICE-AGS contract at D-000395-396.

[6] Harvey Decl. ¶¶ 1-2; Trippany Decl. ¶¶ 5-8; *see also* excerpts from deposition of Craig Trippany ("Trippany Dep."), at 132:3-133:18, attached as Exhibit 5.

[7] Trippany Decl. ¶ 7; *see* BFDF PBNDS audit, 2022 at 2, attached as Exhibit 6-E, available at https://www.ice.gov/doclib/facilityInspections/BTV22-CL-08-25-2022.pdf (last visited 2/7/2024).

[8] Harvey Decl. ¶ 1; Trippany Dep. at 132:19-133:12; Trippany Decl. ¶¶ 5-6.

2

7. There are two AFODs at Batavia. Each AFOD is the ICE senior officer in charge of a specific function at BFDF. One oversees the detention, compliance, and processing of detainees, and the other oversees programs and deportation.[9]

8. The BFDF houses an ICE Office of the Principal Legal Advisor for the Buffalo Field Office.[10]  ICE immigration officers, supervisors, and the AFOD are officed on site.[11]

9. An ICE Chief of Security is also on site and works directly with AGS to ensure all policies and procedures are being followed.[12]   Additional ICE officials, while officed in other locations, also have a regular, ongoing presence on site, up to weekly.[13]

10. The Batavia Immigration Court and its staff (also located at BFDF) fall under the jurisdiction of the Office of the Chief Immigration Judge and is a component of the Executive Office of Immigration Review ("EOIR") under the Department of Justice.[14]  The EOIR maintains offices at BFDF.[15]

11. BFDF houses only detainees in the custody of ICE, many of whom have "substantial and varied criminal histories."[16]

---

[9] Harvey Decl. ¶ 1; ICE-AGS contract at D-000349; Trippany Decl. ¶ 6.

[10] Trippany Decl. at ¶ 5; *See also* Ice Field Offices, Web Site of U.S. Immigration and Customs Enforcement, available at https://www.ice.gov/contact/field-offices?state=All&office=12&keyword= (last visited 2/7/2024) filtered by "New York," "Office of the Principal Legal Advisor," attached as Exhibit 7.

[11] Trippany Decl. ¶¶ 5-8.

[12] Trippany Dep. at 133:13-18.

[13] Trippany Decl. ¶ 8.

[14] Batavia Immigration Court, Web Site of the U.S. Department of Justice, available at https://www.justice.gov/eoir/batavia-immigration-court#about (last visited 2/7/2024) attached as Exhibit 8.

[15] ICE-AGS contract at D-000352.

[16] Trippany Decl. ¶ 12; ICE-AGS contract at D-000351.

12. AGS does not own any part of BFDF or the land upon which BFDF was built.[17]   Further, AGS does not have access to government equipment, documents or materials unless authorized by ICE, and its employees may not enter any restricted areas of BFDF unless necessary for the performance of their duties.[18]

**The Parties**

13. The plaintiffs in this lawsuit are all former non-citizen detainees at BFDF, each of whom was detained by ICE following a violation of the United States immigration laws coupled with an arrest or criminal conviction, and thus each plaintiff was a ward of the federal government during the period relevant to this lawsuit.[19]

14. Defendant AGS is a private entity that contracts with ICE to provide contractually defined, "detention management services" on site at BFDF ("ICE-AGS contract").[20]

15. The scope of AGS's responsibility under the ICE-AGS contract is limited to providing "detention management support services" at BFDF, which consists of providing

---

[17] Mitchell Decl. ¶ 24; *see also* public records of ownership, Genessee County Treasurer Parcel History Database, Liber 678, Page 170, available by search of "deed info" at https://gisp.co.genesee.ny.us/PHD/viewer/ (last visited 2/7/2024).

[18] ICE-AGS contract at D-000378.

[19] *See, e.g.,* excerpts from the deposition of Bounnam Phimasone ("Phimasone Dep.") at 16:16-20, 19:13-20:7, 21:25-22:3, attached as Exhibit 9; excerpts from the deposition of Dalila Yeend ("Yeend Dep.") at 11:8-12:2, 15:10-16:25, attached as Exhibit 10; excerpts from the deposition of deposition of Evin Minaya Rodriguez ("Rodriguez Dep.") at 14:12-13, 15:16-16:14, attached as Exhibit 11; excerpts from the deposition of Lisa LaPointe ("Lapointe Dep.") at 11:1-13:22, 16:7-17:13, attached as Exhibit 12; excerpts from the deposition of Shantadewie Rahmee ("Rahmee Dep.") at 10:21-24, 13:3-15:6, attached as Exhibit 12.

