

# Performance-Based National Detention Standards 2011



U.S. Immigration
and Customs
Enforcement

EXHIBIT 1

# Preface

In keeping with our commitment to transform the immigration detention system, U.S. Immigration and Customs Enforcement (ICE) has revised its detention standards. These new standards, known as the Performance-Based National Detention Standards 2011 (PBNDS 2011), are an important step in detention reform.

ICE is charged with removing aliens who lack lawful status in the United States and focuses its resources on removing criminals, recent border entrants, immigration fugitives, and recidivists. Detention is an important and necessary part of immigration enforcement. Because ICE exercises significant authority when it detains people, ICE must do so in the most humane manner possible with a focus on providing sound conditions and care. ICE detains people for no purpose other than to secure their presence both for immigration proceedings and their removal, with a special focus on those who represent a risk to public safety, or for whom detention is mandatory by law.

The PBNDS 2011 reflect ICE's ongoing effort to tailor the conditions of immigration detention to its unique purpose. The PBNDS 2011 are crafted to improve medical and mental health services, increase access to legal services and religious opportunities, improve communication with detainees with no or limited English proficiency, improve the process for reporting and responding to complaints, and increase recreation and visitation.

The PBNDS 2011 are also drafted to include a range of compliance, from minimal to optimal. As such, these standards can be implemented widely, while also forecasting our new direction and laying the groundwork for future changes.

In closing, I would like to thank the ICE employees and stakeholders who provided significant input and dedicated many hours to revising these standards. I appreciate the collaboration and support in this important mission - reforming the immigration detention system to ensure it comports with our national expectations. The PBNDS 2011 are an important step in a multiyear process and I look forward to continued collaboration within ICE, with state and local governments, nongovernmental organizations, Congress, and all of our stakeholders as we move forward in reforming our detention system.

John Morton
Director

# Table of Contents

1. SAFETY.................................................. **1**
1.1 Emergency Plans..........................................1
1.2 Environmental Health and Safety ...........................20
1.3 Transportation (by Land) ................................38
2. SECURITY .............................................. **51**
2.1 Admission and Release ..................................51
2.2 Custody Classification System...........................62
2.3 Contraband..............................................80
2.4 Facility Security and Control ...........................84
2.5 Funds and Personal Property............................94
2.6 Hold Rooms in Detention Facilities ......................104
2.7 Key and Lock Control ..................................109
2.8 Population Counts ......................................117
2.9 Post Orders ............................................121
2.10 Searches of Detainees..................................124
2.11 Sexual Abuse and Assault Prevention and
Intervention .............................................134
2.12 Special Management Units ............................181
2.13 Staff-Detainee Communication.........................199
2.14 Tool Control ...........................................203
2.15 Use of Force and Restraints ...........................211
3. ORDER ................................................. **226**
3.1 Disciplinary System ....................................226
4. CARE ................................................... **241**
4.1 Food Service ...........................................241
4.2 Hunger Strikes .........................................268
4.3 Medical Care............................................272

4.4 Medical Care (Women)..............................322
4.5 Personal Hygiene...................................327
4.6 Significant Self-harm and Suicide Prevention and
Intervention .......................................331
4.7 Terminal Illness, Advance Directives and Death .....338
4.8 Disability Identification, Assessment, and
Accommodation ...................................344
5. ACTIVITIES.............................................. **358**
5.1 Correspondence and Other Mail.....................358
5.2 Trips for Non-Medical Emergencies .................365
5.3 Marriage Requests .................................368
5.4 Recreation .........................................371
5.5 Religious Practices.................................376
5.6 Telephone Access ..................................386
5.7 Visitation ..........................................393
5.8 Voluntary Work Program ...........................407
6. JUSTICE ................................................ **412**
6.1 Detainee Handbook................................412
6.2 Grievance System ..................................416
6.3 Law Libraries and Legal Materials..................424
6.4 Legal Rights Group Presentations ..................438
7. ADMINISTRATION AND MANAGEMENT ........ **445**
7.1 Detention Files .....................................445
7.2 Interview and Tours ................................449
7.3 Staff Training ......................................457
7.4 Detainee Transfers .................................461
7.5 Definitions .........................................468

