

**HEATHER F. CROW**

2915 Kerry Forest Parkway
Suite 101
Tallahassee, FL 32309
MAIN: (850) 296-1953
CELL: (225) 315-6649
FAX: (504) 596-4189
EMAIL: hfc@kullmanlaw.com

February 26, 2024

*Via ECF*

Hon. Christian F. Hummel, U.S.M.J.
James T. Foley U.S. Courthouse
445 Broadway, Room 441
Albany, NY 12207

**RE:** *Yeend et al. v. Akima Global Services, LLC, 1:20-cv-01281-TJM-CFH*

Dear Judge Hummel:

I write on behalf of Defendant, Akima Global Services, LLC ("AGS") to respectfully request a pre-motion conference to address an expert production dispute which the parties have been unable to resolve.

On November 1, 2023, Plaintiffs provided expert disclosures for two expert witnesses, one of whom is Dr. Stuart Grassian, the expert at issue here. Dr. Grassian is a psychiatrist, and the focus of his report addresses the subjective feelings of coercion and purported "psychological scarring" amongst certain ICE detainees while at BFDF who participated in the Voluntary Work Program ("VWP"). In addition to his expert report, Dr. Grassian produced a set of notes prepared by his assistant, Andrea Perini, as a document upon which he relied in forming his opinion. AGS seeks the production of the interview questions and/or interview outline prepared by Dr. Grassian and Ms. Perini as those questions necessarily form part of the materials relied upon in drafting Dr. Grassian's expert report. Further, these questions go directly to the reliability element of Dr. Grassian's report. As such, AGS submits that these questions and/or outlines should have been produced with the expert report in accordance with Rule 26 and AGS's Request for Production No. 8.[1]

*Background*

In her assistance of Dr. Grassian, Ms. Perini conducted witness interviews of eight individuals: the five named plaintiffs, and three other individuals. All are former or current

---

[1] AGS's Request for Production No. 8 to Plaintiffs read, "For each expert identified in your Interrogatory responses, produce any and all reports, expert resumes or curriculum vitae, any and all documents that each expert relied on in forming his or her expert opinion, or will rely upon in giving his or her expert opinion or testimony and any and all documents provided to each expert."

THE KULLMAN FIRM • A Professional Law Corporation | kullmanlaw.com

Baton Rouge, LA • Birmingham, AL • Columbus, MS • Denver, CO • Los Angeles, CA • Memphis, TN
Mobile, AL • Nashville, TN • New Orleans, LA • San Francisco, CA • Tallahassee, FL

detainees at the Buffalo Federal Detention Center ("BFDF"). While conducting those interviews, Ms. Perini took notes as to their responses. These notes do not consist of the questions and answers, or even full answers or statements. Rather, the notes are comprised of phrases and short sentences, and commonly switch between first and third person. Dr. Grassian was not present for any of the interviews, nor were they recorded. Instead, Ms. Perini provided these interview notes to Dr. Grassian for the preparation of his expert report. Dr. Grassian's report expressly states that he relied on these interview notes, and indeed directly quotes Ms. Perini's notes.

Dr. Grassian was deposed on February 5, 2024, and Ms. Perini was deposed on February 6, 2024. Ms. Perini testified that prior to conducting the interviews, she and Dr. Grassian made "an outline, a framework for questions I might ask..." *See* Perini Deposition Excerpt, attached as Exhibit 1, 18:2-23. She confirmed that she and Dr. Grassian prepared it together. *Id.* She further testified in response to a question of whether she used the same questions for each witness that she "started out with the outline," then "had it in [her] mind, what to ask." *Id.* 22:1-12. Despite Dr. Grassian's significant and direct reliance on the witnesses' responses to these questions, however, the questions were not produced pursuant to Rule 26.

### *AGS's Position*

Dr. Grassian and Ms. Perini were both very clear in their testimony that individual psychiatric assessments were not performed. Instead, in concluding that detainees suffered psychiatric scarring and were coerced into participating in the VWP, the report relied on deposition testimony, declarations, and witness interviews. AGS is entitled to the content of these questions in order to determine whether the interview responses – and the methodology used in obtaining and analyzing those responses - are reliable.

