**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

DALILA YEEND, BOUNNAM PHIMASONE,
ELVIN MINAYA RODRIGUEZ, LISA LAPOINTE,
AND SHANTADEWIE RAHMEE,               1:20-CV-01281 (AMN/CFH)

                           Plaintiffs,

      v.

AKIMA GLOBAL SERVICES, LLC a/k/a AGS,

                           Defendant.

---

**APPEARANCES:**                      **OF COUNSEL:**

**KAUFMAN LIEB LEBOWITZ**        **ALISON FRICK, ESQ.**
**& FRICK LLC**                   **ALYSSA ISIDORIDY, ESQ.**
18 E. 48th Street, Suite 802
New York, New York 10017

**WORKER JUSTICE CENTER**      **MAUREEN HUSSAIN, ESQ.**
**OF NEW YORK**                **CHRISTINA BRITO, ESQ.**
9 Main Street                     **OLIVIA POST RICK, ESQ.**
Kingston, New York 12401
*Attorneys for Plaintiffs*

**THE KULLMAN FIRM**          **JESSICA L. MARRERO, ESQ.**
1100 Poydras Street, Suite 1600    **OLIVIA POST RICK, ESQ.**
New Orleans, Louisiana 70163-1600

2915 Kerry Forest Parkway – Suite 101  **HEATHER F. CROW, ESQ. (*pro hac***
Tallahassee, Florida 32309          **vice*)**
*Attorneys for Defendants*

**Hon. Anne M. Nardacci, United States District Judge:**

**MEMORANDUM-DECISION AND ORDER**

## I.      INTRODUCTION

On September 3, 2020, Plaintiffs Dalila Yeend and Bounnam Phimasone commenced a state court action against Akima Global Services, LLC a/k/a AGS ("AGS" or "Defendant") in Rensselaer County, New York, asserting various causes of action pertaining to their detention at the Buffalo Federal Detention Facility ("BFDF"), including (i) a violation of New York State Constitution Article III Section 2; (ii) violations of various New York Labor Laws ("NYLL"); and (iii) unjust enrichment.  *See* Dkt. No. 2.  On October 16, 2020, Defendant removed the state court action to this Court pursuant to 28 U.S.C. §§ 1331, 1332, 1367, 1441, 1442, and 1446.  *See* Dkt. No. 1.[1]  Following a series of motions pertaining to, *inter alia*, the removal, Plaintiffs sought leave to amend the state court complaint, *see* Dkt. No. 69, which Magistrate Judge Hummel granted on September 7, 2022.  *See* Dkt. No. 78.  The amendment added three new Plaintiffs—Elvin Minaya Rodriguez, Lisa LaPointe, and Shantadewie Rahmee (together with Yeend and Phimasone, "Plaintiffs"), deleted the claims pertaining to the New York State Constitution, added class action allegations, and included a claim pursuant to the Trafficking Victims Protection Reauthorization Act ("TVPRA").  *See* Dkt. No. 80 ("Amended Complaint")*.*  Defendant answered the Amended Complaint on September 29, 2022, asserting various affirmative defenses, *see* Dkt. No. 84, and the Parties subsequently commenced discovery.

On February 8, 2024, Defendant filed a Motion to Dismiss pursuant to Fed. R. Civ. P. 19(b) and Motion for Summary Judgment pursuant to Fed. R. Civ. P. 56, primarily arguing that the case should be dismissed based on Plaintiffs' failure to name U.S. Immigration and Customs

---

[1] The Court found that it had jurisdiction over Plaintiffs' claims pursuant to at least the Federal Officer Removal Statute, since Defendant is a government contractor acting under color of federal office and has a colorable federal defense.  *See* Dkt. No. 29 at 10-15, 23 ("[b]ecause the Court has found grounds for jurisdiction in the Federal Officer Removal Statute, the Court finds no need to address the other bases for jurisdiction the Defendant cites.").

Enforcement ("ICE") as a party to the action.  *See* Dkt. No. 117.  Plaintiffs opposed this motion

on March 14, 2024, *see* Dkt. No. 129, and Defendant filed a reply on April 4, 2024.  *See* Dkt. No.

136.  On July 24, 2024, the Court held a status conference with the Parties, after which it ordered

that the portion of Defendants' motion pertaining to Fed. R. Civ. P. 56 would be held in abeyance

without date given that, among other reasons, discovery has not yet been completed.  *See* Dkt. No.

156.

      Thus, presently before the Court is the portion of Defendant's motion seeking to dismiss

the Amended Complaint pursuant to Fed. R. Civ. P. 19(b) for failure to join an indispensable party.

*See* Dkt. No. 117 at 1-21 ("Motion").  While Defendant does not expressly state as much, the Court

reviews the Motion as a motion to dismiss under Fed. R. Civ. P. 12(b)(7) ("failure to join a party

under Rule 19").

      For the reasons set forth below, Defendants' Motion is denied.

## II.   BACKGROUND

### A.  The Parties

      Plaintiffs are former detainees of BFDF who participated in the facility's Voluntary Work

Program ("VWP").  *See* Dkt. No. 80 at ¶ 1.  Defendant is a foreign limited liability company

operating in Genesee County, New York that serves as the self-described "security contractor" at

BFDF pursuant to a contract with ICE.  *Id.* at ¶ 18; *see also* Dkt. No. 117-2 at 7.[2]  At all relevant

times, Defendant facilitated the VWP at BFDF, in addition to maintaining other management

responsibilities.  *See* Dkt. No. 117-2 at 8.

