**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

DALILA YEEND, BOUNNAM PHIMASONE, ELVIN MINAYA RODRIGUEZ, LISA LAPOINTE, and SHANTADEWIE RAHMEE, individually and on behalf of all others similarly situated,

                Plaintiffs,

   v.

AKIMA GLOBAL SERVICES, LLC,

                Defendant.

1:20-cv-01281 (AMN/PJE)

---

| APPEARANCES: | OF COUNSEL: |
|---|---|
| **KAUFMAN LIEB LEBOWITZ & FRICK LLP**<br>18 East 48th Street – Suite 802<br>New York, New York 10017<br>*Attorneys for Plaintiffs* | **ALISON E. FRICK, ESQ.**<br>**ALANNA G. KAUFMAN, ESQ.**<br>**ALYSSA D. ISIDORIDY, ESQ.** |
| **WORKER JUSTICE CENTER OF NEW YORK**<br>245 Saw Mill River Road – Suite 106<br>Hawthorne, New York 10532 | **CRISTINA BRITO, ESQ.** |
| 9 Main Street<br>Kingston, New York 12401 | **MAUREEN HUSSAIN, ESQ.** |
| 1187 Culver Road<br>Rochester, New York 14609<br>*Attorneys for Plaintiffs* | **OLIVIA POST RICH, ESQ.** |
| **THE KULLMAN FIRM**<br>2915 Kerry Forest Parkway – Suite 101<br>Tallahassee, Florida 32309 | **HEATHER F. CROW, ESQ.** |
| 1100 Poydras Street – Suite 1600<br>New Orleans, Louisiana 70163<br>*Attorneys for Defendant* | **JESSICA L. MARRERO, ESQ.**<br>**AMIEL J. PROVOSTY, ESQ.** |

**Hon. Anne M. Nardacci, United States District Judge:**

## MEMORANDUM-DECISION AND ORDER

**I.  INTRODUCTION**

Plaintiffs Dalila Yeend, Bounnam Phimasone, Elvin Minaya Rodriguez, Lisa LaPointe, and Shantadewie Rhamee, on behalf of themselves and all others similarly situated ("Plaintiffs"), bring this action against Akima Global Services, LLC a/k/a AGS ("AGS" or "Defendant"), asserting claims pertaining to their civil immigration detention at the Buffalo Federal Detention Facility ("BFDF").  Dkt. No. 80.  On March 31, 2025, the Court denied Defendant's motion for summary judgment.  Dkt. No. 169 ("Order").  Defendant now seeks to certify for interlocutory appeal under 28 U.S.C. § 1292(b) ("Section 1292(b)") a portion of the Order addressing a novel question of state law and to stay this action pending resolution of the interlocutory appeal.  Dkt. No. 170 ("Motion").  Plaintiffs oppose both requests.  Dkt. No. 174.  For the reasons set forth below, the Motion is granted.[1]

**II.  BACKGROUND**

The Court detailed the factual background and procedural history of this action in the Order, and incorporates that detail by reference.  *See also* Dkt. Nos. 161, 168.  The Court nevertheless provides the following brief summary for convenience.

**A.  Factual Background**

Located in Batavia, New York, the BFDF is a processing center for civil immigration detainees.  Dkt. No. 169 at 2-3.[2]  The facility is owned by non-party United States Immigration

---

[1] Defendant's request for leave to file a reply, Dkt. No. 175, is accordingly denied as moot, and the Court has not considered the proposed reply therein in reaching its decision.

[2] Citations to docket entries utilize the pagination generated by CM/ECF, the Court's electronic filing system, and not the documents' internal pagination.

and Customs Enforcement ("ICE").  *Id.* at 3.  ICE previously entered into a contract with Defendant for Defendant to provide certain detention management services at the BFDF (the "Contract").  *Id.*  Plaintiffs are individuals who were detained at the BFDF for varying periods of time in connection with civil immigration proceedings.  *Id.* at 3-4.