[20] Mitchell Decl. ¶¶ 2, 5, 7-10; *see, generally*, ICE-AGS contract.

administrative support for detainee intake, security services, and transport, food, and laundry services to detainees.[21]

16. Since 1998, and before AGS was awarded the contract at BFDF, prior contractors performed this same function at this facility pursuant to similar contracts.[22]

17. Many of the current AGS employees held the same roles at BFDF but were employed by prior contractors.[23]

18. AGS's Project Manager (currently Craig Trippany), the top AGS official on site, reports to the ICE AFOD on site, and AGS takes direction from the ICE management team.[24]

19. The Facility Operations Specialist, an ICE employee (currently Cory Reffner), oversees the maintenance of BFDF.[25]

20. ICE contracts with another private entity, Chenega Facilities Management, for janitorial and maintenance services at BFDF, which include maintenance of the HVAC system and the facility temperature.[26]

---

[21] Mitchell Decl. ¶ 7; ICE-AGS contract at D-000347-349; s*ee also* Harvey Decl. at ¶ 3; Trippany Decl. at ¶ 10.

[22] Excerpts from the deposition of Deposition of Denise Bordonaro ("Bordonaro Dep.") at 13:3-25, attached as Exhibit 14; Trippany Dep. at 7:12-8:3; Trippany Decl. ¶ 3; excerpts from the deposition of Deposition of Gail Brabon ("Brabon Dep.") at 7:12-16; 8:2-10; 70:2-20, attached as Exhibit 15.

[23] *See e.g.,* all citations at footnote 22.

[24] Trippany Dep. at 132:13-22; Harvey Decl. ¶ 1.

[25] Declaration of Cory Reffner ("Reffner Decl.), ¶ 1, attached as Exhibit 16.

[26] Declaration of Robert V. Roberts, Contracting Officer, ICE. ("Roberts Decl.") attached as Exhibit 17; Chenega contract at ICE-000201-207, attached as Exh. 17-A to Roberts Decl.; Mitchell Decl. ¶¶ 8-9.

21. The medical facility at BFDF is maintained by ICE and is operated by the ICE Health Services Corps ("IHSC").[27]

22. AGS does not provide maintenance, janitorial,[28] religious, medical, or any health services at BFDF.[29]

23. AGS bid for the "detention management services" contract at BFDF in response to a Request for Proposal ("RFP") in 2014, and after being awarded the contract, began providing services at BFDF in early 2015 through present.[30]

24. AGS employs unarmed security guards within the housing units and other posts and non-officer kitchen and laundry workers, all of whom carry out the mission of ICE at the on-site direction of ICE in accordance with the ICE-AGS contract.[31]

25. The ICE-AGS contract mandates that any employee of AGS who works on this contract "shall be a United States citizen," among other personnel requirements.[32]

---

[27] Trippany Decl. ¶ 9; *see* ICE-AGS contract at D-0060; ICE Health Service Corps, https://www.ice.gov/detain/ice-health-service-corps (last visited 2/7/2024).

[28] A later contract modification added limited warehouse cleaning to the scope of AGS' work, however, detainees are not permitted in the warehouse and this cleaning is not material to the lawsuit. Mitchell Decl. ¶ 8; *see* AGS-ICE contract at D-000310.

[29] Trippany Dep. 25:4-21; excerpts from the Deposition of Troy Ireland ("Ireland Dep.") at 107:15-109:17, attached as Exhibit 18; Bordonaro Dep. at 142:11-13; Trippany Decl. ¶ 11; Mitchell Decl. ¶¶ 8-10, ICE-AGS contract at D-000347-349 (explaining objective and scope of work).

[30] Trippany Dep. at 7:2-5: Mitchell Decl. ¶¶ 2, 4-6; Request for Proposal ("RFP"), attached as Exh. 3-B to Mitchell Decl.

[31] Trippany Decl. ¶ 10; ICE-AGS contract at D-000361-364.

[32] ICE-AGS contract at D-000371.

**Detention**

26. Detainees are classified at intake by risk assessment as low, medium, or high security based on specific standards as promulgated by ICE.[33]

27. ICE provides color-coded uniforms (blue, orange, or red) to detainees based on their risk classification.[34]

28. ICE also provides toiletries (soap, toothbrushes and toothpaste, and other hygiene items), as well as specific articles of bedding, and ICE specifies how many of each item are provided to detainees at intake.[35]

29. Within the housing units, ICE sets forth the daily routine through written operating procedures and post orders which provide, among other things: a daily schedule, with set times for such things as official detainee counts throughout the day; mealtimes; when the televisions may be turned off and on; recreation times; when medications are dispensed; and other daily activities within the units.[36]

30. Officers are provided with specific post orders, issued by ICE, and instructions for providing security at each post location within BFDF.[37]  AGS employees are required to

---

[33] Trippany Decl. ¶ 12; ICE-AGS contract at D-000348; Lapointe Dep. at 27:1-12; Rahmee Dep. at 21:12-22:22; Rodriguez Dep. at 21:17-22:7; Yeend Dep. at 32:1-25.

[34] Trippany Decl. ¶ 12; Lapointe Dep. at 27:1-12; Phimasone Dep. at 32:24-33:16; Rahmee Dep. at 21:12-22:22; Rodriguez Dep. at 21:17-22:7; Yeend Dep. at 32:1-25.