**PBNDS 2011**
*(Revised December 2016)*
EXHIBIT 1

# Acronyms and Abbreviations

AFOD: Assistant Field Office Director

BIA: DOJ Board of Immigration Appeals

CBP: DHS Customs and Border Protection

CD: Clinical Director

CDC: Center for Disease Control, Department of Health and Human Services

CDF: Contract Detention Facility

CMA: Clinical Medical Authority

COR: Contracting Officer's Representative

CRCL: DHS Civil Rights and Civil Liberties

DHS: Department of Homeland Security

DOJ: Department of Justice

DRIL: ICE ERO Detention and Reporting Information Line

DSCU: ICE ERO Detention Standards Compliance Unit

EOIR: DOJ Executive Office for Immigration Review

ERO: ICE Enforcement and Removal Operations

FOD: Field Office Director

FSA: Food Service Administrator

GAB: Grievance Appeals Board

GO: Grievance Officer

HSA: Health Services Administrator

IAO: ICE Air Operations

IDP: Institution Disciplinary Panel

IGSA: Intergovernmental Service Agreement

IHSC: ICE Health Services Corps

JIC: DHS Joint Intake Center

LEP: Limited English Proficiency

LOP: Legal Orientation Program

LPR: Legal Permanent Resident

MDR: Multi-Drug Resistant

MOU: Memorandum of Understanding

MSDS: Material Safety Data Sheet

NCCHC: National Commission on Correctional Health Care

NCIC: National Crime Information Center, Federal Bureau of Investigation

NIC: DOJ National Institute of Corrections

OIC: Officer in Charge

OIG: DHS Office of the Inspector General

OPLA: ICE Office of the Principal Legal Advisor

OPR: ICE Office of Professional Responsibility

ORR: Office of Refugee Resettlement, Department of Health and Human Services

OSHA: Occupational Safety and Health Administration, Department of Labor

PBNDS: Performance-Based National Detention Standards

PII: Personally Identifiable Information

PREA: Prison Rape Elimination Act

SAFE: Sexual Assault Forensic Examiner

SANE: Sexual Assault Nurse Examiner

SART: Sexual Assault Response Team

SIR: Significant Incident Report

SMI: Serious Mental Illness

SMU: Special Management Unit

SPC: Service Processing Center

SRT: Situation Response Team

SRT: Special Response Team

**PBNDS 2011**
***(Revised December 2016)***
EXHIBIT 1

# 1.1 Emergency Plans

## I. Purpose and Scope

This detention standard ensures a safe environment for detainees and employees by establishing contingency plans to quickly and effectively respond to emergency situations and to minimize their severity.

This detention standard applies to the following types of facilities housing ICE Enforcement and Removal Operations (ERO) detainees:

- Service Processing Centers (SPCs);

- Contract Detention Facilities (CDFs); and

- State or local government facilities used by ERO through Intergovernmental Service Agreements (IGSAs) to hold detainees for more than 72 hours.

*Procedures in italics are specifically required for SPCs and CDFs.* IGSA facilities must conform to these procedures or adopt, adapt or establish alternatives, provided they meet or exceed the intent represented by these procedures.

Various terms used in this standard may be defined in standard "7.5 Definitions."

## II. Expected Outcomes

The expected outcomes of this detention standard are as follows (specific requirements are defined in "V. Expected Practices").

1. Each facility shall have in place contingency plans to quickly and effectively respond to emergency situations and to minimize their severity.

2. Staff shall be trained annually, at a minimum, in emergency preparedness and implementation of the facility's emergency plans.

3. An evacuation plan, in the event of a fire or other major emergency, shall be in place, and the plan shall be approved locally in accordance with this standard and updated annually at a minimum.

4. Events, staff responses and command-related decisions during and immediately after emergency situations shall be accurately recorded and documented.

5. Plans shall include procedures for assisting detainees with special needs during an emergency or evacuation.

6. The facility shall provide communication assistance to detainees with disabilities and detainees who are limited in their English proficiency (LEP). The facility will provide detainees with disabilities with effective communication, which may include the provision of auxiliary aids, such as readers, materials in Braille, audio recordings, telephone handset amplifiers, telephones compatible with hearing aids, telecommunications devices for deaf persons (TTYs), interpreters, and note-takers, as needed. The facility will also provide detainees who are LEP with language assistance, including bilingual staff or professional interpretation and translation services, to provide them with meaningful access to its programs and activities.

All written materials provided to detainees shall generally be translated into Spanish. Where practicable, provisions for written translation shall be made for other significant segments of the population with limited English proficiency.

Oral interpretation or assistance shall be provided to any detainee who speaks another language in which written material has not been translated or who is illiterate.

## III. Standards Affected

This detention standard replaces "Emergency Plans"

# 5.8 Voluntary Work Program

## I. Purpose and Scope

This detention standard provides detainees opportunities to work and earn money while confined, subject to the number of work opportunities available and within the constraints of the safety, security and good order of the facility.