It is axiomatic that when conducting a survey, courts regularly assess trustworthiness on factors that include looking to whether questions "were framed in a clear, precise and non-leading manner," among others. *See, e.g., In re Worldcom, Inc.*, 371 B.R. 33, 42 (Bankr. S.D.N.Y. 2007); *Lion Oil Trading & Transp., Inc. v. Statoil Mktg. & Trading (US) Inc.,* No. 08 CIV. 11315 WHP, 2011 WL 855876, at *3 (S.D.N.Y. Feb. 28, 2011). Without access to the question framework described by Ms. Perini, it is impossible to determine how such questions were framed. Plaintiffs take the position that because the interviews were not used for statistical sampling and the interviews were not a survey, these cases do not apply.

However, even to the extent such responses are simply considered anecdotal, Defendant is still entitled to such information. Indeed, in assessing anecdotal evidence consisting of non-testimonial statements, the probative value of such statements depends on what induced the statement in the first place—here, the questions of Ms. Perini. *See Inc. Pub. Corp. v. Manhattan Mag., Inc*., 616 F. Supp. 370, 388 (S.D.N.Y. 1985), *aff'd sub nom. Inc. Pub. Corp. v. Manhattan Mag*., 788 F.2d 3 (2d Cir. 1986) (noting that when uncertainty as to what induced a non-testimonial witness to make a particular statement directly affects its probative value). Statements such as these are not made in a vacuum. It is clear that regardless of how this series of interviews is characterized, the framing of such questions goes directly to the type of responses received and is an integral element of the interviews upon which Dr. Grassian relied.

"In assessing the reliability of a proffered expert's testimony, a district court's inquiry under *Daubert* must focus, not on the substance of the expert's conclusions, but on whether those conclusions were generated by a reliable methodology." *Amorgianos v. Nat'l R.R. Passenger Corp.*, 137 F. Supp. 2d 147, 162 (E.D.N.Y. 2001), *aff'd*, 303 F.3d 256 (2d Cir. 2002). Dr. Grassian's conclusions were based—per his report—in large part on the responses gleaned in Ms. Perini's witness interviews. It cannot seriously be disputed that the makeup of the questions asked in witness interviews is not relevant to how the responses were generated.

### *Discussions Among Counsel*

On February 6, 2024, immediately following Ms. Perini's deposition, counsel for AGS requested that the outline of questions as testified to by Ms. Perini be produced under Plaintiffs' Rule 26 obligation. Plaintiffs disputed the production of the interview questions, claiming they did not fall within the ambit of Rule 26. Over the next two weeks, counsel for the parties exchanged email correspondence regarding their respective positions, and Defendant's counsel provided supporting caselaw to Plaintiffs' counsel regarding production of the interview questions.

On February 21, 2024, when Ms. Perini's deposition transcript became available, counsel for Defendant provided specific excerpts of Ms. Perini's testimony to Plaintiffs' counsel to highlight Ms. Perini's representations concerning the preparation and use of these questions in conducting her interviews, the result of which was used to prepare Dr. Grassian's report. Plaintiffs again took the position that these questions did not fall within Rule 26's requirements and were not responsive to AGS's Request for Production No. 8.

On February 23, 2024, counsel conducted a Rule 37 meeting to confer regarding the dispute, however the parties have reached an impasse. Plaintiffs' counsel continues to refuse to produce the questions/outline used by Ms. Perini and relied upon by Dr. Grassian in the preparation of the expert report. AGS submits that the formulation of the interview questions by Dr. Grassian and Ms. Perini—which clearly drove the interviews themselves and led to the detainees' responses cited in the report—are part and parcel of the interview notes themselves. Therefore, it is necessary to understand what was asked to assess the reliability of Dr. Grassian and Ms. Perini's methodology and the statements provided in the interview notes. Accordingly, Defendant AGS respectfully requests a pre-motion conference in order to resolve the expert production dispute between the parties at a time convenient for the Court.

Sincerely,

**/s/ *Heather F. Crow***

HFC/dml                                          Heather F. Crow