---

[2] Citations to court documents utilize the pagination generated by CM/ECF, the Court's electronic
filing system.

**B.  BFDF and the VWP**

BFDF is an ICE-owned detention center located in Batavia, New York, that serves as one of many facilities used by the federal government to house individuals awaiting the resolution of various immigration matters.  *See* Dkt. No. 80 at ¶¶ 1, 24-25.  The facility contains housing for detainees, indoor and outdoor recreation areas, a kitchen, laundry service, and a law library, among other amenities.  *See* Dkt. No. 117-2 at 8.  ICE does not oversee the day-to-day operations of detention centers like BFDF, but instead contracts with private, for-profit corporations to manage the facilities.  *See* Dkt. No. 80 at ¶ 26.  At all relevant times, Defendant was the private corporation ICE tasked with managing BFDF.  *Id.* at ¶ 18.

The VWP is a congressionally authorized program that permits detained immigrants to be paid for labor they perform while housed at federal detention facilities.  *See* 8 U.S.C. § 1555.  At BFDF, detainees participating in the VWP provide certain labor to the facility, including delivering and serving meals, washing dishes, cleaning common areas and bathrooms, preparing food, maintaining facility grounds, and working in the library.  *See* Dkt. No. 80 at ¶¶ 33-34.  In return, detainees at BFDF receive from Defendant up to one dollar per day in the form of commissary credit, which Defendant is then able to recoup from ICE through the submission of invoices.  *Id.* at ¶ 36; *see also* Dkt. No. 117-2 at 16.  Neither party disputes that the maximum reimbursement rate available to Defendant is one dollar per day per VWP participant.  *Id.*

**C.  The ICE-AGS Contract**

In or around early 2015, Defendant and ICE executed a security contract for Defendant to provide certain management services to BFDF.  *See* Dkt. No. 117-2 at 11; *see also* Dkt. No. 117-

5, Ex. 3-A ("ICE-AGS Contract").[3]  The ICE-AGS Contract is subject to and incorporates by reference various rules and regulations, including the 2011 Performance-Based National Detention Standards ("PBNDS"), Federal Acquisition Regulations ("FARs"), and ICE's Quality Assurance Surveillance Plan ("QASP").  *See* ICE-AGS Contract at 17, 117, 141.  The Contract additionally requires Defendant to comply with federal, state, and local laws while operating BFDF.  *See* Dkt. No. 80 at ¶ 32; *see also* ICE-AGS Contract at 91.  Defendant's management role at BFDF is detailed throughout the ICE-AGS Contract, including, *inter alia*, its responsibility "for the day-to-day operation" of BFDF, oversight of the preparation and management of food services for detainees, and protection of detainees from harm or abuse.  *See* ICE-AGS Contract at 89, 96-100, 141.

The ICE-AGS Contract also contains a provision mandating the implementation of the VWP at BFDF, which details Defendant's responsibilities to (*inter alia*) (1) train detainees on how to perform certain VWP work; (2) provide products and tools needed to perform such work; and (3) maintain the cleanliness of the BFDF housing units.  *Id.* at 89.  That provision also notes that "[s]pecific work details shall be determined by ICE."  *Id.*  Regarding detainee pay in the VWP, the bid documents filed prior to receiving the contract award indicate Defendant is to be "reimbursed . . . for expenses, as incurred.  Detainees earn $1.00 per day."  *See, e.g.*, *id.* at 21.  The ICE-AGS Contract itself, however, is otherwise silent as to detainee pay in the VWP.  *See generally* ICE-AGS Contract.

---

[3] The ICE-AGS Contract remained in effect at all relevant times and remains in effect as of the date of this Order.

### D.  Plaintiffs' Allegations

Plaintiffs contend that they were mistreated by Defendant while housed at BFDF and participating in the VWP.  According to Plaintiff, Defendant's management role at BFDF involved extensive oversight of numerous aspects of the facility including, *inter alia*, detainees' access to phones and recreational activities, detainee meals, the adequacy of the living conditions at BFDF such as the facility's temperature and commissary, as well as, most critically, the facility's VWP. *See* Dkt. No. 80 at ¶¶ 51-57.  Plaintiffs allege that Defendant violated the TVPRA when it failed to adequately operate BFDF by, *inter alia*, serving detainees substandard meals, failing to keep the facility at a livable temperature, and depriving detainees of access to phones and recreational activities, all to coerce detainees into participating in the VWP to afford items from the commissary that could improve their living conditions. *Id.* at ¶¶ 27-29, 57.  Plaintiffs also contend that Defendant failed to pay them proper wages for the labor they willingly provided, or were otherwise coerced to provide, in violation of the TVPRA and various NYLLs. *See generally* Dkt. No. 80.[4] While Defendant can only be *reimbursed* one dollar per day, Plaintiffs argue Defendant is still obligated to meet New York's minimum wage requirements.  In support of that position, Plaintiffs cite ICE policy number BFDF 5.1.3, which states that VWP pay must be "at least one dollar ($1.00) per day," as well as a declaration submitted by ICE attesting that Defendant has the discretion to pay detainees more than one dollar per day. *See* Dkt. No. 129 at 15.