Authorized by Congress, the Voluntary Work Program ("VWP") enables immigration detainees to be paid for labor they perform while detained.  *Id.* at 4.  ICE reimburses Defendant at a rate of one dollar per day for each detainee who participates in the VWP.  *Id.*  Detainees are paid directly by Defendant.  *Id.*  According to ICE, "[t]here is no contract, rule, or law that prevents AGS from paying detainee workers more than $1.00 per day."  *Id.*  The Performance-Based National Detention Standards promulgated by ICE ("PBNDS") provide, *inter alia*, that "[d]etainees shall receive monetary compensation for work completed in accordance with the facility's standard policy.  The compensation is at least $1.00 (USD) per day."  *Id.* at 5-6. Numerous other documents relevant to the BFDF address the VWP; some also state that compensation is "at least" one dollar day.  *Id.* at 6-9.

Among the requirements in the Contract is that Defendant "perform all services in accordance with" the PBNDS; that "[t]he Contractor shall not use or permit the use of the Government premises for any unlawful purposes, or any unlawful act;" and that "[a]ll services must comply with . . . all applicable state and local laws and standards."  *Id.* at 10.

### B. Procedural Background

Plaintiffs bring four separate claims pursuant to the NYLL, alleging that Defendant's administration of the VWP violated various provisions of the NYLL, including the minimum wage requirement.  *Id.* at 11-12.  Plaintiffs also bring claims pursuant to the Trafficking Victims Protection Reauthorization Act ("TVPRA") and for unjust enrichment under New York law.  *Id.*

3

On March 31, 2025, the Court granted Plaintiffs' request to certify three classes of detainees: (i) a "Labor Law Class" in connection with the NYLL claims; (ii) a "Forced Labor Class" in connection with the TVPRA claims; and (iii) an "Unjust Enrichment Class" in connection with the unjust enrichment claims. Dkt. No. 168. The "Labor Law Class," consists of "all detainees who participated in the VWP from September 8, 2016 through the date of final judgment in this action," *id.* at 5, and includes thousands of class members, Dkt. No. 174 at 8 n.1, 10 (stating that all three classes "are comprised of thousands of people who participated in the work program while detained at [the BFDF] in the last decade, many of whom now live in different countries across the globe").

Also on March 31, 2025, the Court denied Defendant's motion for summary judgment, which sought to dismiss Plaintiffs' claims on a variety of grounds. Dkt. No. 169. With respect to Plaintiffs' NYLL claims, Defendant's core argument in favor of summary judgment was that the NYLL does not apply to Plaintiffs, as federal immigration detainees. *Id.* at 27. The Court declined to grant Defendant summary judgment on this basis. First, the Court observed that whether the NYLL applies to federal immigration detainees is a novel question of state law. *Id.* The Court also noted the federalism concerns implicated by a federal court determining a novel question of state law, and further noted that "[c]ertain federal courts that have determined the applicability of state labor laws to detainees have had the benefit of certified answers from state high courts," but that no such guidance from the New York State Court of Appeals is available with respect to the NYLL. *Id.* at 27-29 (collecting cases); *see also Chufen Chen v. Dunkin' Brands, Inc.*, 954 F.3d 492, 497 (2d Cir. 2020). The Court thus went on to interpret the relevant provisions of the NYLL and concluded that Plaintiffs are not excluded from the statute. *Id.* at 29-32 (reviewing statutory language, including the exclusions set forth in the statute, and applying the interpretive aid of

4

*expressio unius est exclusio alterius*, and citing, *inter alia*, *Stefanik v. Hochul*, 43 N.Y.3d 49, 69 (2024)). The Court further determined that the legislative history identified by the parties supported the conclusion that the state legislature did not intend to exclude individuals such as Plaintiffs from the NYLL's ambit. *Id.* at 32-33 (citing, *inter alia*, *Article 13 LLC v. Ponce De Leon Fed. Bank*, 132 F.4th 586, 593 (2d Cir. 2025)).

The Court also rejected Defendant's argument that the NYLL must be interpreted in lockstep with the federal wage and hour statute, the Fair Labor Standards Act ("FLSA"). *Id.* at 33-34 (citing, *inter alia*, *Irizarry v. Catsimatidis*, 722 F.3d 99, 117 (2d Cir. 2013) ("Plaintiffs assert that the tests for 'employer' status are the same under the FLSA and the NYLL, but this question has not been answered by the New York Court of Appeals.")). The Court further determined that existing FLSA jurisprudence did not entitle Defendant to judgment as a matter of law on NYLL claims brought by federal immigration detainees. *Id.* at 34-36 (discussing, *inter alia*, *Danneskjold v. Hausrath*, 82 F.3d 37 (2d Cir. 1996)). Finally, the Court rejected Defendant's argument that Plaintiffs' NYLL claims should be evaluated using the non-exhaustive "'economic realities' test frequently utilized to assess employment status under the FLSA" and instead analyzed these claims using the non-exhaustive "'control test' frequently used to assess employment status under the NYLL[.]" *Id.* at 36-38 (citing, *inter alia*, *Franze v. Bimbo Bakeries USA, Inc.*, 826 F. App'x 74, 79 (2d Cir. 2020)). And under this test, the Court concluded that Defendant had not established its entitlement to judgment as a matter of law. *Id.* at 38.