[35] Trippany Decl. ¶ 13; ICE-AGS contract at D-000365; Lapointe Dep. at 28:4-8, 30:19-23. 48:17-23; Phimasone Dep. at 34:18-35:5; 35:21-23; Rahmee Dep. at 24:9-13, 25:25-26:7; Rodriguez Dep. at 23:8-12. 24:2-6; Yeend Dep. at 33:18-35:21.

[36] Trippany Decl. ¶¶ 14-15; Detainee Housing Unit Officer Post Order, attached to Trippany Decl. as Exh. 4-A.

[37] ICE-AGS contract at D-000385, D-000387-388; Trippany Decl. ¶¶ 14-15; *see also* Kitchen Officer Post Order, attached to Trippany Decl. as Exh. 4-B; Corridor Officer Post Order, attached to Trippany Decl. as Exh. 4-C; Work Detail Officer Post Order, attached to Trippany Decl. as Exh.

comply with all post orders.[38]  For example, housing unit officers are required to conduct multiple daily detainee counts; three random shakedowns per shift; conduct rounds and confirm detainees have made their beds and their living areas are neat; and oversee daily activities including mail call, clothing requests, recreation, library, educational programs, visitation, use of the televisions, tablets and phones, and all other activities occurring in the units, all of which are expressly provided for and mandated in ICE post orders.[39]

**The Contract**

31. The ICE-AGS contract (and the underlying RFP that led to the contract) mandates that AGS provide detainees with access to specific programs, and expressly requires the implementation of the detainee voluntary work program ("VWP") at BFDF.[40]

32. In 2014, ICE issued a public RFP for the detention management services contract at Batavia.[41]

33. The RFP included Section B, which provided a spreadsheet in which offerors (*i.e.,* applicants such as AGS) would complete their pricing proposals for several contract line-item numbers ("CLINs") including processing hours, transportation hours, stationary guard service hours, sack lunches, detention bed days, and more.[42]

---

4-D; Barber Shop Officer Post Order, attached to Trippany Decl. as Exh. 4-E; Recreation Officer Post Order, attached to Trippany Decl. as Exh. 4-F.

[38] *Id.*

[39] Detainee Housing Unit Officer Post Order, Exh. 4-A.

[40] Harvey Decl. ¶¶ 5-6; Mitchell Decl. ¶ 7; ICE-AGS contract at D-000390, D-000396-397, D-000448; RFP at D-002744 ("Contractor shall allow detainees appropriate access to religious services, health care, visitation, voluntary work programs, recreation, and confidential access to the court system.").

[41] Mitchell Decl. ¶¶ 4, 6; RFP.

[42] Mitchell Decl. ¶ 13; RFP at D-002690-2700.

34. Offerors were required to insert a unit price for these CLINs as part of their bid.[43]

35. All CLIN unit prices were left blank in the RFP for completion by the offerors except for the VWP which mandated that "Detainees earn $1 per day."[44]  Thus, offerors had no discretion in the bid and preparation of this contract as to the payment rate of detainees, or the design of the VWP program.[45]

36. Likewise, the instructions contained in Section B of the RFP (Supplies or Services and Prices/Costs) provided a table for completion with offerors' proposed unit prices; here, too, all unit prices were blank except for the VWP, which was prefilled by ICE at a unit price of $1 per day.[46]

37. In addition, Section L provided the instructions for offerors, and specified that the offeror's pricing template, attachment 10 to the RFP, must be included with the proposal.[47]

38. The pricing template provided for ten different CLINs and provided a blank space for the offeror to insert its proposed unit price for all except two items—one of which was the VWP, which stated a prefilled unit price of $1 per day.[48]

39. Moreover, the instructions at the top of Attachment 10 expressly mandated that offerors shall not change the prefilled CLINs, quantities, units, or unit prices.[49]

---

[43] *Id.*

[44] Mitchell Decl. ¶¶ 13-14; RFP at D-002649, 2652, 2654, 2657, 2660, 2662, 2665, 2668, 2671, 2673, 2676.

[45] Mitchell Decl. ¶ 14.

[46] Mitchell Decl. ¶ 15; RFP at D-002690-2699.

[47] Mitchell Decl. ¶ 16; RFP at D-002804.

[48] Mitchell Decl. ¶ 16; RFP at D-002818-2821.

[49] *Id.* at D-002818.

40. Finally, Section M provided the evaluation factors, and mandated that the RFP must track the requirements as set forth in the RFP.[50] In other words, the failure to submit the Attachment 10 pricing template or adhere to Schedule B as instructed would result in elimination from the evaluation.[51]

41. There was no opportunity for different or subsequent bids, negotiation, or discretion as to the rate of pay for the VWP at the BFDF.  ICE mandated payment of $1 per day in bidding on the contract.[52]  Moreover, the Contract itself expressly states that the ICE contracting officer "does not have the authority to modify the stated terms of the contract or approve any action that would result in additional charges to the Government, beyond what is stated in the CLIN schedule."[53]

42. AGS submitted its proposal in compliance with the RFP requirements, including the mandatory provision of the VWP at a rate of $1 per day.[54]

43. AGS was ultimately awarded the contract to provide detention management services at BFDF, and after a brief transition period, began doing so in February 2015.[55]  The ICE-AGS contract is subject to Federal Acquisition Regulations ("FAR"), which expressly bind the government and AGS, and prevent any unilateral modifications by AGS or bilateral changes not duly approved by both parties.[56]

---

[50] Mitchell Decl. ¶ 17; RFP at D-002808-2817.