While not legally required to do so, ICE/ ERO affords working detainees basic Occupational Safety and Health Administration (OSHA) protections.

This detention standard applies to the following types of facilities housing ICE/ERO detainees:

- Service Processing Centers (SPCs);

- Contract Detention Facilities (CDFs); and

- State or local government facilities used by ERO through Intergovernmental Service Agreements (IGSAs) to hold detainees for more than 72 hours.

*Procedures in italics are specifically required for SPCs, CDFs, and Dedicated IGSA facilities.* Non-dedicated IGSA facilities must conform to these procedures or adopt, adapt or establish alternatives, provided they meet or exceed the intent represented by these procedures.

Various terms used in this standard may be defined in standard "7.5 Definitions."

## II. Expected Outcomes

The expected outcomes of this detention standard are as follows (specific requirements are defined in "V. Expected Practices").

1. Detainees may have opportunities to work and earn money while confined, subject to the number of work opportunities available and within the constraints of the safety, security and good order of the facility.

2. Detainees shall be able to volunteer for work assignments but otherwise shall not be required to work, except to do personal housekeeping.

3. Essential operations and services shall be enhanced through detainee productivity.

4. The negative impact of confinement shall be reduced through decreased idleness, improved morale and fewer disciplinary incidents.

5. Detainee working conditions shall comply with all applicable federal, state and local work safety laws and regulations.

6. There shall be no discrimination regarding voluntary work program access based on any detainee's race, religion, national origin, gender, sexual orientation or disability.

7. The facility shall provide communication assistance to detainees with disabilities and detainees who are limited in their English proficiency (LEP). The facility will provide detainees with disabilities with effective communication, which may include the provision of auxiliary aids, such as readers, materials in Braille, audio recordings, telephone handset amplifiers, telephones compatible with hearing aids, telecommunications devices for deaf persons (TTYs), interpreters, and note-takers, as needed. The facility will also provide detainees who are LEP with language assistance, including bilingual staff or professional interpretation and translation services, to provide them with meaningful access to its programs and activities.

All written materials provided to detainees shall generally be translated into Spanish. Where practicable, provisions for written translation shall be made for other significant segments of the population with limited English proficiency.

Oral interpretation or assistance shall be provided to any detainee who speaks another language in which written material has not been translated or

EXHIBIT 1

who is illiterate.

## III. Standards Affected

This detention standard replaces "Voluntary Work Program" dated 12/2/2008.

This detention standard incorporates the requirements regarding detainees' assigned to work outside of a facility's secure perimeter originally communicated via a memorandum to all Field Office Directors from the Acting Director of U.S. Immigration and Customs Enforcement (ICE) Enforcement and Removal Operations (ERO) (11/2/2004).

## IV. References

American Correctional Association, *Performance-based Standards for Adult Local Detention Facilities*, 4th Edition: 4-ALDF-5C-06, 5C-08, 5C-11(M), 6B-02.

ICE/ERO *Performance-based National Detention Standards 2011:*

- "1.2 Environmental Health and Safety"; and
- "4.1 Food Service."

## V. Expected Practices

### A. Voluntary Work Program

Detainees shall be provided the opportunity to participate in a voluntary work program. The detainee's classification level shall determine the type of work assignment for which he/she is eligible. Generally, high custody detainees shall not be given work opportunities outside their housing units/living areas. Non-dedicated IGSAs will have discretion on whether or not they will allow detainees to participate in the voluntary work program.

### B. Work Outside the Secure Perimeter

ICE detainees may not work outside the secure

perimeter of non-dedicated IGSA facilities.

*In SPCs, CDFs, and dedicated IGSAs, low custody detainees may work outside the secure perimeter on facility grounds. They must be directly supervised at a ratio of no less than one staff member to four detainees. The detainees shall be within sight and sound of that staff member at all times.*

### C. Personal Housekeeping Required

Work assignments are voluntary; however, all detainees are responsible for personal housekeeping.

*Detainees are required to maintain their immediate living areas in a neat and orderly manner by:*

1. *making their bunk beds daily;*
2. *stacking loose papers;*
3. *keeping the floor free of debris and dividers free of clutter; and*
4. *refraining from hanging/draping clothing, pictures, keepsakes, or other objects from beds, overhead lighting fixtures or other furniture.*

### D. Detainee Selection

The facility administrator shall develop site-specific rules for selecting work detail volunteers. These site-specific rules shall be recorded in a facility procedure that shall include a voluntary work program agreement. The voluntary work program agreement shall document the facility's program and shall be in compliance with this detention standard.