### E.  The Instant Motion

In contrast, Defendant strongly contests the characterizations Plaintiffs make regarding Defendant's oversight role at BFDF.  Defendant asserts it only "provides specific, limited services

---

[4] Plaintiffs also bring a cause of action for Unjust Enrichment alleging Defendant received a windfall from underpaid labor. *See* Dkt. No. 80 ¶¶ 193-198.

to ICE at BFDF," and that it "is not responsible for the physical facility, creating the VWP, or confining detainees.  All of those decisions are undisputedly made by the federal government." Dkt. No. 117-2 at 8, 18.[5]  Regarding detainee pay in the VWP specifically, Defendant cites the language from the bid documents discussed above that "[d]etainees earn $1.00 per day." Defendant also cites BFDF's facility-specific handbook, which states "wages are $1 per day," as well as other ICE-promulgated documents that note "[c]ompensation shall be $1.00 per day."  Dkt. No. 117-2 at 12-14.  It is due to these mandates, Defendant contends, that it was bound to cap detainee pay in the VWP at one dollar per day.

Essentially, Defendant argues that some or all of Plaintiff's allegations pertain to decision-making attributable to ICE, and that Defendant cannot be found to have engaged in wrongdoing since, at all relevant times, it was in full compliance with the ICE-AGS Contract.  The Motion therefore seeks a determination that ICE is an "indispensable" party to this litigation and, since ICE is immune from suit pursuant to qualified immunity principles, the case must be dismissed.

## III.    STANDARD OF REVIEW

Dismissal pursuant to Rule 12(b)(7) is required where a plaintiff fails to join an "indispensable party" as defined under Rule 19.  *See Fed. Ins. Co. v. SafeNet, Inc.*, 758 F. Supp. 2d 251, 257 (S.D.N.Y. 2010) (citing *Viacom Int'l, Inc. v. Kearney*, 212 F.3d 721, 724 (2d Cir. 2000)).  Unlike a motion to dismiss pursuant to Rule 12(b)(6), on a Rule 12(b)(7) motion, the court "may go beyond the pleadings to consider extrinsic evidence such as affidavits" but still "must

---

[5] Defendant concedes it is ultimately responsible for facilitating the VWP at BFDF.  *See* Dkt. No. 117-2 at 8 ("AGS's responsibilities are limited to specific 'detention management services' expressly defined by contract, including administrative support for detainee intake; security services; transport, food preparation, and laundry services for detainees; and facilitating the Voluntary Work Program and commissary system as required by ICE.  AGS employs security guards and non-officer kitchen and laundry workers.").

accept all factual allegations in the complaint as true." *Gondeck v. JPMorgan Chase Bank, N.A.*, No. 5:23-cv-223 (DNH), 2023 WL 8463646, at *2 (N.D.N.Y. Dec. 7, 2023) (citations omitted). The burden rests with the movant to satisfy Rule 19's requirements. *See Eli Attia Architects v. Safra*, No. 94-cv-2928, 1996 WL 480721, at *8 (S.D.N.Y. 1996). "Courts have repeatedly cautioned [] that the Rule 19 inquiry is a fact specific and practical one, which should not be based on formalistic or mechanistic grounds but rather on pragmatic analysis of the effect of a potential party's absence." *Polargrid LLC v. Videsh Sanchar Nigam Ltd.*, No. 04-cv-9578, 2006 WL 2266351, at *9 (S.D.N.Y. 2006) (citations and quotations omitted).

Rule 19 sets forth a two-part test for determining if the absence of a nonparty warrants dismissal. "First, the absent party must be a 'required' party within the meaning of Rule 19(a); and second, where that party cannot feasibly be joined, the absent party must be indispensable to the case" within the meaning of Rule 19(b). *Gondeck*, 2023 WL 8463646 at *3 (citing *Kearney*, 212 F.3d at 725). An absent party is "required" under Rule 19(a) only if:

> (A) in that person's absence, the court cannot accord complete relief among existing parties; or
>
> (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:
>
>> (i) as a practical matter impair or impede the person's ability to protect the interest; or
>>
>> (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

Fed. R. Civ. P. 19(a). "[T]he term complete relief refers only 'to relief as between the persons already parties, and not as between a party and the absent person whose joinder is sought.'" *Arkwright-Boston Mfrs. Mut. Ins. Co. v. City of New York*, 762 F.2d 205, 209 (2d Cir. 1985) (citing 3A J. Moore, Moore's Federal Practice ¶ 19.07-1[1], at 19-96 (2d ed. 1984)). "Rule 19(a) stresses

the desirability of joining those persons in whose absence the court would be obliged to grant only partial relief to the parties before the court." *Eli Attia Architects*, 1996 WL 480721 at *8.

If it is determined that the absent party is "required" and that party cannot feasibly be joined, courts then analyze four factors outlined in Rule 19(b) to "determine whether, in equity and good conscience, the action should proceed among the existing parties or should be dismissed":

> (1) to what extent a judgment rendered in the person's absence might prejudice that person or the existing parties;
>
> (2) the extent to which any prejudice could be lessened or avoided by:
>
>> (A) protective provisions in the judgment;
>>
>> (B) shaping the relief; or
>>
>> (C) other measures;
>
> (3) whether a judgment rendered in the person's absence would be adequate; and
>
> (4) whether the plaintiff would have an adequate remedy if the action were dismissed for non-joinder.