Defendant now seeks to certify for interlocutory appeal under Section 1292(b) the portion of the Order that denied Defendant's motion for summary judgment with respect to Plaintiffs' NYLL claims. The Motion is Defendant's third request for interlocutory appellate review following the Court's class certification and summary judgment decisions. In addition to the

instant request, Defendant has initiated an appeal of the portion of the Order that denied Defendant's motion for summary judgment based on derivative sovereign immunity, *see Yeend v. Akima Global Servs., LLC*, Case No. 25-1061 (2d Cir.), and also seeks review of the Court's certification of the Forced Labor Class pursuant to Rule 23(f) of the Federal Rules of Civil Procedure, *see Akima Global Servs., LLC v. Yeend*, Case No. 25-901 (2d Cir.).

### III. STANDARD OF REVIEW

"The final judgment rule, embodied in 28 U.S.C. § 1291, requires 'that a party must ordinarily raise all claims of error in a single appeal following final judgment on the merits.'" *Marquez v. Silver*, 96 F.4th 579, 582 (2d Cir. 2024) (quoting *In re Agent Orange Prod. Liab. Litig.*, 745 F.2d 161, 163 (2d Cir. 1984)). Relatedly, in general, "interlocutory orders merge with the final judgment in a case, and the interlocutory orders (to the extent that they affect the final judgment) may be reviewed on appeal from the final order." *In re Energetic Tank, Inc.*, 110 F.4th 131, 150 (2d Cir. 2024) (quoting *Selletti v. Carey*, 173 F.3d 104, 109 n.5 (2d Cir. 1999)). The final judgment rule "preserves the proper balance between trial and appellate courts, minimizes the harassment and delay that would result from repeated interlocutory appeals, and promotes the efficient administration of justice." *Amara v. Cigna Corp.*, 53 F.4th 241, 248 (2d Cir. 2022) (quoting *Microsoft Corp. v. Baker*, 582 U.S. 23, 36-37 (2017)).

One exception to the final judgment rule is set forth in Section 1292(b). Section 1292(b) permits a district court to certify an interlocutory order in a civil action for immediate appeal when three requirements are met: "[1] such order involves a controlling question of law [2] as to which there is a substantial ground for difference of opinion and [3] that an immediate appeal from the order may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b). "[T]he proponents of an interlocutory appeal have the burden of showing that all three of the

6

substantive criteria are met." *Ward v. Stewart*, 284 F. Supp. 3d 223, 228 (N.D.N.Y. 2018) (quoting *In re Facebook, Inc., IPO Sec. & Derivative Litig.*, 986 F. Supp. 2d 524, 529 (S.D.N.Y. 2014)).

IV. **DISCUSSION**

    A. **Controlling Question of Law**

As to the first factor set forth in Section 1292(b), the Court concludes that the Order involves a controlling question of law, namely "the applicability of the NYLL to federal immigration detainees."[3] Dkt. No. 169 at 27.

To find that a question of law is controlling, it is not necessary that "reversal of the district court's order would terminate the action." *Hermès Int'l v. Rothschild*, 590 F. Supp. 3d 647, 650-51 (S.D.N.Y. 2022) (quoting *Youngers v. Virtus Inv. Partners*, 228 F. Supp. 3d 295, 298 (S.D.N.Y. 2017)). "[A] question of law may [nonetheless] be deemed 'controlling' if its resolution is quite likely to affect the further course of the litigation, even if not certain to do so." *Davella v. Ellis Hosp., Inc.*, No. 20-cv-726, 2024 WL 98352, at *6 (N.D.N.Y. Jan. 9, 2024) (first quoting *In re A2P SMS Antitrust Litig.*, No. 12-cv-2656, 2015 WL 876456, at *3 (S.D.N.Y. Mar. 2, 2015); additional citations omitted); *see also Forte v. Direct Energy Servs., LLC*, No. 17-cv-264, 2019 WL 3252750, at *3 (N.D.N.Y. Mar. 29, 2019) ("'[A] controlling issue of law need not necessarily terminate the action in order to be controlling.'") (quoting *N.Y. Racing Ass'n, Inc. v. Perlmutter Publ'g, Inc.*, 959 F. Supp. 578, 583 (N.D.N.Y. 1997)). It is necessary, however, that the controlling question of law be a pure question of law. *Davella*, 2024 WL 98352, at *6 ("[T]he 'question of law' must refer to a 'pure' question of law that the reviewing court could decide quickly and