[51] Mitchell Decl. ¶ 17; RFP at D-002810.

[52] Mitchell Decl. ¶ 18; RFP at D-002690-2699, D-002804, D-002818-2821.

[53] ICE-AGS contract at D-000358.

[54] Mitchell Decl. ¶ 19; AGS Contractor Proposed Pricing, attached to Mitchell Decl. as Exh. 3-C.

[55] Mitchell Decl. ¶ 5; ICE-AGS contract.

[56] *See* FAR 43.103(a), and ICE-AGS contract at D-000319, stating "This base contract must be adhered to, [and] … changes must be submitted in writing and approved by a warranted ICE

44. The ICE-AGS contract awarded to AGS mandates in relevant part, as to CLIN 0004, Detainee Volunteer Work Program, that "[t]he contractor will be reimbursed on the award document for expenses, as incurred," and further states that "Detainees earn $1.00 per day."[57]

45. The ICE-AGS contract does not contain any language suggesting that ICE will reimburse AGS only $1 per day, or that detainees must earn 'at least' $1 per day; rather, it mandates precisely how much detainees will earn in this program at this facility, and that AGS will be reimbursed for the expenses incurred.[58]

46. The BFDF Handbook that is drafted by ICE ERO and provided to detainees, expressly states "Wages are $1 per day."[59]

47. Consistent with these mandates, AGS pays, and has paid, $1 per day to detainees in the VWP at BFDF.[60]

48. Such expenses are then submitted for reimbursement from the federal government.[61]

49. ICE has always paid all expenses submitted.[62]

50. ICE provides a standardized Detainee Voluntary Work Program Agreement ("VWP Agreement") for use at BFDF that bears the federal agency header (but not the contractor's)

---

Contracting Officer."  Unilateral changes may only be made by ICE, *not* AGS.  FAR 43.103(b); Mitchell Decl. ¶ 20.

[57] Mitchell Decl. ¶ 20; ICE-AGS contract at D-000320, 322, 324, 326, 328, 331, 333, 335, 337, 339.

[58] *See Id.*

[59] Trippany Decl. ¶¶ 16-17; Buffalo Federal Detention Facility Handbook, at D-000282, attached to Trippany Decl. as Exh. 4-G.

[60] Mitchell Decl. ¶¶ 20, 22; Trippany Decl. ¶¶ 17-18; Trippany Dep. at 30:15-20.

[61] Mitchell Decl. ¶ 22; Trippany Decl. ¶ 19.

[62] Mitchell Decl. ¶¶ 20, 22; ICE-AGS contract at D-000430; Trippany Decl. ¶ 19; Buffalo Federal Detention Facility Handbook, at D-000282.

and contains information regarding the program. ICE requires that each detainee participant sign this VWP Agreement.[63]

51. The VWP Agreement, identified as form BFDF-0016, was created by ICE prior to 2004, and revised periodically, including in January 2004, 2009, July 2010 (all before AGS assumed the contract), and May 2018.[64]

52. Each update of the VWP Agreement consistently states that "Compensation shall be $1.00 per day."[65]

**The Voluntary Work Program and Background**

53. Congress has authorized federal agencies to pay detained immigrants for labor, thus providing the genesis of the VWP; that statue permits "payment of allowances (at such rate as may be specified from time to time in the appropriation Act involved) to aliens, while held in custody under the immigration laws, for work performed…."[66]

---

[63] Trippany Decl. ¶ 20; Detainee Voluntary Work Program Agreement ("VWP Agreement"), attached to Trippany Decl., as Exh. 4-I; Phimasone Dep. at 59:6-60:3; Yeend Dep. at 63:3-25; Rodriguez Dep. at 53:20-54:10; Lapointe Dep. at 57:19-25; Rahmee Dep., at 53:3-18.

[64] *See* Phimasone Dep. Exh. 7 ("VWP Agreement of Phimasone"), marked D-000306, reflecting "Revised 01/04," attached as Exh. 9-A; Lapointe Dep, Exh. 5 ("VWP Agreement of Lapointe"), marked D-000565, reflecting "Revised 05/2018," attached as Exh. 12-A; Rodriguez Dep. Exh. 6 ("VWP Agreement of Minaya-Rodriguez"), marked D-001122, reflecting "Revised 2009," attached as Exh. 11-A; Rahmee Dep. Exh. 8 ("VWP Agreement of Rahmee"), marked D-000562, reflecting "Revised 07/10," attached as Exh. 13-A; Yeend Dep. Exh. 5 ("VWP Agreement of Yeend"), marked D-000242, also reflecting "Revised 07/10," (attached as Exh. 10-A).