*The primary factors in hiring a detainee as a worker shall be his/her classification level and the specific requirements of the job.*

1. *Staff shall present the detainee's name to the shift supervisor or the requesting department head.*
2. *The shift supervisor or department head shall review the detainee's classification and other relevant documents in the detainee's detention file.*
3. *The shift supervisor or department head shall*

EXHIBIT 1

*assess the detainee's language skills because these skills affect the detainee's ability to perform the specific requirements of the job under supervision. To the extent possible, work opportunities shall be provided to detainees who are able to communicate with supervising staff effectively and in a manner that does not compromise safety and security.*

*4. Inquiries to staff about the detainee's attitude and behavior may be used as a factor in the supervisor's selection.*

*Staff shall explain the rules and regulations as well as privileges relating to the detainee worker's status. The detainee shall be required to sign a voluntary work program agreement before commencing each new assignment. Completed agreements shall be filed in the detainee's detention file.*

## E. Special Details

Detainees may volunteer for temporary work details that occasionally arise. The work, which generally lasts from several hours to several days, may involve labor-intensive work.

## F. Discrimination in Hiring Prohibited

Detainees shall not be denied voluntary work opportunities on the basis of such factors as a detainee's race, religion, national origin, gender, sexual orientation or disability.

## G. Detainees with Disabilities

The facility shall allow, where possible, detainees with disabilities to participate in the voluntary work program in appropriate work assignments. Consistent with the procedures outlined in Standard 4.8 "Disability Identification, Assessment, and Accommodation," the facility shall provide reasonable accommodations and modifications to its policies, practices, and/or procedures to ensure that detainees with disabilities have an equal opportunity to access, participate in, and benefit from the voluntary work programs.

## H. Hours of Work

Detainees who participate in the volunteer work program are required to work according to a schedule.

The normal scheduled workday for a detainee employed full time is a maximum of 8 hours. Detainees shall not be permitted to work in excess of 8 hours daily, 40 hours weekly.

Unexcused absences from work or unsatisfactory work performance may result in removal from the voluntary work program.

## I. Number of Details in One Day

The facility administrator may restrict the number of work details permitted a detainee during one day.

*In SPCs, CDFs, and dedicated IGSAs a detainee may participate in only one work detail per day.*

## J. Establishing Detainee Classification Level

If the facility cannot establish the classification level in which the detainee belongs, the detainee shall be ineligible for the voluntary work program.

## K. Compensation

Detainees shall receive monetary compensation for work completed in accordance with the facility's standard policy.

The compensation is at least $1.00 (USD) per day. The facility shall have an established system that ensures detainees receive the pay owed them before being transferred or released.

## L. Removal of Detainee from Work Detail

A detainee may be removed from a work detail for such causes as:

1. unsatisfactory performance;

2. disruptive behavior, threats to security, etc.;

3. physical inability to perform the essential

EXHIBIT 1

elements of the job due to a medical condition or lack of strength;

4. prevention of injuries to the detainee; and/or

5. a removal sanction imposed by the Institution Disciplinary Panel for an infraction of a facility rule, regulation or policy.

When a detainee is removed from a work detail, the facility administrator shall place written documentation of the circumstances and reasons in the detainee detention file.

Detainees may file a grievance to the local Field Office Director or facility administrator if they believe they were unfairly removed from work, in accordance with standard "6.2 Grievance System."

## M. Detainee Responsibility

The facility administrator shall establish procedures for informing detainee volunteers about on-the-job responsibilities and reporting procedures.

The detainee is expected to be ready to report for work at the required time and may not leave an assignment without permission.

1. The detainee shall perform all assigned tasks diligently and conscientiously.

2. The detainee may not evade attendance and performance standards in assigned activities nor encourage others to do so.

3. The detainee shall exercise care in performing assigned work, using safety equipment and taking other precautions in accordance with the work supervisor's instructions.

4. In the event of a work-related injury, the detainee shall notify the work supervisor, who shall immediately implement injury-response procedures.

## N. Detainee Training and Safety

All detention facilities shall comply with all applicable health and safety regulations and standards.

The facility administrator shall ensure that all department heads, in collaboration with the facility's safety/training officer, develop and institute appropriate training for all detainee workers.

1. The voluntary work program shall operate in compliance with the following codes and regulations:

   a. Occupational Safety and Health Administration (OSHA) regulations;

   b. National Fire Protection Association 101 Life Safety Code; and

   c. International Council Codes (ICC).