Fed. R. Civ. P. 19(b). The Second Circuit has instructed courts to take a "flexible approach" when analyzing Rule 19(b) and vests district courts with substantial discretion in determining whether an absent party's non-joinder makes just resolution of the action impossible. *See Univ. Reinsurance Co., Ltd. v. St. Paul Fire & Marine Ins. Co.*, 312 F.3d 82, 87 (2d Cir. 2002) ("Rule 19(b) [] does not require that every factor support the district court's determination."); *see also Envirotech Corp. v. Bethlehem Steel Corp.*, 729 F.2d 70, 75 (2d Cir. 1984). "[A]s a general rule, in determining whether a party is indispensable, the preference is for non-dismissal." *Rose v. Simms*, No. 95-cv-1466, 1995 WL 702307, at *3 (S.D.N.Y. Nov. 29, 1995).

## IV.   DISCUSSION

### A.  Whether ICE is a Required Party Under Rule 19(a)

Defendant argues that ICE is a required party[6] because: (i) if ICE remains absent, the Court will be unable to accord complete relief among the existing parties; (ii) ICE has already claimed an interest in this litigation and its absence may impair or impede ICE's ability to protect that interest; and (iii) ICE's absence would expose AGS to the risk of incurring inconsistent obligations.  *See* Dkt. No. 117-2 at 14-21; Dkt. No. 136 at 6-11.  The Court addresses each contention in turn.

#### i.   *Whether Complete Relief Can Be Afforded Without ICE (Rule 19(a)(1)(A))*

Defendant maintains that complete relief cannot be had from AGS alone due to "ICE's design of and control over nearly all of the conditions of which Plaintiffs complain."  Dkt. No. 136 at 7.  Defendant claims that, pursuant to the ICE-AGS Contract, applicable Handbooks, and post orders, ICE determines the specific work details for detainees in the VWP and controls nearly all of the facility's living conditions (*e.g.*, the facility's temperature, detainee clothing, and toiletries), such that a judgment against AGS will not afford Plaintiffs complete relief because AGS lacks the authority to alter the complained-of issues.  *Id.*  Defendant characterizes its role at BFDF as one in which it has very little discretion, and states that it "provides limited, specified services at an ICE-owned and operated [Service Processing Center]."  Dkt. No. 117-2 at 22.  It is only AGS's "strict adherence to" the terms of the ICE-AGS Contract, Defendant contends, that has subjected AGS to

---

[6] While Defendant uses the term "necessary party" in arguing the applicability of Rule 19(a), the Rule itself uses the term "required party," Fed. R. Civ. P. 19(a), and courts in this District often use those terms synonymously.  *See, e.g.*, *Gondeck*, 2023 WL 8463646 at *3 ("required" party under Rule 19(a)); *Walsh v. Ip*, No. 22-cv-00886 (MAD/TWD), 2023 WL 3377629, at *5 (N.D.N.Y. May 11, 2023) ("necessary" party under Rule 19(a)).  Consistent with the language in Rule 19, the Court will use the term "required party" throughout this Order.

this action. *Id.* Contrastingly, Plaintiffs argue their claims are limited to conduct "entirely within [AGS's] own discretion," in part because the ICE-AGS Contract allegedly does not cap the amount which AGS can pay detainees in the VWP, and because AGS controls the day-to-day operations of BFDF—including the training and supervision of detainee workers, the ability to issue disciplinary write-ups to detainees, and the authority to deny detainees access to recreational programming and contact with family members. *See* Dkt. No. 129 at 4, 9-10, 18.

As an initial matter, the Court notes that even upon a cursory review of the ICE-AGS Contract it is apparent that AGS does not have a "limited" role at BFDF. To the contrary, AGS maintains significant management responsibilities at the facility. *See* ICE-AGS Contract at 104 (describing AGS's role as "total management responsibility"). For example, the ICE-AGS Contract incorporates ICE's QASP, which the ICE-AGS Contract expressly states "is based on the premise that [AGS], and not the Government, is responsible for the day-to-day operation of the Facility and all the management and quality control actions required to meet the terms of the" Contract. *See* ICE-AGS Contract at 141. The ICE-AGS Contract also requires AGS to "supervise, observe, and protect detainees from sexual abuse, discrimination, corporal punishment, personal injury, property damage, harassment, or violation of detainee's civil rights." *See* ICE-AGS Contract at 89. In addition, among other things, AGS is responsible for the preparation and management of food services and is tasked with ensuring that all food served at BFDF is protected from contamination and that all kitchen facilities are maintained in accordance with federal, state, and local laws. *See id.* at 96-100. This is notable given that Plaintiffs' allegations include claims that AGS failed to properly provide adequate food services to detainees at BFDF. *See* Dkt. No. 80 at ¶¶ 57, 129, 145, 147, 175.