---

[3] Defendant attempts to bootstrap a number of other issues into its request for certification, including questions concerning preemption and the effect of the potential dismissal of Plaintiffs' NYLL claims on their unjust enrichment claims. *See, e.g.,* Dkt. No. 170-1 at 8-9, 4 nn.1-2. As Plaintiffs rightly point out, *see, e.g.,* Dkt. No. 174 at 10, 8 n.2, these questions were not presented at summary judgment, and thus they are not appropriate for interlocutory review.

cleanly without having to study the record.") (quoting *Capitol Recs., LLC v. Vimeo, LLC*, 972 F. Supp. 2d 537, 551 (S.D.N.Y. 2013)).

As Defendant recognizes, the applicability of the NYLL is a "threshold" legal question that will determine "whether or not Plaintiffs have a cause of action under the NYLL." Dkt. No. 170-1 at 8. Reversal of the Order on this question would terminate four of the six claims in this litigation, including all NYLL claims. Additionally, if an appellate court were to determine that the NYLL is not applicable to the federal immigration detainees in the Labor Law Class, that class would presumably need to be decertified. *See Fisher v. Aetna Life Ins. Co.*, 32 F.4th 124, 134 n.3 (2d Cir. 2022) (noting that "[i]f this Court reversed the district court's finding . . . then that would have required the decertification of a class . . . . To avoid such inefficiencies, the district court . . . certified the entirety of the district court's decision . . . for interlocutory appeal under 28 U.S.C. § 1292(b)"). According to Plaintiffs, the Labor Law Class includes thousands of individuals "who participated in the work program while detained at [the BFDF] in the last decade, many of whom now live in different countries across the globe." Dkt. No. 174 at 10. Providing notice to these individuals and conducting a trial of their NYLL claims appear to be substantial undertakings— and unnecessary ones if the NYLL is simply not applicable to Plaintiffs. As such, the Court finds that the question of whether the NYLL applies to Plaintiffs is "quite likely to affect the further course of the litigation." *Davella*, 2024 WL 98352, at *6 (citation omitted).

In addition, the Court agrees with Defendant that this question is purely legal. Dkt. No. 170-1 at 8-9. As detailed earlier, the Court found, pursuant to its interpretation of the statute, that Defendant was not entitled to judgment as a matter of law on Plaintiffs' NYLL claims, and the Court further found that those claims were properly evaluated using a particular legal standard, the non-exhaustive "control test." *Supra* Section II.B. Thus, the Court's analysis was legal, not

8

factual, and Defendant is correct that this analysis "did not delve into the record facts."  Dkt. No. 170-1 at 9 n.4; *see also Am. Int'l Grp., Inc. v. Bank of Am. Corp.*, 712 F.3d 775, 777-78 (2d Cir. 2013) (accepting interlocutory appeal of a question certified pursuant to Section 1292(b) "calling for interpretation of the jurisdictional provisions of the Edge Act, 12 U.S.C. § 632" and observing that "this appeal turns on a pure question of law").  Plaintiffs' argument that this a mixed question of law and fact is unpersuasive.  Dkt. No. 174 at 12.  The legal question here is whether the NYLL applies to Plaintiffs as a threshold matter, not whether—assuming the NYLL does apply and the "control test" is the appropriate legal standard—the Court correctly considered the facts presented by Plaintiffs under the "control test."  *Id.*

Accordingly, the Court finds that the legal question of whether the NYLL applies to Plaintiffs is controlling and that Defendant has satisfied its burden with respect to this factor.  *Ward*, 284 F. Supp. 3d at 228.