[65] *See id.* Each signed VWP Agreement states "Compensation shall be $1 per day."

[66] 8 U.S.C. § 1555. "[V]olunteers are compensated one dollar ($1.00) per day for their participation. The amount of payment was set by congressional act." *Alvarado Guevara v. I.N.S.,* 902 F.2d 394, 396 (5th Cir. 1990) (citing Department of Justice Appropriation Act, 1978, Pub. L. No. 95–86, 91 Stat. 426 (1978). *See also* Harvey Decl. ¶ 7.

54. The Appropriation Act specifies that such allowances may be paid for work performed while in custody under the immigration laws "at a rate not in excess of $1 per day."[67]

55. On September 20, 2000, the DHS Immigration and Naturalization Service ("INS") (a precursor to ICE) issued a Detention Operations Manual, setting forth detention standards for immigration detainees.[68]

56. The Manual stated that for participation in the Voluntary Work Program, detainees shall receive compensation "in accordance with the facility's standard policy."[69]

57. It further mandated that "in SPCs" (like BFDF), "the stipend is $1.00 per day…"[70]

58. INS, simultaneously to issuing the Detention Operations Manual, issued a policy requiring a Detainee Handbook for persons in detention, and providing a required template for the federal Officer in Charge ("OIC") to follow in developing a local handbook applicable to the OIC's specific facility.[71]  With respect to the VWP, it stated that "Wages are $1.00 per day."[72] That amount has, to date, not changed.[73]

---

[67] PL 95–86 (HR 7556), PL 95–86, AUGUST 2, 1977, 91 Stat 419; *see also* Harvey Decl. ¶ 7.

[68] *See* Detention Operations Manual, U.S. Department of Homeland Security, excerpts attached as Exhibit 19, available at https://www.hsdl.org/c/view?docid=28966 (last visited 2/7/2024); *see also id.* at 109-110, 291-301 (discussing the volunteer work program).

[69] *Id.* at 294, §3(K).

[70] *Id.* at 109-110, 294, 298.

[71] *See* INS Detention Standard: Detainee Handbook, U.S. Department of Homeland Security, at 1, excerpt attached as Exhibit 20, available at https://www.ice.gov/doclib/dro/detention-standards/pdf/handbk.pdf (last visited 1/10/2024). Note that the Detainee Handbook Detention Standard is a subpart of the Detention Operations Manual. *See* footnote 68.

[72] *Id.* at 10.

[73] *Id.*

59. ICE later promulgated the Performance Based National Detention Standards (2011) ("PBNDS") (updated in 2016) regarding the conditions of confinement, program operations and management expectations.[74]

60. PBNDS specifically provides for the VWP and explains that the program provides detainees with the opportunity to work and earn money while confined, on a voluntary basis; that it enhances operations and services through detainee productivity; and that it reduces the negative impact of confinement through "decreased idleness, improved morale and fewer disciplinary incidents."[75]

61. The VWP is implemented at various facilities around the country, including at BFDF.[76]

62. Prior to AGS, the predecessor contractor at BFDF also oversaw detainees as part of the VWP.[77]  In other words, the VWP was not new to AGS; rather, it is a long-standing program that has been implemented by ICE through other contractors at this site, without interruption for many years.[78]

63. Throughout this period, including prior to AGS, contractors at BFDF have been governed by the same policies and procedures, and abided by the original $1 per day payment limit set by INS and later by ICE.[79]

---

[74] Harvey Decl. ¶ 4; *see* PBNDS.

[75] PBNDS, at 405, §5.8 (II)(1-4).

[76] *Id.*; *see also* Trippany Decl. ¶ 16; National Detainee Handbook at D-002285, attached to Trippany Decl.as Exh. 4-H), most current version available at https://www.ice.gov/detain/detention-management/national-detainee-handbook (last visited 4/7/24).

[77] Trippany Decl. ¶¶ 3,18; Trippany Dep. at 7:1-24, 128:4-22; Brabon Dep. at 7:12-9:15.

[78] Trippany Decl. ¶¶ 3, 18; Brabon Dep. at 7:12-9:15, 69:7-71:9.