   Each facility administrator's designee is responsible for providing access to complete and current versions of the documents listed above.

   The facility administrator shall ensure that the facility operates in compliance with all applicable standards.

2. Upon a detainee's assignment to a job or detail, the supervisor shall provide thorough instructions regarding safe work methods and, if relevant, hazardous materials, including:

   a. safety features and practices demonstrated by the supervisor; and

   b. recognition of hazards in the workplace, including the purpose for protective devices and clothing provided, reporting deficiencies to their supervisors (staff and detainees who do not read nor understand English shall not be authorized to work with hazardous materials).

   A detainee shall not undertake any assignment before signing a voluntary work program agreement that, among other things, confirms that the detainee has received and understood training from the supervisor about the work assignment.

EXHIBIT 1

The voluntary work program agreement, which each detainee is required to sign prior to commencing each new assignment, shall be placed in the detainee's detention file.

3. For a food service assignment, medical staff, in conjunction with the U.S. Public Health Service, shall ensure that detainees are medically screened and certified before undertaking the assignment.

4. The facility shall provide detainees with safety equipment that meets OSHA and other standards associated with the task performed.

5. The facility administrator shall ensure that the facility operates in compliance with all applicable standards.

## O. Detainee Injury and Reporting Procedures

The facility administrator shall implement procedures for immediately and appropriately responding to on-the-job injuries, including immediate notification of ICE/ERO.

If a detainee is injured while performing his/her work assignment:

1. The work supervisor shall immediately notify facility medical staff. In the event the accident occurs in a facility that does not provide 24-hour medical care, the supervisor shall contact the on-call medical officer for instructions.

2. First aid shall be administered as necessary.

3. Medical staff shall determine what treatment is necessary and where that treatment shall take place.

4. The work supervisor shall complete a detainee accident report and submit it to the facility administrator for review and processing and file it in the detainee's detention file and A-file.

EXHIBIT 1

Include physicians, physicians assistants, nurses, nurse practitioners, dentists, mental health professionals and others who by virtue of their education, credentials and experience are permitted by law and within their scope of practice to evaluate and care for patients.

### Reasonable Accommodations

Any change or adjustment in detention facility operations, any modification to detention facility policy, practice, or procedure, or any provision of an aid or service that permits a detainee with a disability to participate in the facility's programs, services, activities, or requirements, or to enjoy the benefits and privileges of detention programs equal to those enjoyed by detainees without disabilities.  Examples of "reasonable accommodations" include, but are not limited to, proper medication and medical treatment; accessible housing, toilet, and shower facilities; devices like bed transfer, accessible beds or shower chairs, hearing aids, or canes; and assistance with toileting and hygiene. In these standards, reasonable accommodations, disability-related modifications, and auxiliary aids and services are collectively referred to as "accommodations" or "reasonable accommodations."

### Reasonable Suspicion

Not intuition, but specific, articulable facts that would cause a reasonable law enforcement officer to suspect that a particular person is concealing a weapon, contraband, or evidence of a crime.

### Religious Practices

Worship, observances, services, meetings, ceremonies, etc., associated with a particular faith; access to religious publications, religious symbolic items, religious counseling and religious study classes; and adherence to dietary rules and restrictions.

### Sally Port

An enclosure situated in the perimeter wall or fence surrounding the facility, containing double gates or doors, of which one cannot open until the other has closed, to prevent a breach in the perimeter security; handles pedestrian and/or vehicular traffic.

### Sanitation

The creation and maintenance of hygienic conditions; in the context of food, involves handling, preparing, and storing items in a clean environment, eliminating sources of contamination.

### Satellite Feeding

Food served and consumed in a location other than where prepared.

### Security Key

A key which if duplicated by unauthorized persons and/or lost, would jeopardize life, safety, property or security, or would facilitate escape.

### Segregation

Confinement in an individual cell isolated from the general population; for administrative, disciplinary, or protective reasons.

### Service Processing Center (SPC)

A detention facility the primary operator and controlling party of which is ICE.

### Shift Supervisor

A generic term for the detention security supervisor in charge of operations during a shift. The position titles may vary according to the type of facility (SPC, CDF, or IGSA) and local facility titles. Ordinarily, a shift supervisor (detention operations supervisor, lieutenant, etc.) is, organizationally, directly under the Chief of Security (chief detention enforcement agent, captain, etc.).

### Soft Contraband

Any unauthorized item that does not constitute hard contraband, i.e., does not pose a serious threat to human safety or facility security; includes that

EXHIBIT 1