Second, even if the complete scope of AGS's responsibility remains an open question,

Plaintiffs do not seek to recover under or set aside the ICE-AGS Contract, or the applicable Handbooks or guidance, and they do not allege that ICE engaged in wrongdoing.  Plaintiffs instead challenge AGS's conduct in performing its oversight role at BFDF, seeking declaratory relief and money damages from AGS under the TVPRA and NYLL.  *See* Dkt. No. 80 at 23.  The allegations in the Amended Complaint pertain to, *inter alia*, AGS's apparent coercive threats to detainees, AGS's deprivation of phone access and recreation in response to Plaintiffs' refusal to perform labor, as well as the windfall AGS allegedly received from detainee labor in compensating detainees at a rate below minimum wage.  *Id.* at 23-28.  In other words, it is AGS's alleged misconduct while executing its responsibilities under the ICE-AGS Contract that goes to the heart of Plaintiffs' claims, as opposed to the validity of the mandates in the ICE-AGS Contract, applicable Handbooks, or guidance.  *See, e.g.*, *Friends of Animals, Inc. v. City of Bridgeport Police Dept.*, No. 3:06-CV-1708, 2007 WL 201245, at *3 (D. Conn. Jan. 23, 2007) ("[T]he underlying litigation does not involve the lease agreement between Centerplate and the City; instead, it involves only the actions of the defendants in their relationship vis-à-vis the plaintiffs."); *see also Volkswagen Grp. of Am., Inc. v. GPB Capital Holdings, LLC*, No. 20-cv-1043, 2021 WL 431443, at *7 (S.D.N.Y. Feb. 8, 2021) ("[T]he Second Circuit has held that a third party is necessary where the litigation at issue directly challenges the validity of a contract between the defendant and a third party.") (citing *Crouse-Hinds Co. v. InterNorth, Inc.*, 634 F.2d 690, 700-01 (2d Cir. 1980)).[7]

Finally, the Parties heavily dispute whether AGS had the discretion to pay detainees more

---

[7] Even if this action sounded in contract, which it does not, it is likely that ICE would not be a required party because Plaintiff's claims do not require the Court to define ICE's rights or obligations under the ICE-AGS Contract.  *C.f. Jonesfilm v. Lion Gate Int'l.*, 299 F.3d 134, 141 (2d Cir. 2002) ("If the resolution of a plaintiff's claim would require the definition of a non-party's rights under a contract, it is ***likely*** that the non-party is necessary under Rule 19(a)." (emphasis added)).

than one dollar per day for their work in the VWP.  Defendant argues that "VWP pay at BFDF is set by ICE in the [ICE-AGS] Contract, the BFDF Handbook, and the VWP Agreement" and "***every ICE-issued document*** applicable to the VWP at BFDF states that detainees are paid ***exactly*** \$1 per day."  Dkt. No. 136 at 7; Dkt. No. 117-2 at 19 (emphasis in original).  On the other hand, Plaintiffs assert that AGS retains discretion to pay detainees over one dollar per day because "[r]ather than specifying detainee wages, the Contract instead prescribes the rate at which AGS will be reimbursed by ICE for detainee pay."  Dkt. No. 129 at 15.  Putting aside the fact that ICE's rights and interests are unlikely to be impacted regardless of which party's understanding is adopted, resolution of this particular issue requires a determination as to which conflicting interpretation of the ICE-AGS Contract is correct.  The Court is reluctant to make this determination at this phase of the litigation, especially considering that discovery remains ongoing (albeit in its latter stages) and thus the Contract's proper interpretation remains an open question.  *See Novartis Pharma AG v. Incyte Corp.*, No. 20-cv-400, 2024 WL 3610438, at *45 (S.D.N.Y. July 29, 2024) (citing cases).[8]

For these reasons, the Court concludes that complete relief can be afforded to Plaintiffs without joining ICE.

  ii. <u>Whether ICE Claims an Interest in the Action (Rule 19(a)(1)(B)(i))</u>

Defendant next argues that ICE is a required party because it claimed an interest in the

---

[8] The Court also notes that its eventual interpretation of the disputed provisions in the ICE-AGS Contract does not require ICE to participate in this litigation.  ICE has already proffered its viewpoint regarding AGS's responsibilities under the ICE-AGS Contract through the declaration of ICE Assistant Field Office Director George Harvey (Dkt. No. 117-4 (the "Harvey Declaration")) and, in any event, the need for discovery from a non-party does not automatically mean that the non-party's joinder is required under Rule 19.  *See Atlantic Mut. Ins. Co. v. Polar Air Cargo, Ltd.*, No. 99-CV-3176, 2000 WL 45706, at *2 (S.D.N.Y. Jan. 20, 2000) ("[F]acilitating discovery is not a basis for involuntary joinder.  Courts have explicitly rejected the argument that knowledge of relevant information renders an individual an indispensable party.") (internal quotation marks and citation omitted) (citing, *inter alia*, *Costello Publishing Co. v. Rotelle*, 670 F.2d 1035, 1044 (D.C. Cir. 1981)).

action when it submitted the Harvey Declaration in response to Plaintiff's *Touhy* requests.[9]
Defendant further claims that the Harvey Declaration contradicts the plain language of the BFDF
Handbook, VWP Agreement, as well as ICE and AGS's understanding of the ICE-AGS Contract
and their longstanding course of conduct. *See* Dkt. No. 136 at 8. Defendant also asserts that ICE
furthered its interest in the action when it partially participated in discovery in this matter by
assisting AGS in document redaction, managed physical access to BFDF (*e.g.*, Plaintiffs' site visit
to BFDF and AGS's access to warehouse documents), and produced certain maps and
photographs. *Id.* at 8 n.26.