### B. Substantial Ground for Difference of Opinion

As to the second factor set forth in Section 1292(b), the Court concludes that there is substantial ground for difference of opinion as to the question presented.

"A substantial ground for difference of opinion can exist 'when '(1) there is conflicting authority on the issue, or (2) the issue is particularly difficult and of first impression for the Second Circuit.'"  *Davella*, 2024 WL 98352, at *2 (quoting *Capitol Recs*, 972 F. Supp. 2d at 551).  The Court finds that the second consideration applies here.  As the Court observed in the Order, "the applicability of the NYLL to federal immigration detainees," is an issue of first impression for both federal courts in the Second Circuit and for state courts in New York. Dkt. No. 169 at 27; *see also Tantaros v. Fox News Network, LLC*, 465 F. Supp. 3d 385, 392 (S.D.N.Y. 2020) ("The operative question in this case is a matter of first impression in this Circuit. . . . [and] involves

interpretation of a novel issue of state law[.]"). Defendant agrees that this is a question of first impression, Dkt. No. 170-1 at 9-12, and Plaintiffs appear to concede this point as well, by arguing that the Court cannot grant certification based on this factor alone, Dkt. No. 174 at 13-14.

Relatedly, neither the Second Circuit nor the New York State Court of Appeals appears to have addressed whether and how FLSA jurisprudence should apply to claims that arise exclusively under the NYLL. Dkt. No. 169 at 33-37. The Court found that the "control test" advocated for by Plaintiffs and often used to assess employment status under the NYLL should be applied to analyze their NYLL claims, instead of the "economic realities" test advocated for by Defendant and frequently utilized to assess employment status under the FLSA. *Id.* at 36-37; *see also Franze*, 826 F. App'x at 79 (noting that "[a]lthough these factors are similar to those considered under the FLSA inquiry, the focus of the *Bynog* test [for the NYLL] is slightly different"); *Hart v. Rick's Cabaret Int'l, Inc.*, 967 F. Supp. 2d 901, 922 (S.D.N.Y. 2013) ("However, notwithstanding these similarities, the law is unsettled whether precisely the same test for employee status applies under the two statutes.").

For these reasons, analysis of the NYLL claims brought by Plaintiffs, as federal immigration detainees at the BFDF, is clearly a "novel issue of state law," that is "complex and subject to legitimate dispute." *Tantaros*, 465 F. Supp. 3d at 392. Defendant has thus satisfied its burden with respect to this factor, as well. *Ward*, 284 F. Supp. 3d at 228.

### C. Materially Advance the Ultimate Termination of Litigation

Finally, the Court concludes that the third factor set forth in Section 1292(b) is satisfied because an interlocutory appeal would materially advance the ultimate termination of the litigation.

"Although technically the question of whether there is a controlling issue of law is distinct from the question of 'whether certification would materially advance the ultimate termination of

10

the litigation, in practice the two questions are closely connected.'" *In re Facebook*, 986 F. Supp. 2d at 536 (first quoting *SEC v. Credit Bancorp, Ltd.*, 103 F. Supp. 2d 223, 227 (S.D.N.Y. 2000); additional citations omitted); *see also Davella*, 2024 WL 98352, at *6 (noting that the first Section 1292(b) factor "overlaps with the final factor"). It is not necessary that the appeal "terminate the action." *Hermès*, 590 F. Supp. 3d at 651. Rather, "an 'immediate appeal is considered to advance the ultimate termination of the litigation if that appeal promises to advance the time for trial or to shorten the time required for trial.'" *Laufer v. Dove Hess Holdings, LLC*, No. 20-cv-00379, 2021 WL 365881, at *3 (N.D.N.Y. Feb. 3, 2021) (quoting *Transp. Workers Union of Am., Local 100, AFL-CIO v. N.Y. City Transit Auth.*, 358 F. Supp. 2d 347, 350 (S.D.N.Y. 2005)).