[79] *Id.*

64. During intake at BFDF, ICE detainees are provided with two separate handbooks issued by ICE ERO: the National Detainee Handbook, which generally addresses rights, rules, programs, services, and procedures for detainees nationwide;[80] and the Buffalo Federal Detention Facility Handbook, which explains "the specific rules, regulations, policies and procedures that must be followed while in custody at the [BFDF] facility."[81]

65. Where there is a more specific or stringent rule, the local handbook governs.[82]

66. For example, the National Handbook generally addresses the availability of the VWP at detention facilities and the payment for participation, but advises that a detainee should "Check your local facility's local handbook."[83]

67. The BFDF Handbook, which contains policies specific to the BFDF facility, addresses the VWP, and states unequivocally, "Wages are $1 per day."[84]

68. The VWP has variously offered detainees the opportunity to accept a voluntary job within the facility, including cleaning positions in the housing unit (floors, bathrooms, etc.); loading the dishwasher in the kitchen; serving and clearing food trays for detainee meals; laundry folding within the housing unit; barbershop; buffing non-housing unit flooring

---

[80] Trippany Decl. ¶¶ 16-17, Exhibit 4-H, National Detainee Handbook; *see also* Lapointe Dep. at 18:14-20:1, 26:6-18 (identifying the National Detainee Handbook and the Buffalo Federal Detention Facility Handbook); Phimasone Dep. at 31:16-32:11 (identifying the Buffalo Federal Detention Facility Handbook); Rodriguez Dep. at 21:6-16 (identifying the Buffalo Federal Detention Facility Handbook); Yeend Dep. at 18:13-20:20, 30:5-31:24 (identifying the National Detainee Handbook and the Buffalo Federal Detention Facility Handbook).

[81] Buffalo Federal Detention Facility Handbook at D-000277; *see also* plaintiffs' deposition cites at fn. 80.

[82] Trippany Dep. at 27:23-28:19.

[83] National Detainee Handbook at D-002285.

[84] Buffalo Federal Detention Facility Handbook at D-000282.

(main corridor, sections of the intake area, etc.); and occasional short-term painting projects, or other maintenance tasks.[85]

69. ICE determines the work details available for detainees at BFDF.[86]

70. AGS does not have the authority to stop or start the VWP.[87]

71. ICE makes such a determination, as it did during the COVID-19 pandemic, when it halted detainee workers from working in the kitchen and other common areas for specific periods.[88]

72. AGS cannot override such a decision.[89]

73. ICE sets forth classification standards which mandate which detainees are eligible for particular work details within the VWP.[90]

74. Detainees who choose to participate in the program are paid an incentive payment rate of $1 per day in accordance with the ICE-AGS contract and consistent with the BFDF Handbook and other documents issued by ICE.[91]

---

[85] Trippany Dep. at 11:5-12:7, 24:16-24, 32:9-33:16, 38:13-39:13, 46:13-19, 58:4-59:23, 91:10-16; 94:20-95:9; 159:23-160:8.

[86] Trippany Decl. ¶¶ 21-22; ICE-AGS contract at D-000390.

[87] Trippany Decl. ¶ 22; Mitchell Decl. ¶ 21; ICE-AGS contract at D-000365, 390.

[88] Trippany Decl. ¶ 22; Trippany Dep. at 22:16-24.

[89] Trippany Decl. ¶ 22; *see, e.g.,* Trippany Dep. at 78:5-20 ("We work at the discretion of ICE . . . we can't come up with just how we're going to do it without ICE telling us that's what they want done. We can't just make up our own rules. . .").

[90] Trippany Decl. ¶ 12; Trippany Dep. 98:15-99:3; ICE-AGS contract at D-000350 (defining Classification).

[91] Mitchell Decl. ¶¶ 19, 20, 22; ICE-AGS contract at D-000320, 322, 324, 326, 328, 331, 333, 335, 337, 339; Trippany Decl. ¶¶ 18-19; Buffalo Federal Detention Facility Handbook at D-000282; VWP Agreement of Phimasone; VWP Agreement of Lapointe; VWP Agreement of Minaya-Rodriguez; VWP Agreement of Rahmee; VWP Agreement of Yeend.

75. Because ICE forbids detainees from possessing cash while in detention at BFDF, the payment is deposited in their commissary account.[92]

76. Any remaining funds are cashed out and provided to detainees at their release.[93]

77. Any profits earned on commissary sales are directed into the detainee welfare fund, which is used to purchase recreation items, pay for streaming television services (*e.g.,* Netflix), and the like. At the close of the contract, all remaining funds remain the property of ICE.[94]

78. The VWP provides only a limited number of positions, which often results in a waitlist for spots.[95]

**Compliance with the Contract.**

79. BFDF is audited every six months by the governmental Office of Detention Oversight and periodically under PBNDS by independent third-party auditors.[96]

---

[92] Trippany Decl. ¶ 25; BFDF Detainee Handbook p. 20; ICE-AGS contract at D-0000396; Lapointe Dep. at 19:19-20:5; Phimasone Dep. at 25:1-15; Yeend Dep. at 21:25-23:14.

[93] Trippany Decl. ¶ 25; Brabon Dep. at 23:24-24:19; Phimasone Dep. at 25:7-15; Yeend Dep. at 24:2-6; Lapointe Dep. at 20:12-21.

[94] Trippany Decl. ¶ 26; ICE-AGS contract at D-0000396.

[95] Ireland Dep. at 145:1-146:1; Bordonaro Dep. at 79:12-80:3; Rahmee Dep. at 49:5-50:11; Rodriguez Dep. at 54:23-56:3; Yeend Dep. at 58:12-60:8; Trippany Decl. ¶ 21.