Critically, however, "[a] party named in the litigation cannot assert the interest on the
absent party's behalf." *See Cont'l Cas. Co. v. Am. Home Assur. Co.*, No. 05-civ-7874, 2008 WL
1752231, at *4 (S.D.N.Y. Apr. 14, 2008). Courts in the Second Circuit have long maintained that
it is the absent party that must claim an interest. *See Aguinaga v. UBS AG*, No. 09-cv-03261, 2010
WL 5093433, at *10 (S.D.N.Y. Dec. 14, 2010) (citing cases). Indeed, "[i]f a person knows of the
action but chooses not to participate, the court should be reluctant to find that person to be a
required party under Rule 19 based on the possible harm to its interests." Gensler, *Federal Rules
of Civil Procedure, Rules & Commentary Rule 19*, § 4, WESTLAW (Feb. 2024 update); *see also
Rotec Indus., Inc. v. Aecon Grp., Inc.*, 436 F.Supp.2d 931, 937 (N.D. Ill. 2006) ("When the outsider
is aware of the action and does not claim such an interest, courts typically will not second-guess
the decision.").

It is undisputed that ICE has been aware of this litigation since at least 2022, as evidenced
by subpoenas issued to ICE following discovery disputes between the Parties. *See* Dkt. No. 129

---

[9] In this context, "[r]equests for records or testimony from federal agencies or employees" are
referred to as "*Touhy* Requests." *Solomon v. Nassau Cnty.*, 274 F.R.D. 455, 457 (E.D.N.Y. 2011)
(citing *United States ex rel. Touhy v. Ragen*, 340 U.S. 462 (1951)).

at 19.  In addition, on October 4, 2023, ICE responded to *Touhy* requests sent by Plaintiffs by providing the Harvey Declaration.  *See id.* at 8 n.6; *see also* Dkt. No. 129-2 at ¶ 18 (citing Dkt. No. 117-4).  Even with that awareness, however, ICE has not made any affirmative motion to join the litigation and "thus, this subsection of Rule 19(a) is inapplicable."  *Fair Hous. in Huntington Comm. v. Town of Huntington*, No. 02-CV-2787, 2010 WL 2730757, at *11 (E.D.N.Y. July 8, 2010) (citing, *inter alia*, *Peregrine Myanmar Ltd. v. Segal*, 89 F.3d 41, 48 (2d Cir. 1996)); *see also Mar-Can Transp. Co., Inc. v. Local 854 Pension Fund*, No. 20-cv-8743, 2022 WL 35588, at *4 (S.D.N.Y. Jan 4, 2022) (decision to "not come forward and claim[] an interest in [the] litigation . . . by itself[] defeats defendant's motion under Rule 19(a)(1)(B)").[10]  And while Defendant contends that ICE's alleged interest in this litigation was additionally implicated when the United States Department of Justice filed an amicus brief in a separate litigation that addressed  similar issues, *see* Dkt. No. 136 at 7 n.20 & 10, courts in this Circuit have expressly held that a non-party's filing of an amicus brief in another action cannot be used as a basis to find that the non-party has claimed a legal interest in the current action under Rule 19(a)(1)(B)(i).  *See Calingo v. Meridian Res. Co., LLC*, No. 11-cv-628, 2012 WL 5995118, at *2 (S.D.N.Y. Oct. 26, 2012) ("OPM's filing of an amicus brief in *McVeigh* did not mean OPM had 'claimed' an interest in this litigation.").[11]

For these reasons, the Court finds that ICE has not claimed an interest in the current action.

---

[10] Defendants do not cite, and the Court is unaware of, any case law holding that partial participation in discovery (especially in response to a subpoena or *Touhy* request) constitutes claiming a "legal interest" in a litigation under Rule 19.  Indeed, as discussed *infra*, certain courts have held that the opposite is true.

[11] The fact that Defendant is dissatisfied with the position ICE takes in the Harvey Declaration, or that the Harvey Declaration may assert a position contrary to position(s) taken by ICE in prior litigations, does not support a finding that ICE has claimed an interest in this action.

     *iii.*   *Whether ICE's Absence Subjects Defendant to a Substantial Risk of Inconsistent Obligations (Rule 19(a)(1)(B)(ii))*

Given that ICE has not claimed a legal interest in this action, it is unnecessary to consider whether Defendant may be subjected to a substantial risk of inconsistent obligations in the event of an adverse verdict.  Nevertheless, for the sake of thoroughness, the Court will briefly address Defendant's secondary assertion that a judgment in Plaintiffs' favor would "put AGS in a position in which it must either violate the instructions of a federal agency or violate an order of a federal court."  Dkt. No. 136 at 10-11.  The Court disagrees that there is a substantial risk of such an outcome.

First, as discussed above, Plaintiffs' claims are not contract claims.  They focus on Defendant's alleged actions toward Plaintiffs while performing an oversight role as ICE's contractor.  An award of money damages to Plaintiffs would not necessarily invalidate the ICE-AGS Contract.  Indeed, without ruling on the issue, it appears possible that any such judgment could be reconciled with the existing terms of the ICE-AGS Contract, especially considering the Contract's mandate that Defendant comply with federal, state, and local laws (which would include New York's minimum wage laws).