For reasons similar to those stated with respect to the first Section 1292(b) factor, the Court finds that this third factor is satisfied, as well. *See supra* Section IV.A. As Defendant notes, an appellate decision regarding the viability of Plaintiffs' NYLL claims would "avoid[] class discovery and decertification efforts concerning the NYLL class, dispos[e] of the need for damages analysis on NYLL claims, and eliminat[e] these claims from examination at trial." Dkt. No. 170-1 at 13. And Plaintiffs indicate that the class consists of thousands of individuals disbursed "across the globe," that class notice will be "a formidable task," and that the parties are still relatively early in class discovery. Dkt. No. 174 at 10, 15 n.4. The Court agrees with Defendant that all of this indicates that an interlocutory appeal may materially advance resolution of this matter, *In re Facebook*, 986 F. Supp. 2d at 536, including by potentially shortening the time needed for trial of this matter and clarifying the issues for trial, as well as for pretrial and post-trial proceedings, *Fisher*, 32 F.4th at 134 n.3. While it is possible that interlocutory appeal could result in some

11

interim delay,[4] the Court finds that such an appeal also "may materially advance the ultimate termination of the litigation."  28 U.S.C. § 1292(b).  Accordingly, the Court finds that Defendant has also satisfied its burden with respect to this factor.  *Ward*, 284 F. Supp. 3d at 228.

For all of these reasons, the Court is of the opinion that the requirements of Section 1292(b) are satisfied.  "When a ruling satisfies these criteria and 'involves a new legal question or is of special consequence,' then the district court 'should not hesitate to certify an interlocutory appeal.'"  *Balintulo v. Daimler AG*, 727 F.3d 174, 186  (2d Cir. 2013) (quoting *Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100, 111 (2009)); *see also Transp. Workers Union*, 358 F. Supp. 2d at 354 ("Certification is to be reserved for the exceptional case in which the law is fundamentally uncertain.") (citation omitted).  Accordingly, the Court certifies the Order for interlocutory appeal.  *See Doninger v. Niehoff*, 642 F.3d 334, 338 n.2 (2d Cir. 2011).

**D. Request to Stay**

Defendant also requests that this action be stayed pending resolution of its interlocutory appeal pursuant to Section 1292(b).  Dkt. No. 170-1 at 14.  Plaintiffs argue that Defendant has failed to satisfy the factors necessary for a stay.  Dkt. No. 174 at 14-15.

"A district court's authority to stay a pending action is an aspect of its broad and inherent power over its own process, to prevent abuses, oppressions and injustice, so as not to produce hardship, and to do substantial justice."  *Sec. & Exch. Comm'n v. Coinbase, Inc.*, 761 F. Supp. 3d 702, 722 (S.D.N.Y. 2025) (quoting *Flo & Eddie, Inc. v. Sirius XM Radio Inc.*, No. 13-cv-5784, 2015 WL 585641, at *4 (S.D.N.Y. Feb. 10, 2015)); *see also In re World Trade Ctr. Disaster Site Litig.*, 503 F.3d 167, 170 (2d Cir. 2007) ("The four factors to be considered in issuing a stay

---

[4] The Court notes that Defendant has also initiated other requests for interlocutory appellate review and, as such, the ultimate resolution of the litigation likely will be delayed regardless of whether the Court certifies the Order pursuant to Section 1292(b).  *See supra* Section II.B.

pending appeal are well known: '(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits;[ ] (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.'") (first quoting *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987); and then citing *Cooper v. Town of East Hampton*, 83 F.3d 31, 36 (2d Cir. 1996)).

For the reasons discussed with respect to the first and third Section 1292(b) factors, *see supra* Section IV.A, C, the Court finds that the balance of interests weighs in favor of staying the proceedings pending resolution of the interlocutory appeal. *Coinbase*, 761 F. Supp. 3d at 722. Additionally, given Defendant's other requests for interlocutory appellate review, "[j]udicial economy strongly favors staying the proceedings pending resolution of the legal question[s] at the core of this action." *Id.* (quoting *Flo & Eddie*, 2015 WL 585641, at *4); *see also supra* n.4.

## V. CONCLUSION

Accordingly, the Court hereby

**ORDERS** that Defendant's motion for certification and to stay, Dkt. No. 170, is **GRANTED** as set forth in Section IV of this Memorandum-Decision and Order; and the Court further

**ORDERS** that Defendant's request for leave to file a reply, Dkt. No. 175, is **DENIED as moot**; and the Court further

**ORDERS** that the Clerk serve a copy of this Memorandum-Decision and Order on the parties in accordance with the Local Rules.

IT IS SO ORDERED.

Dated: May 30, 2025
Albany, New York

Anne M. Nardacci
U.S. District Judge