[96] Trippany Decl. ¶ 27; s*ee also* ICE Facility Inspections, Web Site of U.S. Immigration and Customs Enforcement, attached as Exh. 6, available at https://www.ice.gov/detain/facility-inspections (last visited 4/7/2024) (only 2018-2022 inspections are available).

80. Since the beginning of 2015, the BFDF has been audited seven times[97] (March 2015;[98]

March 2016;[99] March 2017;[100] March 2018;[101] April 2019;[102] August 2021;[103] and August

2022[104]) by an independent third party engaged by the federal government.[105]

---

[97] Trippany Decl. ¶ 28. The 2020 PBNDS audit, which would have occurred near the onset of COVID-19, was cancelled. As of the date of this filing, a 2023 and 2024 audit have not occurred. *Id.*

[98] Emails regarding audits at D-003253-32540, attached to Trippany Decl. as Exh. 4-J (reflecting facility meeting all standards other than certain minor matters controlled by ICE, dealing with medical record transfers, mail, and the location of the suicide watch safe cell).

[99] *Id.* at D-003255-3256 (stating the facility met all standards).

[100] *Id.* at D-003258-3259 (stating "no issues" and indicating praise of the kitchen and staff from the auditors).

[101] *Id.* at D-003260-3261 (noting "another 100% score on PBNDS 3rd party audit").

[102] *Id.* at D-003262-3263 (ICE Officer in Charge email indicating "no deficiencies on all standards BFDF PBNDS audit 2019, attached as Exhibit 6-A; available at https://www.ice.gov/doclib/facilityInspections/batavia_CL_04_04_2019.pdf (last visited 2/7/2024); BFDF PBNDS Detention Review Summary Form 2019, attached as Exhibit 6-B, available at https://www.ice.gov/doclib/facilityInspections/batavia_SIS_04_04_2019.pdf (last visited 2/7/2024).

[103] Emails regarding audits at D-003266-3267 ("Another successful PBNDS Audit …[with] no major findings by the auditors."); BFDF PBNDS audit 2021, attached as Exhibit 6-C, available at https://www.ice.gov/doclib/facilityInspections/buffaloSPC_CL_08-26-2021.pdf (last visited 2/7/2024); Facility Significant Incident Summary, also known as "Detention Review Summary Form", August 24, 2021, attached at 6-D, available at https://www.ice.gov/doclib/facilityInspections/buffaloSPC_SIS_08-26-2021.pdf (last visited 2/7/2024).

[104] BFDF PBNDS audit 2022 at 2, attached as Exhibit 6-E, (Audit results reflecting BFDF meets all 40 standards), available at https://www.ice.gov/doclib/facilityInspections/BTV22-CL-08-25-2022.pdf (last visited 2/7/2024); Facility Significant Incident Summary, also known as "Detention Review Summary Form," August 23, 2022, attached as Exhibit 6-F, available at https://www.ice.gov/doclib/facilityInspections/BTV22-SIS-08-25-2022.pdf (last visited 2/7/2024).

[105] Trippany Decl. ¶¶ 27-28.

81. Such audits are comprehensive examinations that review 42 standards with over 600 components and take a team of auditors three days to perform.[106]

82. Auditors inspect the facility, review the records, interview detainees, observe staff-detainee interactions, speak with staff, and perform other investigative actions.[107]

83. For each audit between 2015 and present, of the elements of the audit attributable to AGS, AGS has received a 100% compliance rating every time, with no deficiencies.[108]

84. Potential deviations from the contract are reported to the federal government by way of a Contract Discrepancy Report.[109]

85. Since assuming the contract in 2015, AGS has not had a single contract discrepancy report.[110]

86. AGS is and has been in compliance with its contract with the federal government and meets PBNDS standards pursuant to the government's own standards and audits.[111]

87. From the start of the contract period in 2015 through present, AGS has regularly submitted invoices for reimbursement of the VWP; there has never been a rejected invoice or finding that AGS was out of compliance, and ICE has paid all invoices since the inception of this contract.[112]

---

[106] Trippany Decl. ¶ 30; *see* Facility Inspections, available at https://www.ice.gov/detain/facility-inspections (last visited 2/7/2024) (only 2018-2022 inspections are available online); *see*, *also* BFDF PBNDS audit 2022.

[107] *See* BFDF PBNDS audits 2019, 2021, and 2022 *supra.*

[108] *See* Emails regarding audits; *see also* BFDF PBNDS audits 2019, 2021, and 2022 *supra.*

[109] Trippany Decl. ¶ 31.

[110] Trippany Decl. ¶¶ 29, 31; Mitchell Decl. ¶ 22.

[111] Trippany Decl. ¶¶ 29-31; Emails regarding audits (Ex. 4-J); *see also* BFDF PBNDS audits 2019, 2021, and 2022 *supra.*; Mitchell Decl. ¶ 22.

[112] Mitchell Decl. ¶¶ 20, 22; Trippany Decl. ¶ 19.