Second, Defendant's position that this action could result in a breach of the ICE-AGS Contract is insufficient for this Court to find that it would be subject to inconsistent obligations under Rule 19.  "'[T]he speculative possibility of future litigation' . . . does not furnish a basis for compulsory joinder."  *Manning v. Energy Conversion Devices, Inc.*, 13 F.3d 606, 609 (2d Cir. 1994) (quoting *Health-Chem Corp. v. Baker*, 915 F.2d 805, 810 (2d Cir. 1990)).  The Court is skeptical that an adverse judgment would result in a breach of the ICE-AGS Contract, but even assuming such breach arises, an adverse judgment here would not foreclose AGS or ICE from litigating a breach of contract issue in a future litigation.

It is for these reasons that Defendant's reliance on *E.E.O.C. v. Peabody Western Coal Co.*, 610 F.3d 1070 (9th Cir. 2010), is misplaced.  There, the E.E.O.C. sued a coal mine lessor, asserting its leases violated Title VII by containing employment preferences that favored members of the Navajo Nation.  *See Peabody*, 610 F.3d at 1075.  Those unambiguous preference provisions were mandated by the United States Secretary of the Interior in the lease negotiations such that a favorable ruling for the plaintiff would have either required the Secretary to modify the leases by excising the preference provisions or put the defendant lessor at risk of breaching the lease terms by complying with the ruling and violating the preference provisions.  *Id.* at 1081.  Thus, the Ninth Circuit found that the Secretary was a required party under Rule 19(a), holding that "[a] public entity has an interest in a lawsuit that could result in the invalidation or modification of one of its ordinances, rules, regulations, or practices."  *Id.* at 1082.  As the Court has already noted *supra*, the instant case is dissimilar.  Unlike in *Peabody*, Plaintiffs in this case are not disputing the validity of a specific provision of the ICE-AGS Contract, and it appears that a judgment for Plaintiffs would not necessarily invalidate any provision of the ICE-AGS Contract.  Said otherwise, Plaintiffs' claims here do not directly implicate a contractual provision in the same way that the plaintiff's claims did in *Peabody*.[12]

As such, the Court finds that ICE's absence from the litigation would not result in a substantial risk of AGS incurring double, multiple, or otherwise inconsistent obligations.

---

[12] The Court also notes that *Peabody* was an appeal from a summary judgment order and, in any event, the parties there did not dispute the meaning of the preference provisions at issue.  Thus, the *Peabody* court had the benefit of a complete discovery record and, moreover, was not required to interpret the unambiguous preference provisions contained in the coal mining leases.  Here, by contrast, there is a dispute as to the interpretation of certain provisions of the ICE-AGS Contract. As noted above, the Court declines to resolve that dispute at this stage of the litigation, especially considering that ICE has not claimed an interest in the litigation, a dispositive factor in this analysis.

**B. Whether it is Feasible to Join ICE & Whether ICE is an Indispensable Party Under Rule 19(b)**

As ICE is not a required party, it is not necessary for the Court to consider whether joinder of ICE would be feasible or if ICE is an indispensable party. Nevertheless, and again for the sake of thoroughness, the Court will consider these remaining issues and, in doing so, assume that ICE is a required party.

Plaintiffs do not appear to dispute that, had ICE been considered a required party under Rule 19(a), joinder would not be feasible based on applicable sovereign immunity principles. *See F.D.I.C. v. Meyer*, 510 U.S. 471, 475 (1994) (holding ICE is protected by sovereign immunity); *see also Fluent v. Salamanca Indian Lease Auth.*, 928 F.2d 542, 547 (2d Cir. 1991) (joinder of tribe under Rule 19(a), "while desirable," was "not feasible because of the tribe's sovereign immunity"); *see also Citizens Against Casino Gambling in Erie Cnty. v. Kempthorne*, 471 F. Supp. 2d 295, 313 (W.D.N.Y. 2007) (sovereign immunity prevents compulsory joinder over parties deemed to be required under Rule 19). The Court agrees that joinder of ICE would be infeasible.

Next, assuming that ICE is a required party and ICE's joinder would not be feasible, the four factors contemplated in Rule 19(b) favor a finding that ICE is not an indispensable party. First, regarding prejudice to the absent party, the Court is unable to discern what, if any, prejudice ICE could suffer from its lack of participation in this case. Plaintiffs do not seek any relief from ICE and, as discussed above, any judgment against Defendant is unlikely to implicate ICE's rights or interests under the ICE-AGS Contract or otherwise. Indeed, ICE has been cognizant of this litigation since at least December 2022 and has not indicated that it will suffer any prejudice from its lack of participation. Defendant similarly provides no basis for a finding that AGS will suffer any prejudice from ICE's absence, as Defendant's liability in this action (if any) would not change

if ICE was a defendant since Plaintiffs seek damages from Defendant alone.[13]  Second, regarding whether any prejudice could be lessened by the imposition of mitigating measures, the Court finds no prejudice attributable to ICE's absence but, regardless, the Court notes that Defendant takes no position as to what (if any) mitigating measures could be imposed to lessen any perceived prejudice.  Third, regarding whether a judgment favorable to Plaintiffs would be adequate in ICE's absence, the Court reiterates the points *supra* that complete relief can be afforded amongst the existing Parties.  Finally, and most notably, regarding whether Plaintiffs would have an adequate remedy if this case were dismissed for non-joinder, such a ruling would necessarily leave Plaintiffs with no recourse against Defendant for its alleged misconduct—an undesirable outcome.