**Plaintiffs' Participation in the VWP**

88. Each plaintiff signed the ICE-issued VWP Agreement (form BFDF-0016), which expressly stated "Compensation shall be $1.00 per day."[113]

89. Plaintiffs were paid $1/day for their work in accordance with the ICE-AGS contract, the ICE-issued BFDF Handbook, and the ICE-issued VWP Agreement.[114]

90. All of Plaintiffs' VWP assignments were performed on-site and within ICE-designated areas of the BFDF property.[115]

**ICE's Necessary Involvement in this Matter**

91. During extensive discovery, Plaintiffs issued multiple *Touhy* requests, in which they sought voluminous documents and information from ICE, including seeking depositions.[116]

92. ICE refused to produce witnesses to testify, resulting in a series of conferences between ICE counsel and Plaintiffs, and Plaintiffs ultimately agreed to accept a declaration from an ICE employee—George Harvey, the current AFOD at BFDF.[117]

---

[113] Lapointe Dep. at 57:19-25, VWP Agreement of Lapointe; Phimasone Dep., at 59:6-60:3, VWP Agreement of Phimasone; Rahmee Dep. at 53:3-18, VWP Agreement of Rahmee; Rodriguez Dep. at 53:20-54:10, VWP Agreement of Minaya-Rodriguez; Yeend Dep. 63:3-25, VWP Agreement of Yeend.

[114] ICE-AGS contract at D-000320, 322, 324, 326, 328, 331, 333, 335, 337, 339; Buffalo Federal Detention Facility Handbook at D-000282; VWP Agreement of Phimasone; VWP Agreement of Lapointe; VWP Agreement of Minaya-Rodriguez; VWP Agreement of Rahmee; VWP Agreement of Yeend.

[115] Trippany Decl. ¶ 40.

[116] *See* Doc 114, Plaintiffs' Status Report (September 21, 2023).

[117] *See* Harvey Decl. The ICE / Harvey Declaration was executed on October 4, 2023, **after** the close of discovery.  By providing such statements in a written declaration, and after the close of discovery, the parties were prevented from any cross-examination of Mr. Harvey.

93. Statements in the Harvey Declaration not only contradict the express terms of the ICE-AGS contract, the ICE-issued BFDF Handbook, and the ICE-issued VWP Agreement, but also ICE and AGS's course of conduct since the inception of this contract in 2015.

94. ICE also produced a declaration as to the square footage of the BFDF facility; photographs taken and vetted by ICE; other documents, including bed counts; and a declaration to the authenticity of the Chenega contract; and vetted participants and led a tour of specific areas of the BFDF for counsel in this case.[118]

95. Although ICE has now taken the position (solely via the Harvey Declaration) that AGS has the discretion to pay in excess of $1 per day for the VWP program,[119] should AGS do so (or be ordered to do so), it will be in breach of the ICE-AGS contract, as well as outside of the parameters set forth by ICE policy contained in the BFDF Handbook and the ICE-promulgated VWP Agreement.[120]

96. Further, ICE may not reimburse AGS for any expenses as incurred over $1 per day because such payments in excess of $1 per day are not authorized by Congress.[121] ICE's failure to pay AGS for VWP payments as incurred will result in ICE itself breaching the ICE-AGS Contract.[122]

---

[118] *See e.g.,* Harvey Decl. and Roberts Decl.

[119] Harvey Decl. ¶ 7

[120] Moreover, it will have no recourse for recovery as ICE is only authorized to provide $1 per day.

[121] *See* Harvey Decl. ¶ 7, acknowledging that only $1 per day is authorized by Congress, and that the ICE-AGS Contract provides for reimbursement of $1 per day.

[122] Mitchell Decl. ¶ 20; ICE-AGS contract at D-000320, 322, 324, 326, 328, 331, 333, 335, 337, 339.

Respectfully submitted on February 8, 2024.

                                       **COUNSEL FOR DEFENDANT,**
**AKIMA GLOBAL SERICES LLC**

/s/ *Jessica L. Marrero*
Jessica L. Marrero
Amiel J. Provosty (*pro hac vice*)
**THE KULLMAN FIRM**
*A Professional Law Corporation*
1100 Poydras Street, Suite 1600
New Orleans, Louisiana 70163-1600
T: 504-524-4162 | F: 504-596-4114
JLM@KullmanLaw.com
AJP@KullmanLaw.com

Heather F. Crow (*pro hac vice*)
**THE KULLMAN FIRM**
*A Professional Law Corporation*
2915 Kerry Forest Parkway - Suite 101
Tallahassee, FL 32309
T: 850-296-1953 | F:504-596-4189
HFC@kullmanlaw.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on February 8, 2024, I electronically filed Defendant's Motion to Dismiss and Motion for Summary Judgment, its supporting Memorandum of Law, Statement of Material Facts, and exhibits with the Clerk of the U.S. District Court for the Northern District of New York via the CM/ECF system, which sent notification to all parties of record.


<u>/s/ *Jessica L. Marrero*     </u>

***Counsel for Defendant***