Since the four factors outlined in Rule 19(b) are either neutral or weigh in Plaintiffs' favor, the Court concludes ICE is not an indispensable party within the meaning of Rule 19.  Thus, even if ICE were considered a required party under Rule 19(a), dismissal of this action would not be warranted based on ICE's absence.

### C.  Similarly Situated Cases in Other Jurisdictions

As a final matter, the Court acknowledges that this Order is consistent with other district court orders addressing nearly identical questions.  Plaintiff relies on three cases in particular— *Menocal v. GEO Group, Inc.*, 635 F. Supp. 3d 1151 (D. Colo. 2022), *Chen v. GEO Group, Inc.*, No. 3:17-cv-05769, 2018 WL 1963669 (W.D. Wash. Apr. 26, 2018), and *Novoa v. GEO Group, Inc.*, No. 17-cv-2514, 2018 WL 4057814 (C.D. Cal. Aug. 22, 2018) (collectively, the "*GEO Group* Cases")—which all analyzed the question of whether ICE was an indispensable party in a lawsuit

---

[13] And even if AGS's liability could have been shared or lessened had Plaintiff named ICE as a Defendant or if ICE claimed an interest in this litigation, that alone is insufficient to consider ICE an indispensable party under Rule 19(b), as this decision does not foreclose AGS's ability to collect from ICE in a subsequent action.  *See MasterCard Int'l Inc. v. Visa Int'l Serv. Ass'n, Inc.*, 471 F.3d 377, 385 (2d Cir. 2006).

brought by ICE detainees against a government contractor managing a detention facility.  As here, the courts in each of the *GEO Group* Cases denied the defendant's motion to dismiss for failure to join ICE as an indispensable party.

Defendants primarily contend that the *GEO Group* Cases are inapposite because, unlike this case, they involved privately-owned detention facilities.  *See* Dkt. No. 136 at 4-6, 10-11.  As an initial matter, the Court recognizes that, like AGS, GEO Group, Inc. ("GEO") was a party to contracts with ICE that outlined GEO's responsibilities at particular facilities regarding detainee oversight, including with respect to the VWP (the "GEO-ICE contracts").  And while the Court acknowledges certain aspects of a facility like BFDF may differ from those privately-owned facilities at issue in the *GEO Group* Cases, Defendant fails to explain which of those differences (if any) undermines the application of the *GEO Group* Cases' reasoning to this case.  Defendant contends that "[t]he ICE-AGS Contract is markedly different from a contract for a privately owned and operated facility," but in fact features of both the ICE-AGS Contract and the GEO-ICE contracts are notably similar.  For example, the same policies and standards that are incorporated in the ICE-AGS Contract appear to have been incorporated in the GEO-ICE contracts, including the FARs and PBNDS.  *See Menocal*, 635 F. Supp. 3d at 1159.[14]  This is noteworthy considering Defendant's position (self-described as "axiomatic") that the FARs bar AGS from exceeding the scope of the ICE-AGS Contract—a potentially dispositive question in this case.  *See* Dkt. No. 117-2 at 15.  Indeed, while Defendant contends that the level of discretion afforded to government contractors at privately-owned facilities is different from those at federally owned facilities, *see* Dkt. No. 136 at 13, this argument is undercut by a review of the ICE-AGS Contract, which reveals

---

[14] The Court also notes that, like here, ICE had participated in discovery efforts in *Menocal*, and the district court expressly found that such participation was not enough to support the defendant's argument that ICE had claimed an interest in the litigation.  *See* 635 F. Supp. 3d at 1181-82.

that significant discretion and management responsibilities are afforded to AGS with respect to detainee treatment.

Additionally, in the *GEO Group* Cases, the defendants argued that the GEO-ICE contracts fixed the price GEO could pay VWP detainees at $1.00 per day and that rate could not be adjusted without ICE's consent; otherwise, paying detainees above $1.00 per day would violate the GEO-ICE contracts. *See Chen*, 2018 WL 1963669 at *1-2 ("In Defendant's view, ICE's reimbursement rate is also [a] limit on detainee rate of pay; in Plaintiff's view, ICE's reimbursement rate limits the amount reimbursed to GEO but does not limit the detainee rate of pay."); *see also Menocal*, 635 F. Supp. 3d at 1176 ("GEO [claims] its hand was forced by the terms of its contract with ICE."); *Novoa*, 2018 WL 4057814 at *4 (citing *Washington v. GEO Grp., Inc.*, No. 17-cv-05806, 2018 WL 1963792, at *3 (W.D. Wa. Apr. 26, 2018)).  Here, the Parties take the same positions regarding the ICE-AGS Contract's VWP pay provision, and the resolution of that issue does not appear to relate at all to which entity owns the detention facility.

Thus, the Court finds the reasoning in the *GEO Group* Cases to be sound and applicable to this case, as well.

## V.      CONCLUSION

Accordingly, the Court hereby

**ORDERS** that Defendant's Motion to Dismiss pursuant to Fed. R. Civ. P. 19(b), Dkt. No. 117 at 1-21, is **DENIED;** and the Court further

**ORDERS** that the Clerk serve a copy of this Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: September 24, 2024
       Albany, New York

Anne M. Nardacci
U.S. District Judge

21